```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


LAWRENCE I. FRIEDMANN,          . Civil No. 12-CV-1307
                                .
         Vs.                    .
                                . 100 Federal Plaza
                                . Central Islip, NY
RAYMOUR FURNITURE CO., INC,     .
 ET AL.                         . December 14, 2012
. . . . . . . . . . . . . . . . .


                      TRANSCRIPT OF HEARING
              BEFORE HONORABLE A. KATHLEEN TOMLINSON
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


For The Plaintiff:         THE HARMAN FIRM
                           BY: KIMBERLY SUZANNE THOMSEN, Esq.
                           200 West 57th Street
                           Suite 900
                           New York, NY 10019

For The Defendant:         NIXON PEABODY, LLP
                           BY: JESSICA AMY CHICLACOS, ESQ.
                           50 Jericho Quadrangle
                           Suite 300
                           Jericho, NY  11753




Proceedings recorded by electronic sound recording, transcript
             produced by transcription service.
```
_____

**TERRY GRIBBEN'S TRANSCRIPTION SERVICE**
27 Beach Road, Unit 4
Monmouth Beach, NJ  07750
(732) 263-0044    Fax No. 732-263-0075
800 603-6212
www.tgribbentranscription.com

Colloquy

1      THE CLERK:  Calling Civil Case 12-1307, Friedmann
2 versus Raymour Furniture Company, Incorporated, et al.  Please
3 state your appearance for the record.
4      MS. THOMSEN:  Kimberly Thomsen of counsel to the
5 Harmon Firm, 200 West 57th Street, Suite 900, New York, New
6 York, 10019, for the plaintiff, Lawrence Friedmann.
7      THE COURT:  Good afternoon.
8      MS. THOMSEN:  Good afternoon, thank you
9      MS. CHICLACOS:  Jessica Chiclacos --
10      THE COURT:  You need to push that button.
11      MS. CHICLACOS:  I'm sorry, Your Honor.  Jessica
12 Chiclacos, Nixon Peabody, defendant Raymour & Flanagan.
13      THE COURT:  All right, good afternoon as well.  To
14 say that I am completely underwhelmed by the two letters that I
15 received would be an understatement in itself.  First of all,
16 am I to understand that Mr. Andrews is no longer representing
17 the plaintiff here?
18      MS. THOMSEN:  Correct, Your Honor.  Myself and Walker
19 Harman are going to be handling the case going forward.
20      THE COURT:  Well, I am -- you can remain seated,
21 these conferences are all officially recorded.  I don't think I
22 could have been any clearer with Mr. Andrews last time we had a
23 conference on October the 1st.  I'm sure you've seen that
24 order.  I made it clear then that the lack of a compliance with
25 the Court's orders, the failure to engage in discovery

1  obligations is not going to be tolerated.  No excuse was
2  proffered at that time for failing to follow the Court's
3  directives in terms of discovery.  I reiterated as I did
4  repeatedly in the initial conference that this case is decided
5  by Judge Wexler.  I have no ability to extend any discovery
6  deadlines.  And just so we're all clear here I am not extending
7  and discovery deadline.  I cannot do that and I will not do
8  that.  So you're stuck with where you are at this point.
9        I gave in that order, looking now at the October 1
10 order, I gave specific directive that the HIPPA releases were
11 to be served immediately on the defendants.  I see from
12 defendant's letter that the authorizations were sent out, there
13 was some delay apparently in getting the records back from the
14 medical offices themselves, is that correct, Ms. Chiclacos?
15       MS. CHICLACOS:  It is, Your Honor.  We have them now.
16       THE COURT:  Did you get the Rule 26A disclosures from
17 the plaintiff?
18       MS. CHICLACOS:  We did on October 8.
19       THE COURT:  And did you get the plaintiff's discovery
20 demands on October 8?
21       MS. CHICLACOS:  We did, Your Honor.
22       THE COURT:  And did you get the substantive responses
23 to your own discovery demands on October 8?
24       MS. CHICLACOS:  No, Your Honor.  We got written
25 responses, the production of some documents.  And despite the

1  fact that Your Honor's order said that all objections were
2  deemed waived, every document request and interrogatory was
3  objected to.  I apologize.
4         THE COURT:  That's all right.  Just push it away from
5  you just a little bit, that might help, okay.  All right.  I
6  need to know then, Ms. Thomsen, why that's the case?
7         MS. THOMSEN:  I'm sorry, Your Honor?
8         THE COURT:  I need to know why that's the case.
9         MS. THOMSEN:  I, this was --
10         THE COURT:  Especially when I, when it's spelled out
11  in plain English here, all exceptions, all objections were
12  waived.
13         MS. THOMSEN:  I did not complete those objections.
14  This is the first time that I'm hearing of this and --
15         THE COURT:  Wait a minute, counsel.  This is your
16  firm.
17         MS. THOMSEN:  I understand.  I'm not, I'm not saying
18  that that's an excuse.  So if that's clearly set forth in the
19  order and that obviously, there shouldn't have been those
20  objections.
21         THE COURT:  How could you not be aware of this when
22  this is an order of the Court that's up on ECF, how could you
23  not be aware of this before today?  I mean, it's a simple
24  question.  How could you not be aware of it?  You're the ones
25  who are handling the case.  What's going on here really?

1     MS. THOMSEN:  It's my understanding that we had been
2  in compliance.  I am now hearing that there was obviously an
3  issue that there were objections that were raised.  That
4  shouldn't happen, that's obviously something that needs to be
5  remedied immediately.
6     THE COURT:  And who told you you were in compliance?
7  Mr. Andrews?
8     MS. THOMSEN:  Yes.  And again, it's not an excuse.
9  I'm aware of that.  But I can assure the Court it will be
10 remedied immediately.
11    THE COURT:  It's going to be remedied immediately or
12 you're going to start paying monetary sanctions.  I'm at the
13 end of my rope with plaintiff's behavior in this case.  Today's
14 the 14th.  By the 19th all of the interrogatory responses and
15 the document demands are to be fully responded to.  And again,
16 I said it in my order before, I'm repeating it here.  All of
17 the objections are waived and the information and documents are
18 to be provided.  You've got until the 19th.  If it goes one day
19 beyond the 19th I'm going to start imposing monetary sanctions
20 for every single day that this material is not in the hands of
21 the defendants.
22    MS. THOMSEN:  Noted Your Honor, and I will take care
23 of it personally.
24    MS. CHICLACOS:  Your Honor, I just do want to make
25 clear that there were written responses provided and documents

1 produced, but there, everything was initially objected to.
2       THE COURT: I understand that. The question is, are
3 you satisfied with all of the responses that you got?
4       MS. CHICLACOS: We are not, Your Honor, and we have
5 sent a deficiency letter, we sent it on November 21st, that was
6 specifically related to plaintiff's mitigation documents.
7 Going forward for his deposition it would be helpful to know
8 his employment. He in his interrogatory responses indicated he
9 has been working but provided no information as to the employer
10 or the amount of earning. We've had no response to the
11 deficiency letter.
12       THE COURT: All right. Well, the deficiency letter
13 is to be, I don't want to hear any excuses, I just want the
14 information given. There are no objections at this point, give
15 them the information.
16       MS. THOMSEN: Duly noted.
17       THE COURT: And you can explain to your client that
18 if Mr. Friedmann doesn't want to provide the information then
19 he can withdraw his complaint or I'll take care of getting
20 Judge Wexler to withdraw it for him. That means, you know, I
21 want them in the hands of defense counsel by 12/19. If you
22 want to do that by email that's up to you, but it's to be in
23 their possession by the 19th.
24       MS. CHICLACOS: Email is fine, Your Honor.
25       MS. THOMSEN: You'll accept it by email?

1          MS. CHICLACOS:  Yeah, sure.

2          THE COURT:  What's all of this back and forth
3  nonsense about the deposition date?  You know I, when I said
4  that the deposition wouldn't be taken until after those
5  documents were provided, that was in October.  It's now the
6  middle of December so I want to know exactly what transpired
7  here.

8          MS. CHICLACOS:  Sure, Your Honor.  When Ms. Thompsen
9  came into the case in early November she contacted me --

10         THE COURT:  Early November?

11         MS. CHICLACOS:  Yeah.

12         THE COURT:  You came into the case in early November
13 and you don't know that this order is up there directing X, Y
14 and Z?

15         MS. THOMSEN:  This is when I've officially taken over
16 the file.  I was originally involved for the limited purpose of
17 arranging depositions, and we had some basic settlement
18 discussions.  I've now officially taken it over.  And I also, I
19 apologize to the Court.  During the month of November I've had
20 some fairly significant health issues that I've been dealing
21 with which now seemingly resolved themselves.  Again, not an
22 excuse, I'm just advising the Court.

23         THE COURT:  Well, I'm sorry to hear that.  The course
24 of this case has been long, and it's been a downward spiral on
25 the plaintiff's side since the day we had an initial conference

1  here.
2      MS. THOMSEN: I understand, and I assure the Court
3  that it's going to be handled very carefully going forward.
4      THE COURT: So.
5      MS. CHICLACOS: So, contacted me as she said, to
6  start scheduling depositions. We were waiting for medical
7  authorizations. We started discussing settlement. During our
8  settlement discussions I had offered two dates to the
9  plaintiff's counsel for plaintiff's deposition, December 11,
10 subject to my client's availability, but then he was not
11 available. I also inadvertently offered the 14th not realizing
12 we were supposed to be before Your Honor so that day was
13 scratched.
14      During the course of these settlement negotiations
15 last, I offered December 21. I took --
16     THE COURT: Hold on, counsel. You're telling me your
17 client turned out not to be available. How is this possible
18 when you know you've got a deadline?
19     MS. CHICLACOS: I know, Your Honor, so I offered the
20 21st. It took them about four days to tell me that day wasn't
21 good. So when that, they told me that on Tuesday we told
22 another attorney at her firm, tell us whatever day you are
23 available, we will work around your schedule. I'm available
24 every day next week, I'm available the 26th, the 27th, the
25 28th. We still have not heard back from them on dates that

1  they're available.
2          MS. THOMSEN:  The problem being is that that's the
3  week between Christmas and New Years and everybody is traveling
4  for the holidays.
5          THE COURT:  What's wrong with the 21st?
6          MS. THOMSEN:  The 21st is the Friday before
7  Thanksgiving.  I was intending on traveling that day.  But to
8  keep the matter moving forward I will change my plans and be
9  available subject to my client being available on that day.
10         THE COURT:  Well, I'll tell you what.  What I'm going
11 to do here is, I'm going to mandate that this deposition be
12 taken somewhere between December 31st and January 4th, and I
13 don't want to hear any ifs, ands or buts about it.
14         MS. CHICLACOS:  Your Honor, if I may, I do not want
15 Ms. Thompsen to have to change her travel schedules.  I'm
16 fully available the week of the 31st.  I could do it the 31st,
17 I could do it the 2nd, the 3rd or the 4th.  So any of those
18 days are fine with me.
19         THE COURT:  All right.
20         MS. THOMSEN:  Thank you.  And --
21         THE COURT:  You can talk to each other when we're
22 finished here, and I'm telling you, this is now officially a
23 Court-ordered deposition.  It is to be taken that week and it
24 is not to be adjourned under any circumstances without prior
25 approval of the Court.

```
                          Colloquy                              10
 1           MS. THOMSEN:  Thank you.
 2           THE COURT:  And you can tell your respective clients
 3  I don't care if they think they're going to Timbuktu, they're
 4  to be there.
 5           MS. THOMSEN:  If they can't then I will be there.
 6  We, I'm fully available, I can do the 31st as well.
 7           THE COURT:  I know that one of the things that the
 8  defendants are looking for is any information or documentation
 9  the plaintiff has with regard to his attempts to get employment
10  after he left defendant's employment.
11           MS. CHICLACOS:  Yes.
12           THE COURT:  And this goes hand in hand with what I
13  said to you about presenting the materials by December 19.  And
14  we're going to get the point here where what your client
15  doesn't take care of, I'm going to make a, in some cases it's
16  within my jurisdiction to do it, in other cases I'll do it by
17  an R&R to Judge Wexler to preclude your client from introducing
18  whatever it is he hasn't produced.
19           MS. THOMSEN:  Understood, Your Honor.  I'll make sure
20  that information is provided by January 19, if not sooner.
21           THE COURT:  December, December 19.  I just gave you
22  an order that that material, all of the discovery demands and
23  everything that was asked for in the deficiency letter you have
24  to give to them by next Wednesday, the 19th.
25           MS. THOMSEN:  I apologize, I thought you said January
```

1  19.
2              THE COURT:  No.
3              MS. THOMSEN:  I'm glad that we straightened that out.
4  Thank you.
5              THE COURT:  As I also said, if not provided by the
6  19th monetary sanctions begin --
7              MS. THOMSEN:  Each day.
8              THE COURT:  -- to effectuate themselves on December
9  20.
10             MS. THOMSEN:  Yes.
11             THE COURT:  All right, besides the plaintiff, Ms.
12 Chiclacos, is there anybody else you plan to depose?
13             MS. CHICLACOS:  No, Your Honor.
14             THE COURT:  All right.  I'm looking now at your
15 letter, Ms. Thomsen, from December 12.  Talking about things
16 surprised by the defendant's right to the Court unilaterally,
17 this, there was a requirement that a discovery status report be
18 filed in this case three days ago before this conference ever
19 took place so that I had the information before I saw you
20 today.  So why anybody was having a discussion yesterday is
21 beyond me because you're well past the deadline at that point
22 anyway.
23             What is this, I'm trying to understand what, as I
24 said, what's really going on here.  I'm looking at paragraph 5
25 of your letter.  It says that in an effort to put off discovery

1  indefinitely the defense also raised settlement in order to
2  close the matter to avoid plaintiff's deposition all together.
3  Did somebody tell you that?
4             MS. THOMSEN:  There were settlement discussions that
5  we were having that seemed to be going in a productive way.
6  And I certainly said during those discussions that it would be
7  better if we could reach a settlement before the depositions
8  were held because of the time and expense that's involved.
9  That's money that could go toward the settlement versus being
10 spent.
11            THE COURT:  I get that, I get that.  This makes it
12 sound like you think there's some conspiracy going on on the
13 defendant's part, that's what I'm inquiring about.
14            MS. THOMSEN:  No, I, I don't believe that.  I think
15 that Jessica was dealing in good faith, as I was.
16            THE COURT:  Well, what's the last sentence mean,
17 defendant has now denied that these conversations regarding
18 settlement have ever even took place.
19            MS. THOMSEN:  Apparently there was a phone
20 conversation that I was not party to where it was implied that
21 there really were no settlement discussions and I have a
22 feeling that that was just a miscommunication between Walker
23 Harman of my firm and the attorney --
24            THE COURT:  Well, if you weren't a party to the
25 conversation it seems rather strange that you would make that

1  representation in the letter.
2          MS. THOMSEN:  That was my understanding and I
3  withdraw that.
4          THE COURT:  Well, there's more --  This has a tone of
5  accusation, that's why I'm asking.
6          MS. THOMSEN:  I understand.  That's the way it was
7  presented to me by Walker Harman.  I am at this point saying in
8  order to move forward I would prefer we just put that aside and
9  move forward in a productive fashion.
10         MS. CHICLACOS:  Your Honor, myself and the partner
11 working on this matter for my firm had a conversation with
12 Walker Harman on Tuesday that spiraled downward very quickly.
13 We were countering the settlement demand.  It had taken two
14 weeks to get back to them, which we apologized for, but this is
15 a company and it took some time to get a demand back to them.
16 And it was during that conversation that certain accusations
17 similar to this letter were made as well about conversations
18 that I had had with Kimberly, that Mr. Harman was claimed that
19 he was privy to and listened in to.  It turned a little
20 bizarre, reflective in this letter.
21         I'd like to move past it as well.  It was basically
22 accusing us of in engaging in settlement negotiations in bad
23 faith, presumably because he didn't like our counteroffer.
24         THE COURT:  Well, whatever battles you're all
25 fighting with each other is entirely your business.  When I see

1  things like defendant's deny that certain conversations ever
2  took place, and that it was the defense who cancelled the
3  deposition but oddly were both in their offices and available
4  for telephone conferences all day yesterday.  It just doesn't
5  belong in a letter to the Court, it just doesn't.  You know, if
6  you don't like each other, your clients don't like each other,
7  so be it.  But I expect everybody to act like professionals and
8  I don't want see any correspondence like this again.
9           MS. THOMSEN:  I would like to say that up until this
10 point I think we've had a very nice and productive working
11 relationship, and I agree, I would just prefer to move forward.
12          THE COURT:  You say at the bottom of the page there,
13 Ms. Thomsen, that of further concern to the plaintiff is that
14 defendants provided wholly deficient discovery responses which
15 will likely require that the plaintiff move to compel.  Well,
16 you know, you can wave that out there, but there's going to
17 come a point in time very rapidly that you no longer have the
18 time or the right to do that.  And I don't know what this
19 means, and frankly you folks have an obligation on both sides
20 here under Rule 37.3 to have a good faith meet and confer and
21 try to work out whatever the issues are before you seek Court
22 intervention.
23          My concern here is you're going to be running up
24 very, very tightly on the discovery deadline, and as I said I'm
25 not extending it.  So I don't know what that means.  But I will

1  tell you right now I'm going to be taking last minute motions
2  to compel two days before the discovery period is over, I'm
3  just not going to do that.  Whatever issues you're having with
4  the defendant regarding any deficiencies, talk to them, send
5  them a deficiency letter, but get it done.
6          MS. THOMSEN:  We're going to.  We actually have one
7  drafted to go out.  It relates to, specifically to the
8  interrogatories that we received and the objections that they
9  raised in their interrogatory responses.
10         THE COURT:  All right.  The expert reports, did you
11 intend to proceed with any expert presentations here for trial
12 purposes. The deadline you're up against is January 10.  As I
13 said I'm not changing that, so I'm not changing any of these
14 deadlines.  Rebuttal reports are due back by February 25.  All
15 of the discovery, just say fact discovery, all discovery is
16 over February 25.  So you've got a very limited period of time
17 here to get done what has to get done.
18         MS. CHICLACOS:  Your Honor, if I may to try and help
19 move the process along while we're here.  Plaintiff has not
20 noticed any depositions, nor has he indicated who he wants to
21 depose.
22         THE COURT:  Well, do you intend to take any
23 depositions?
24         MS. THOMSEN:  We do.  It's my understanding that we
25 were not allowed to serve our notices until after plaintiff's

1  deposition had been concluded.  That's why there have been no
2  notices served.
3             THE COURT:  Well, I don't know where you got that
4  impression.
5             MS. THOMSEN:  That is what I was advised.  If that is
6  incorrect --
7             THE COURT:  Well, somebody's got a real faulty filter
8  listening to the Court from your firm, and I'm assuming it's
9  Mr. Andrews.  But whatever, it sounds like virtually everything
10 you've been told here is just not correct.  Why that's the case
11 I have no idea, especially when the material is in writing.
12 Whose depositions do you intend to take?
13            MS. THOMSEN:  The personally named defendant, Lucy
14 Goldstein.
15            MS. CHICLACOS:  She's not a defendant in the action,
16 Your Honor.  She was --
17            THE COURT:  She's not a party?
18            MS. CHICLACOS:  She's never been served and the State
19 law claims were dismissed on a motion to dismiss.  And since
20 they are derivative aiding and abetting claims she's not an
21 individual defendant.
22            MS. THOMSEN:  We intend to take her --
23            THE COURT:  All right, well, she's not a named
24 individual defendant so the question is does she have any
25 factual information that's pertinent to the claims.

Case 2:12-cv-01307-LDW-AKT   Document 36   Filed 02/05/13   Page 17 of 20 PageID #: 185

Colloquy                                                    17

1              MS. CHICLACOS: Oh sure, Your Honor.  Of course,
2    right.  I just was correcting that she's not an individual
3    defendant.
4              THE COURT: All right.  All right, so besides Lucy
5    Goldstein who else?
6              MS. THOMSEN:  I'm not aware of any other individuals
7    at this time.
8              THE COURT:  That's the only one, you're only taking
9    one deposition?
10             MS. THOMSEN:  Correct.
11             THE COURT:  All right.  I'm holding you to that.
12             MS. THOMSEN:  I would like the Court to perhaps give
13   us a little window of time.  There might be one or two other
14   additional people that we would like to take.  But we
15   definitely know we're taking Lucy Goldstein's.  And if you
16   would like --
17             THE COURT:  All right.  By next Wednesday when you're
18   producing this material, anybody you intend to take their
19   deposition, the notice better be in the possession of the
20   defendants.
21             MS. THOMSEN:  That's fine, Your Honor.
22             MS. CHICLACOS:  May I ask too, Your Honor, if they
23   could please, when, in a cover letter or the email cover please
24   indicate some dates to get that started.
25             THE COURT:  You know, I'm going to tell you right

1  now.  Before you two leave here today, when I get off the bench
2  I'm directing you to sit here and go over a proposed schedule
3  between the two of you.  You can serve your notices and follow
4  up to that anyway, you should have been talking to each other
5  to agree on these dates in the first instance before the
6  notices even got sent.  But I want that done while you're here
7  today because we're not going through this any more.  And you
8  can serve whatever notices you need to serve by next Wednesday,
9  Ms. Thomsen.
10              MS. THOMSEN:  Uh hum.
11              THE COURT:  And if you intend to file any motions to
12 compel once you have gone through this process and gone through
13 the file, you've got until January 18 to file them.  If there
14 is a motion to compel filed, Ms. Chicalacos, you know you've
15 got three business days to respond to the letter motion, all
16 right.  Right now, because of these deadlines if you're going
17 to file a motion to compel it's to be done by letter motion.
18              MS. THOMSEN:  By letter motion, Your Honor?
19              THE COURT:  Yes.  If you look at the Court's website
20 my individual practice rules are on there.
21              MS. THOMSEN:  Yes, no, I just wanted to make sure
22 that I heard you correctly.
23              THE COURT:  Yes. All right.  Is there anything else
24 about discovery that you want to discuss while I have both of
25 you here today, Ms. Thomsen?

1           MS. THOMSEN:  No, Your Honor.
2           MS. CHICLACOS:  No, Your Honor.
3           THE COURT:  All right.  I will put all of this into
4  an order that will go up later today.  It's an uncomfortable
5  situation for me to deal, but this is the way I have to deal
6  with counsel in a case like this, but what has gone on here is
7  inexcusable and I'm just not going to tolerate it going
8  forward.  And believe me, I wouldn't want to be in your boots
9  if you had to explain this to Judge Wexler.  So I'm not moving
10 these dates, you know what you need to do and I'm just
11 directing you to get it done.
12          MS. THOMSEN:  We will, Your Honor, definitely.
13          MS. CHICLACOS:  Thank you, Your Honor.
14          THE COURT:  All right, stay here in the courtroom and
15 talk to each other about scheduling the depositions, all right?
16          MS. THOMSEN:  Yes.
17          MS. CHICLACOS:  Yes, Your Honor.  Thank you for your
18 time.
19                    *            *            *
20
21
22
23
24
25

**C E R T I F I C A T I O N**

I, **TRACY GRIBBEN**, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____

/S/ TRACY GRIBBEN

TERRY GRIBBEN'S TRANSCRIPTION SERVICE    DATE: _____