# NIXON PEABODY LLP
ATTORNEYS AT LAW

50 Jericho Quadrangle, Suite 300
Jericho, New York 11753-2728
(516) 832-7500
Fax: (516) 832-7555
Direct Dial: (516) 832-7613
E-Mail: tdaub@nixonpeabody.com

March 11, 2013

**VIA ECF AND FEDERAL EXPRESS**

The Honorable Leonard D. Wexler, U.S.D.J.
United States District Court for the
   Eastern District of New York
944 Federal Plaza
Central Islip, New York 11722

> RE:  **Lawrence I. Friedmann v. Raymour Furniture Co., Inc., et al.**
> **12 Civ. 1307 (LDW)(AKT)**

Dear Judge Wexler:

    This firm represents defendant Raymour Furniture Company, Inc., d/b/a Raymour & Flanigan Furniture ("Defendant") in connection with the above-referenced matter. In accordance with Rule 2(B) of Your Honor's Individual Practice Rules, we write to request leave to file a motion for summary judgment seeking the dismissal of plaintiff Lawrence Friedmann's Complaint in its entirety and/or for a pre-motion conference.

    Raymour & Flanigan hired Plaintiff on or about October 20, 2005 as a Sales Associate in its store located in Yonkers, New York. Shortly thereafter, Plaintiff was granted a transfer to Raymour & Flanigan's Carle Place location, where he reported to Lucy Goldstein, Store Manager. In 2008, Raymour & Flanigan opened its Garden City location, which became its largest and highest sales volume showroom. As Ms. Goldstein was slated to become the Store Manager of that location, she had the opportunity to hand-pick Sales Associates to bring with her to the Garden City showroom. There is no dispute that Ms. Goldstein selected Plaintiff to join her, presenting him with the opportunity to work in a higher sales volume location. In or about October 2008, Plaintiff began working in the Garden City showroom.

    Plaintiff testified that he had a flare-up of his sciatica in 2010 and received treatments including surgery. Raymour & Flanigan granted Plaintiff's request for a leave of absence during this period. Plaintiff testified that the flare-up lasted about six months, from March through August 2010; that he returned to work in August 2010; that he was fully recovered from the flare-up by September 2010; that he never had another flare-up again after that; and that he did not need or request any accommodations after September 2010.

    All Sales Associates at the Garden City showroom were required to reach an annual sales goal of $750,000 in delivered sales. During his first two years in Garden City, Plaintiff met his sales goals. After his return from leave in or about August 2010 – and despite his full recovery

The Honorable Leonard D. Wexler
March 11, 2013
Page 2

by September 2010 – Plaintiff's sales declined and he was no longer meeting the required minimum sales goals. Ms. Goldstein hoped that Plaintiff would reverse this trend and afforded him time to improve his performance. After nine months, however, Plaintiff's sales remained deficient. By May 2011, he was projected to complete delivered sales in the amount of only $617,435 for 2011, well below the mandated goal of $750,000. Accordingly, on May 7, 2011, Ms. Goldstein placed Plaintiff on a "Coaching for Success" plan. After four weeks, Plaintiff had not increased his sales numbers to the point that Ms. Goldstein believed he would be able to meet his minimum sales goal for 2011. Ms. Goldstein then placed Plaintiff on an "Action Plan & Performance Agreement," giving him yet another opportunity to improve his performance.

During this time, Ms. Goldstein also arranged for Plaintiff to interview at two other Raymour & Flanigan locations that had lower sales expectations. Ms. Goldstein hoped that Plaintiff would transfer to one of these locations, improve his performance, and then she could re-hire him for the Garden City showroom. Plaintiff, however, failed to pursue one of these options, and although he did interview at the Carle Place showroom, the manager of that store declined to hire him because of his low sales figures.

Despite Raymour & Flanigan's repeated attempts to help Plaintiff to resolve his performance deficiencies, Plaintiff did not substantially increase in his sales. On June 18, 2011, Raymour & Flanigan terminated his employment due to poor performance. Thereafter, on October 21, 2011, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging age and disability discrimination. On March 15, 2012, he filed the instant action, bringing claims under the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA) against Raymour & Flanigan.[1]

In support of his age discrimination claim, Plaintiff claims that: (1) he was seventy years old at the time of his termination; (2) Ms. Goldstein asked him his age and about his retirement plans; (3) Ms. Goldstein referred to him as "old man"; and (4) Ms. Goldstein, when terminating his employment, told him to "enjoy [his] summer in the Hamptons." Plaintiff cannot establish a prima facie case of age discrimination because there is no evidence that would permit a jury to infer that Ms. Goldstein's termination decision was based on discriminatory intent.

As an initial matter, Ms. Goldstein denies discussing Plaintiff's age and retirement plans with him, and further denies referring to him as "old man."[2] Indeed, Ms. Goldstein is 66 years old and close in age to Plaintiff. Ms. Goldstein's membership in the same protected class undercuts any inference that she terminated Plaintiff's employment based on age-related bias. See DiGirolamo v. Metlife Group, Inc., 2011 U.S. Dist. LEXIS 62104, at *34 (S.D.N.Y. June 6,

---

[1] Plaintiff also brought claims under the New York State Human Rights Law against Raymour & Flanigan and Lucy Goldstein. This Court granted Raymour & Flanigan's motion to dismiss these claims. (See docket entry No. 24).

[2] Plaintiff testified that he regularly vacationed at his ex-wife's home in the Hamptons in the summer and that Ms. Goldstein was "wishing him well" when she allegedly told him to "enjoy [his] summer in the Hamptons." In addition, this statement has absolutely no relation to Plaintiff's age.

The Honorable Leonard D. Wexler
March 11, 2013
Page 3

2011) (dismissing age discrimination claim where the decision-makers were in the same protected class).

Furthermore, Raymour & Flanigan is entitled to the same-actor inference. The Second Circuit has held that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [her] an invidious motivation that would be inconsistent with the decision to hire." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 561 (2d Cir. 1997). Since Ms. Goldstein decided to hire Plaintiff for the Garden City showroom when he was 67 years old in 2008 and to terminate his employment at age 70 in 2011, the law recognizes an inference that it is unlikely that Ms. Goldstein harbored any age-based discriminatory animus.

Plaintiff's disability discrimination claim under the ADA is similarly deficient. Plaintiff alleges that, in 2010, due to his flare-up of sciatica, he asked Ms. Goldstein to allow him to sit down in the showroom at times and that she denied his requests. As an initial matter, Plaintiff's disability discrimination claim is clearly time-barred. Plaintiff testified that he had fully recovered from the sciatica flare-up by September 2010; that he never had another flare-up again after that; and that he did not need or request any accommodations after September 2010. Plaintiff filed his Charge of Discrimination on October 21, 2011 and, thus, any claims relating to events that occurred before December 25, 2010 – more than 300 days prior to his EEOC filing – are time-barred. See 42 U.S.C. § 2000e-5(e)(1); see also Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).

Moreover, Plaintiff admits that he received no discipline relating to his failure to meet sales goals in 2010 and that the action plans in 2011 focused on his 2011 sales goal. While Plaintiff testified that he believes that his 2010 sales numbers were implicitly taken into account, he admits that he never asked for any downward adjustment to his sales goals in 2010. Even if he had, however, courts have held that such a request need not be granted. See Ciullo v. Yellow Book, USA, Inc., 2012 U.S. Dist. LEXIS 93912, at *36 (E.D.N.Y. July 6, 2012).

Finally, as to Plaintiff's retaliation claim, Plaintiff testified that he never complained about discrimination during his employment. As a result, Plaintiff cannot demonstrate that he engaged in any "protected activity" and his retaliation claim fails as a matter of law.

Based on the foregoing, Defendant respectfully requests leave to file a motion for summary judgment dismissing the Complaint in its entirety and/or a pre-motion conference.

Respectfully submitted,

/S/
Tara Eyer Daub
Jessica Chiclacos

cc: Walker G. Harman, Jr., Esq. (via ECF)

14350474.3

NIXON PEABODY LLP