1                       UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK

2

3  -----------------------------------X
  LAWRENCE I. FRIEDMANN,          :

4                           :  12-CV-01307 (LDW)
               Plaintiff,   :

5                           :
              v.          :  100 Federal Plaza

6                           :  Central Islip, New York
  RAYMOUR FURNITURE CO., INC., *et al.*,:

7                           :  February 26, 2013
             Defendants.   :

8  -----------------------------------X

9

10         TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
        BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
            UNITED STATES MAGISTRATE JUDGE

11  APPEARANCES:

12

13  For the Plaintiff:        PETER JOHN ANDREWS, ESQ.
                       The Law Offices of Peter J.

14                          Andrews, P.C.
                      345 East 52nd Street
                      Suite 2E

15                        New York, New York  10022

16  For the Defendants:       JESSICA AMY CHICLACOS, ESQ.
                       Nixon Peabody, LLP

17                        50 Jericho Quadrangle, Suite 300
                      Jericho, New York  11753

18

19

20  Court Transcriber:        RUTH ANN HAGER, C.E.T.**D-641
                      TypeWrite Word Processing Service
                      211 N Milton Road

21                        Saratoga Springs, New York  12866

22

23

24

25

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

2

1   (Proceedings began at 10:49 a.m.)

2           THE CLERK:  Calling civil case 12-01307, Friedman v.

3   Raymour Furniture Company, Incorporated, *et al.*

4           Please state your appearance for the record.

5           MR. ANDREWS:  Peter Andrews for plaintiff Lawrence

6   Friedmann.

7           MS. CHICLACOS:  Jessica Chiclacos, Nixon Peabody for

8   defendant.

9           THE COURT:  Good morning to both of you.

10          MS. CHICLACOS:  Good morning, Your Honor.

11          MR. ANDREWS:  Good morning.

12          THE COURT:  Mr. Andrews, I thought that Kimberly

13  Thomsen was handling this matter at this point.

14          MR. ANDREWS:  Ms. Thomsen is no longer with The

15  Harman Firm and I am handling the matter.

16          THE COURT:  Excuse me.

17          MR. ANDREWS:  And I am handling the matter.

18          THE COURT:  Okay.  All right.  Well, I have this

19  motion to compel, so let's get to it.

20          MR. ANDREWS:  Yes, Your Honor.

21          THE COURT:  No, no.  I'll [indiscernible] lawyers.

22          MR. ANDREWS:  Okay.  Very well, Your Honor.  Thank

23  you.

24          THE COURT:  By the way, I'm not sure if you're aware

25  of this, but the [indiscernible - Judge's mic not functional]

3

1  on [indiscernible], which is the motion has [indiscernible]

2  and grey background.  I don't know if you noticed that.

3            MR. ANDREWS:  Yeah, I did notice that, Your Honor.

4  That was an error that was not caught by our office and I --

5  we've changed our policy.  We're not using draft watermarks

6  any longer.

7            THE COURT:  Okay.  All right.  Well, let's go to the

8  enumerated issues that we have here.  It says complete

9  personnel file of plaintiff's former supervisor, Ms. Goldstein

10  [Ph.].  Mr. Chiclacos, can you tell me what the

11  [indiscernible]?

12            MS. CHICLACOS:  Sure, Your Honor.  We turned over

13  Ms. Goldstein's entire personnel file.

14            THE COURT:  What was in that?

15            MS. CHICLACOS:  Payroll information, new hire stuff,

16  emails regarding she's on -- she's currently on a medical

17  leave of absence.  There were some emails about that.

18  Everything that was contained in her personnel file was turned

19  over.

20            THE COURT:  All right.  But there are typically

21  performance reviews in those personnel files?

22            MS. CHICLACOS:  Not typically with Raymour and

23  Flanagan.  Sometimes there are, sometimes there aren't.  There

24  were not any with respect to Ms. Goldstein.  She was the

25  manager.

4

1        With respect to Mr. Friedman, there were and those

2   were obviously turned over.

3        THE COURT:  Okay.  All right.  And with regard to

4   any other complaints that were made about Ms. Goldstein would

5   they have been kept in the personnel file or would they have

6   been kept elsewhere?

7        MS. CHICLACOS:  They would have been kept in her

8   personnel file.  There were no complaints made against her.

9        THE COURT:  All right.  Now, you want me to require

10  the defendants to produce a sworn verification supporting that

11  position.  What does that mean, Mr. Andrews?

12       MR. ANDREWS:  Well, we want the defendants to be

13  precluded from offering any testimony that would otherwise

14  have been in the personnel file that has not already been

15  disclosed.

16       THE COURT:  All right.  Well, that's fine.  I'm not

17  going to require them to do that.  I have counsel's

18  representation on the record now and counsel is on notice that

19  anything not provided in discovery which precluded the trial

20  notices.  All right.

21       Number two.  Disclose [indiscernible] each and every

22  employee who's worked with the defendant since 2005 until the

23  time plaintiff was terminated including Asian [indiscernible],

24  Inc., and reported reason for termination for those

25  terminations that occurred in New York City [indiscernible]

5

1   following New York counties:  Westchester, Nassau and Suffolk.

2          First of all, this is [indiscernible].  I'm not

3   going to require the defendants to [indiscernible] because I

4   don't [indiscernible].

5          With regard to any of the offices up in the Nassau

6   and Suffolk County which was going to be restricted to anyone

7   who was terminated -- I don't mean anybody who left

8   voluntarily, resigned from working on the job -- anybody who

9   was terminated by the company following January 2005 until the

10  time the plaintiff was terminated.  I will require the

11  defendants to provide the names of those individuals, their

12  age, and their reason for termination given by the company.

13  All that is subject to confidentiality or which I assume were

14  replaced on that, correct?

15          MS. CHICLACOS:  Yes, Your Honor.

16          MR. ANDREWS:  Yes.

17          THE COURT:  All right.

18          MS. CHICLACOS:  Your Honor, are you going to get the

19  time frames at the end or --

20          THE COURT:  What's that?

21          MS. CHICLACOS:  Time frames for production or do you

22  want to get to that --

23          THE COURT:  Yes.  [Indiscernible] --

24          MS. CHICLACOS:  Right.

25          THE COURT:  All right.  Okay.  Production of all

6

1  communications, all documents and all [indiscernible]

2  memorializing information concerning any lawsuit filed in New

3  York state by the defendant [indiscernible] this action that

4  proves allegations that age discrimination or disability

5  discrimination including her [indiscernible] complaints

6  against [indiscernible] judgments entered in all such suits

7  unless covered by attorney/client privilege.  Certainly I'm

8  not going to require the defense to [indiscernible].  That's

9  inappropriate.

10       As to the plaintiff that filed all [indiscernible]

11  of those two rejected categories, age or disability, to the

12  extent that there are complaints that either court or agency

13  [indiscernible] I will require you to turn over the pleadings

14  in those matters.  All right.

15       MS. CHICLACOS:  For all of Raymour and Flanagan,

16  Your Honor?

17       THE COURT:  Well, this is New York state, so for

18  purposes of this -- yeah, I know you have -- how many stores?

19  I can't imagine --

20       MS. CHICLACOS:  About 50.

21       THE COURT:  Yeah, but I mean, how many actual

22  complaints of age or disability discrimination could you

23  possibly have had in the past five years?

24       MS. CHICLACOS:  I mean, there are none arising from

25  the showroom Mr. Friedman worked at.

7

1          THE COURT:  Right.  And I saw the case you cited,

2   which also is not quite right in terms of their submission

3   [indiscernible] case.  The case didn't say to the individual;

4   it said to the department in which the person worked.  So

5   Mr. Friedman occupied what position, salesperson?

6          MS. CHICLACOS:  He was a sales associate.

7          THE COURT:  He was a sales associate.  Okay.  So

8   with regard to [indiscernible] reasonable parameters amongst

9   this request anybody can work in a sales capacity who was let

10  go -- I should say not was let go -- who raised an issue of

11  age or disability discrimination.  And I don't mean sales

12  associates -- I mean, anybody who worked in sales in the

13  company, all right?

14         MS. CHICLACOS:  Um-hum.

15         THE COURT:  That's the one age.

16         MS. CHICLACOS:  For five years in New York state.

17         THE COURT:  Yes.

18         MS. CHICLACOS:  Okay.

19         THE COURT:  Again, I'll direct you to produce the

20  pleadings whether they're agency proceeding documents or

21  documents about the court.  I'm not asking you or requiring

22  you to produce all communications, all documents, and all

23  [indiscernible] information, all right.  That's over broad.

24         Number four.  I'm assuming this means you're looking

25  for -- maybe I shouldn't have said anything, Mr. Andrews.  I'm

8

1    not quite sure what this means.  Are you looking for any

2    documents they filed in EEOC?  What does this actually mean?

3             MR. ANDREWS:  We're looking for filings with

4    agencies such as the EEOC as well as internal complaints.

5    Let -- I'm sorry.  Let me just limit myself --

6             THE COURT:  So this only has to do with your client

7    so --

8             MR. ANDREWS:  That's correct.

9             THE COURT:  Go ahead.

10            MR. ANDREWS:  That's correct.  We're looking for

11   complaints filed with regulatory bodies, such as the EEOC

12   alleging age or disability discrimination.

13            THE COURT:  All right.

14            MR. ANDREWS:  Regarding our client.

15            THE COURT:  So your client -- how many complaints

16   did your client file?

17            MR. ANDREWS:  I believe he's filed one complaint

18   with the EEOC.

19            THE COURT:  That's it.

20            MR. ANDREWS:  That's correct, Your Honor.

21            THE COURT:  Okay.  So essentially what you're

22   looking for is what response did defendants made to that

23   agency determination -- or agency filing.

24            MR. ANDREWS:  That's correct, Your Honor.

25            THE COURT:  All right.  Do you know whether or not

9

1   your client [indiscernible] responded to that?

2            MS. CHICLACOS:  They did not, Your Honor.  The EEOC

3   issued a right to sue before they did that.

4            THE COURT:  Okay.  All right.  And I think I'm

5   satisfied with that answer.  Mr. Andrews, you can do whatever

6   every other plaintiff in these cases does and that's file a

7   Freedom of Information Act request to get an EEOC filing.

8            And reply with any and all individuals who will

9   offer testimony are you [indiscernible] legitimate and non-

10  discriminatory [indiscernible] termination.  I'm trying to ask

11  what the issue is here.  I'll hear from defendant's counsel.

12           MS. CHICLACOS:  Your Honor, I'm not quite sure what

13  the issue is here.  Defendant provided our initial disclosures

14  back in July listing all individuals who might have knowledge

15  or information relating to the claims in this action and its

16  defenses.  We provided interrogatory responses which listed

17  specific individuals, so I'm not quite sure what the plaintiff

18  is looking for here.

19           THE COURT:  Go ahead.

20           MR. ANDREWS:  Thank you, Your Honor.  Well, this

21  very much ties into our dissatisfaction with a recent 30(b)(6)

22  deposition that I took where defendants offered as the

23  30(b)(6) deponent a human resources professional, Ms. Patricia

24  Delgennio [Ph.].  Ms. Delgennio testified at her deposition

25  that she had not seen the notice of deposition.  She had not

10

1   seen the complaint.  She had not seen the answer or the

2   affirmative defenses.  She had not seen any pleadings in the

3   case.  I went through each one of the individual affirmative

4   defenses.  She was not familiar with any one of them.  She is

5   not personally familiar or did not have, I should say,

6   firsthand knowledge of the termination of Mr. Friedman,

7   testified that she had not read the performance improvement

8   plans generated for Mr. Friedman.  And when I tried to expand

9   beyond that to other similar claims of agent disability-

10  related discrimination, Ms. Chiclacos objected as that being

11  beyond the scale of the deposition and shut him down.

12              THE COURT:  All right.  You have your Rule 30(b)(6)

13  notice to appear with you?

14              MR. ANDREWS:  I have the whole transcript.  Let me

15  see if I can --

16              THE COURT:  I just want notes.

17              MR. ANDREWS:  I understand.  Yes.  Yes, I do.

18              THE COURT:  Let me take a look at that and

19  [indiscernible].

20              MR. ANDREWS:  Thank you.

21                   [Pause in the proceedings.]

22              THE COURT:  All right.  So I see the first --

23  they'll all here -- categories here in the 30(b)(6) notice.

24  First one says [indiscernible] information related to anti-

25  discrimination policies, [indiscernible], which I assume this

11

1  witness was certainly capable of and responded to, correct?

2          MR. ANDREWS:  We were not satisfied with the

3  responses as applied to Mr. Friedman.  She had no knowledge of

4  the policies as applied to Mr. Friedman.

5          THE COURT:  Well, that's not what this asks for.

6  This says knowledgeable policies.  So you got what you asked

7  for.  You didn't put [indiscernible] Mr. Friedman.

8          MR. ANDREWS:  That's correct, Your Honor.

9          THE COURT:  To this category.  All right.  Then it

10 says [indiscernible] -- first, when did this deposition take

11 place?

12         MR. ANDREWS:  This deposition took place fairly

13 recently, February 13th.

14         THE COURT:  Okay.  Then you have here all

15 information related to disabilities and combination of

16 disabilities in the workplace at Raymour Furniture which,

17 again, is a general category which I assume as the HR person

18 who came to this she answered, yes?

19         MR. ANDREWS:  Not to our satisfaction.

20         THE COURT:  [Indiscernible] I assume she answered,

21 which you're unhappy about that if she didn't answer

22 specifically to your client, correct?

23         MR. ANDREWS:  Yes.  And in addition when I asked --

24 when I tried to go beyond that to ask about other individuals

25 where such policies were applied, she did not -- she was not

12

1   permitted to answer those questions.

2          THE COURT:  Well, because that's not what this asks

3   for.  Okay.

4          MR. ANDREWS:  Okay, Your Honor.

5          THE COURT:  There's a reason why 30(b)(6) notices

6   are usually a lot longer than this and more detailed than

7   this.  The one I do have [indiscernible] last one, all

8   affirmative defenses asserted by the defendants and/or to be

9   relied upon in any pleading up to and including trial.  Then

10  let me just ask Ms. Chiclacos.

11         Was this [indiscernible] supposed to be responding

12  to that category?

13         MS. CHICLACOS:  And she was prepared for that

14  category, Your Honor.  For example, our answer included

15  affirmative defenses such as the legitimate reason for

16  plaintiff's termination that he availed to comply -- availed

17  himself of Raymour and Flanagan's policies.  Because of this

18  last catch-all, I allowed Mr. Andrews to question the witness

19  all morning on information relating to Mr. Friedman, which she

20  did answer all the questions.  Just because she wasn't able to

21  say, I've never seen the affirmative defense of laches or

22  unclean hands before doesn't mean she was able to answer the

23  question.

24         Your Honor might remember that we had to call you

25  during this deposition for a ruling and you told Mr. Andrews

1  that if he was dissatisfied with her ability to answer

2  questions on the affirmative defenses that he should go

3  through each one, ask her specific questions.  He did not do

4  so and just ended the deposition.  He merely put the answer in

5  front of her and said, "Have you ever seen this as worded

6  before?"  I -- she was prepared to answer factual questions

7  about the affirmative defenses, which she did.

8         MR. ANDREWS:  Your Honor, one of the first things I

9  did was ask her about -- asked the witness about each one of

10  the affirmative defenses.  The witness, as Ms. Chiclacos

11  explained to you, testified that she had not seen and was not

12  familiar with any one of the affirmative defenses asserted in

13  the affirmative -- in the answer in the affirmative defenses.

14         THE COURT:  Well, she didn't -- hadn't seen the

15  document.  She told you that.

16         MR. ANDREWS:  That's correct.  That's correct.  And

17  we got --

18         THE COURT:  Rather than [indiscernible] sentence

19  here --

20         MR. ANDREWS:  I --

21         THE COURT:  -- did you ask her about the substance

22  of the affirmative defense?

23         MR. ANDREWS:  Yes, I did, Your Honor.  I --

24         THE COURT:  Give me an example.

25         MR. ANDREWS:  I asked the witness if she had any

14

1   information -- any firsthand information about the

2   circumstances leading up to his termination.  She implied --

3   I'm sorry -- she answered that she had not.  She answered that

4   she had not even read any of the documents leading up to his

5   termination.

6          THE COURT:  It doesn't matter for purposes of the

7   30(b)(6) witness.  They don't have to have firsthand

8   information in anything.  They are there as the corporate

9   representative.  They're prepared by counsel.  They can

10  [indiscernible] as to what the company's position is.  So

11  unless she had any personal knowledge here or not is

12  irrelevant to the 30(b)(6) notice.

13         MR. ANDREWS:  Yes, Your Honor.  I under --

14         THE COURT:  Did you go beyond that?

15         MR. ANDREWS:  Yes, I did, Your Honor.  I asked the

16  witness how she prepared to -- for her deposition.  The

17  witness testified that she spent an hour the day before the

18  deposition reading only one document, the employee manual.

19  She testified that she was not familiar with the defense of

20  the claim and she had no factual knowledge regarding the

21  circumstances of his termination.  And I'm not only talking

22  about firsthand direct involvement.  I can't -- it's difficult

23  for me to articulate.  She just did not have knowledge

24  regarding Mr. Friedman's termination and the circumstances of

25  it.  She did not have knowledge regarding the claims of age

1   and disability discrimination that were asserted by

2   Mr. Friedman.

3         THE COURT:  And [indiscernible] ruling and I told

4   you to go through each of the [indiscernible] with her and it

5   sounds like you didn't do that.

6         MR. ANDREWS:  I continued to question her about her

7   knowledge and I had previously asked her about every single

8   one of the affirmative defenses.  I really didn't know what

9   else to do after that point.

10        THE COURT:  All right.  So what is it you expect the

11  Court to direct the defendants to do?

12        MR. ANDREWS:  I -- well, I have one specific idea.

13  Ms. Delgennio, the 30(b)(6) designee testified that there was

14  an HR person who reported to her -- I forget her name but it's

15  in the deposition -- who appears from her testimony to have

16  been more directly involved in the termination of

17  Mr. Friedman.  I --

18        THE COURT:  So she's a fact witness, not a 30(b)(6)

19  witness, correct?

20        MR. ANDREWS:  I believe that she is -- she would

21  have been the most appropriate 30(b)(6) witness.

22        THE COURT:  [Indiscernible] here, Mr. Andrews.  The

23  point of 30(b)(6) I just said a few minutes ago is to hear the

24  company's position with regard to each of those elements.  You

25  had an opportunity to sit there and go through, as I directed

16

1    you to do or suggested that you do, go through each

2    affirmative defenses with her and find out what the company's

3    position was with respect to each of those affirmative

4    defenses.  You didn't do that.

5              MR. ANDREWS:  I think I did, Your Honor.

6              THE COURT:  Well, fine.  Then you got what you got,

7    all right?

8              MR. ANDREWS:  Okay.

9              THE COURT:  [Indiscernible] somebody else out there

10   that has factual information and personal firsthand

11   information then that's fact witness.  That's somebody else

12   you could have called.

13             MR. ANDREWS:  I understand your point perfectly,

14   Your Honor.  I respectfully submit that the corporation does

15   have an obligation to designate an appropriate 30(b)(6)

16   witness, not simply any witness who can be labeled a 30(b)(6)

17   witness.

18             THE COURT:  I understand that.  And, again, that

19   doesn't mean that they're required to designate somebody with

20   "personal knowledge" of these events here.  They designated a

21   corporate representative whom they say they prepared to

22   provide answers, especially these types of answers, with

23   regard to the affirmative defenses.  They've prepared this

24   person to do that and you're telling me you're not happy with

25   the answers that you got.

1           MR. ANDREWS:  That's what I'm saying.  Yes, Your

2   Honor.

3           THE COURT:  Okay.  Well, I think you're stuck with

4   what you have.

5           MR. ANDREWS:  Okay, Your Honor.

6           THE COURT:  Mr. Andrews, all right?

7           MR. ANDREWS:  Okay.

8           THE COURT:  I know that -- I'm still on number five.

9   I know, Ms. Chiclacos, that you indicated you gave names of

10  witnesses and what information or ultimate basis of knowledge

11  of each of those folks in your original six disclosures,

12  correct?

13          MS. CHICLACOS:  Yes.

14          THE COURT:  All right.  And just out of curiosity

15  was this other HR person who's being referred to here listed

16  there?

17          MS. CHICLACOS:  Yes, Your Honor.

18          THE COURT:  Okay.  All right.  The request here is

19  just slight different and I suppose really the only question

20  here is, is somebody going to be presented for the defense

21  side to specifically testify about those affirmative defenses

22  at trial.  Does anybody here have anyone more you want to

23  present?

24          MS. CHICLACOS:  In our original disclosures?

25          THE COURT:  Yes.

18

1          MS. CHICLACOS:  No, Your Honor.

2          THE COURT:  Is there's somebody different or in

3    addition to 30(b)(6) witnesses you presented?

4          MS. CHICLACOS:  No, Your Honor.

5          THE COURT:  Okay.  All right.  Number six, the

6    identities of any and all individuals named in defendant's

7    initial disclosures, document requests or [indiscernible] who

8    have knowledge of any affirmative defenses including

9    affirmative defenses in this action.  What does that mean?  If

10   there -- want their identity.  Aren't they named in the

11   Rule 26 disclosures?

12         MR. ANDREWS:  Yes, Your Honor.  This goes back to

13   what you -- the previous point, knowledge of affirmative

14   defenses and whether any of these individuals will be

15   testifying about those affirmative defenses at trial.  We

16   accept --

17         THE COURT:  Then you just got your answers.

18         MR. ANDREWS:  We accept that answer.  We understand

19   that answer.

20         THE COURT:  Number seven, all emails concerning

21   plaintiff including [indiscernible] with any [indiscernible]

22   last name or alluded thereto or any [indiscernible] subject

23   line, to, from or line copy fields of any email.  First of

24   all, were these things requested in your document requests?

25         MR. ANDREWS:  I believe they were, Your Honor.  I

1   can look.

2          THE COURT:  First of all, I don't understand why you

3   wouldn't have further discussion with counsel.  First of all,

4   this is way too broad.  The [indiscernible] got this is not

5   always so lucky with plaintiff's name but had some search

6   terms to limit the scope of the production, otherwise -- I

7   mean, how many years did she work there?  Having an email that

8   was sent has absolutely nothing to do with this case and I

9   don't require them to produce that.  So, you know, what did

10  you want to do about ESI early on in this case?  We've had a

11  discussion about this, you know, multiple conferences ago.

12         MR. ANDREWS:  We have had a number of cordial and

13  productive discussions with Ms. Chiclacos where we've tried to

14  narrow the scope of most of the requests.

15         THE COURT:  But do you understand --

16         MS. CHICLACOS:  Your Honor --

17         THE COURT:  -- I'm not requiring the defendants to

18  produce every email in their possession that mentions her

19  name?

20         MS. CHICLACOS:  Your Honor, if I may.

21         THE COURT:  Go ahead.

22         MS. CHICLACOS:  We agreed to produce ESI in hard

23  copy format because we knew that this would not be an

24  intensive ESI case.  This was a sales associate who didn't use

25  email.  We produced all emails in hard copy format.  There

20

1  weren't that many.

2          THE COURT:  Okay.  The production that you made, was

3  it in conjunction with the breadth of this request?

4          MS. CHICLACOS:  Yes, this was in our -- we

5  supplemented our production from Ms. Goldstein but in our

6  major production to his document requests emails were

7  contained.

8          THE COURT:  Okay.

9          MS. CHICLACOS:  In hard copy format per our

10 agreement.

11         THE COURT:  All right.  Then did you as counsel

12 oversee and give instructions as to how this was to be done to

13 your client?

14         MS. CHICLACOS:  In conjunction with my client, yes.

15         THE COURT:  Yes.

16         MS. CHICLACOS:  Yes.

17         THE COURT:  All right.  So what is it you claim they

18 haven't given you?

19         MR. ANDREWS:  We didn't see any hard copies of the

20 emails that there appear to have been breaks in the dates.

21 They did not seem to be complete chains.  We just wanted

22 reassurance that those were the complete chains of emails

23 and --

24         THE COURT:  Do you know if that's the case or not?

25         MS. CHICLACOS:  Your Honor, I believe he's referring

21

1  to -- and this goes to categories eight and nine.  They're

2  specifically referring to an email that I believe is from 2005

3  when he first started working for the company.  That wasn't

4  even contained on the server.  It was printed and kept in his

5  personnel file.  That had something to do with his changing

6  his payroll status when he transferred to another location.

7  Everything that we have that -- in their full format has been

8  produced.

9          THE COURT:  [Indiscernible]

10          MR. ANDREWS:  We -- I mean, if that's counsel's

11  representation we recognize it.

12          THE COURT:  All right.  What about number nine,

13  [indiscernible] reaction?  Do you know what this is referring

14  to, Ms. Chiclacos?

15          MS. CHICLACOS:  No, I don't.  I need Mr. Andrews to

16  explain this.

17          THE COURT:  Okay.  It looks like whatever this

18  particular document is, 0019, has been redacted in some

19  fashion.

20          MS. CHICLACOS:  I believe, Your Honor, that this is

21  the -- this is one of these emails that was printed out from a

22  long time ago that someone -- my assumption is highlighted

23  over a small portion of it that's completely irrelevant to the

24  email and that's what they're looking for.

25          MR. ANDREWS:  We accept that response.  We would

22

1  like a privilege log for that document.

2          THE COURT:  You know, if you have the original of

3  that document send to me for in camera review.  We also have

4  [indiscernible], all right.

5          MS. CHICLACOS:  Okay.  If we do, Your Honor, like I

6  said this was an old email that was printed off with the file.

7  I believe this is the only copy, but I will certainly double-

8  check.

9          THE COURT:  All right.  Number ten, production of

10 all electronic messages and emails of Ms. Goldstein's that are

11 responsive to plaintiff's document requests.

12         MS. CHICLACOS:  If I may, Your Honor.

13         THE COURT:  Go ahead.

14         MS. CHICLACOS:  Ms. Goldstein, who I'm sure we'll

15 get to some issues with her in a moment --

16         THE COURT:  Yes.

17         MS. CHICLACOS:  -- is a current Raymour and Flanagan

18 employee residing in Florida on medical leave of absence.  We

19 deposed her.  Walker Harman deposed her on Friday in Florida.

20 She testified during deposition that she personally had no

21 emails, no text messages, no documents in her possession

22 relating to Mr. Friedman.

23         Ms. Goldstein went out on leave months before we

24 first got a demand letter from The Harman Firm relating to

25 Mr. Friedman, so she was gone, so she had no access to email,

23

1  no access to Raymour and Flanagan's files.

2          THE COURT:  Meaning she couldn't doctor it then if

3  she wanted to.

4          MS. CHICLACOS:  Absolutely had no access to

5  anything.  So obviously within our course of responding to the

6  discovery requests Ms. Goldstein testified she kept a

7  personnel file in the Garden City showroom that was produced,

8  so Raymour and Flanagan obviously undertook a search of her

9  records to see if there were any responsive documents.

10          THE COURT:  All right.  Did she -- let me ask

11  [indiscernible] to her.  With regard to her computer that she

12  used when she was in Garden City, is it?

13          MS. CHICLACOS:  Yes.

14          THE COURT:  All right.  Was a search done of her

15  computer files in terms of her own email [indiscernible] if

16  Mr. Goldstein [indiscernible]?

17          MS. CHICLACOS:  I believe so and she -- like I said

18  earlier, this was not a situation where these -- she was a

19  manager of about 35 sales associates.  She didn't use email

20  and she testified she couldn't even recollect any emails

21  relating to Mr. Friedman.

22          THE COURT:  Okay.  One thing I will ask you to do

23  just to put this to bed --

24          MS. CHICLACOS:  Yeah.

25          THE COURT:  -- is to get the declaration from

1  somebody in regards to the office who can confirm that her

2  computer that she used was searched for any emails regarding

3  Mr. Friedman.

4         MS. CHICLACOS:  Your Honor, certainly.  There might

5  be -- okay, sure.

6         THE COURT:  All right.  And if they found or find

7  anything turn them over.  If they don't, we'll have a

8  declaration to be is set forth [indiscernible] search and will

9  be found.

10        MS. CHICLACOS:  Okay.

11        THE COURT:  Okay.  All right.  This number 11,

12  footnote says that [indiscernible] produce this information

13  forthwith.  What is this?  This business plan, $750,000.00

14  business plan.

15        MR. ANDREWS:  Your Honor, plaintiffs are not quite

16  sure what it is, which is why we're asking for full

17  disclosure.  It appears to be some sort of sales tool that was

18  used to determine the plan for Mr. Friedman.  Sales objectives

19  for Mr. Friedman.

20        THE COURT:  Do you know what this is?

21        MS. CHICLACOS:  I'm not sure.  There was not a

22  specific plan made for each associate.  There is a general

23  plan that applied to all associates within the Garden City

24  showroom that had to meet a minimum of $750,000.00 per year.

25  That's what --

25

1          THE COURT:  [Indiscernible] turn over to --

2          MS. CHICLACOS:  It contained other documents, yes.

3          THE COURT:  Okay.  All right.  Well, I'll leave you

4  to talk about that if necessary.  It sounds to me if based on

5  the fact that there's no second document [indiscernible]

6  plaintiff that should be resolved.

7          This number 12, sworn verification.  The defendant

8  [indiscernible] defense attorney in their '03 evaluations

9  [indiscernible] by defendant and that the defendant has no

10  means of better dating those and [indiscernible] without a

11  date of issue.

12          First of all, did your client get copies of his

13  performance reviews?

14          MR. ANDREWS:  We got copies of three performance --

15          THE COURT:  No, no.  You're not answering.

16          MR. ANDREWS:  I'm sorry.  Yes, Your Honor.

17          THE COURT:  Does your client -- did your client get

18  copies of them when they were being done?

19          MR. ANDREWS:  Yes, Your Honor.

20          THE COURT:  Okay.  So you have them.

21          MS. CHICLACOS:  No.

22          THE COURT:  Hang on.  Do you or don't you?

23          MR. ANDREWS:  To the extent that Mr. Friedman held

24  onto copies when they were received, we have what he has.

25          THE COURT:  Okay.  And what does he have?

1          MR. ANDREWS:  He has them.  There --

2          THE COURT:  This is not [indiscernible] secrets.

3     Whatever he has, he has.  That should have been turned over to

4     defense counsel and wasn't.

5          MR. ANDREWS:  Yes, Your Honor.

6          THE COURT:  Okay.  So what are you talking about?

7          MR. ANDREWS:  We're talking about three performance

8     improvement plans that were prepared that were essentially

9     disciplinary write-ups of Mr. Friedman addressing his alleged

10    poor sales performance, two of which are undated, one of which

11    is dated.  We -- all we're doing is seeking assurance that

12    there are no other performance assurance plans or that there

13    isn't a better way to get a date for the two that are undated.

14         THE COURT:  Yeah.  What better way to get

15    [indiscernible] from your client who actually you tell me got

16    what he got, yes?

17         MR. ANDREWS:  Mr. Friedman is not sure that he

18    received a copy and held onto a copy of every such document.

19         THE COURT:  So he doesn't know how many performance

20    reviews he got?

21         MR. ANDREWS:  Well, that's correct but this --

22    specifically he doesn't know how many disciplinary write-ups

23    he got if they were not always given to him.  The defendants

24    have produced these performance improvement plans and that's

25    what we're inquiring about, whether the defendants have

27

1  produced the performance improvement plans and the defendants

2  have produced.  We are not --

3          THE COURT:  No other confirmation that there are any

4  others is what you're telling me.

5          MR. ANDREWS:  That's correct.

6          MS. CHICLACOS:  There are no others, Your Honor.

7          THE COURT:  All right.

8          MS. CHICLACOS:  I'd also like to note that plaintiff

9  didn't produce any performance evaluations that he had in his

10 possession.

11         THE COURT:  Mr. Andrews.

12         MR. ANDREWS:  Well, he produced whatever he had.  I

13 had -- if he kept them they were produced.  I can't -- I'm not

14 certain if he kept every single thing that was handed to him.

15         THE COURT:  You just through done telling me that he

16 has his performance reviews.

17         MR. ANDREWS:  If he was handed performance reviews

18 and kept them, we would have produced them.  I --

19         THE COURT:  So you can't tell me as you sit here

20 whether or not he got them?

21         MR. ANDREWS:  I believe he's testified in his

22 deposition that he received performance reviews.  I'm not

23 certain if he retained each one of them.

24         THE COURT:  And this [indiscernible] litigation you

25 never asked him that?

28

1          MR. ANDREWS:  I have asked him that.  I have asked

2    him that, Your Honor.  And Mr. Friedman does not recall

3    whether or not he retained each performance review that he was

4    given.

5          THE COURT:  All right.  Well, you know what?  You're

6    going to go back and talk to your client.  Today is Tuesday.

7    By Friday you're going to give an answer ready to Mr.

8    Chiclacos whether he's got any of these documents.  And if he

9    does, even if they have duplicates of this form you said you

10   turned everything over, give her copies.  I want to make sure

11   this issue is with [indiscernible].

12         MR. ANDREWS:  I will speak to him today, Your Honor.

13         THE COURT:  Who actually performed the reviews

14   [indiscernible] evaluations of these performance improvement

15   plans for the plaintiff?  Is it Ms. Goldstein or somebody

16   else?

17         MS. CHICLACOS:  Well, he worked at three stores,

18   Your Honor.

19         THE COURT:  Yeah.

20         MS. CHICLACOS:  So at the time of his termination

21   and the couple years proceeding that it was Ms. Goldstein and

22   she testified about that on Friday.

23         THE COURT:  That's what I was going to say.  Was she

24   asked about this at her deposition, Mr. Andrews?

25         MR. ANDREWS:  I was not at the deposition but I

1   believe she was asked about this.

2           THE COURT:  All right.  What is the [indiscernible]?

3   I mean, I realize whoever conducted the deposition

4   [indiscernible] she was the one responsible for doing all of

5   them.  Why do I turn around and make her -- anybody else give

6   a sworn declaration that that's all that's there?  It was a

7   perfect opportunity to explore that issue at the deposition.

8           MR. ANDREWS:  We understand, Your Honor.

9           THE COURT:  Okay.  All right.  So you had

10  Ms. Goldstein's deposition last Friday?

11          MS. CHICLACOS:  Yes, Your Honor.

12          THE COURT:  Okay.  And the last one here, which is

13  14, production of a privilege log or any documents defendant

14  has either withheld or redacted on the basis of privilege.

15  All right.  Did you withhold anything on the grounds of

16  privilege?

17          MS. CHICLACOS:  No, Your Honor.

18          THE COURT:  All right.  So that's I assume the

19  reason why there's no [indiscernible] respond?

20          MS. CHICLACOS:  Correct.

21          THE COURT:  And the only issue with redaction I take

22  it has to do with that [indiscernible], correct?

23          MS. CHICLACOS:  Correct.

24          THE COURT:  All right.

25          MS. CHICLACOS:  I will look at that email and if I

30

1 can get an answer to Mr. Andrews, I'll explain to him whether

2 or not there's a clean copy or not.

3        THE COURT: All right. All right. That seems to be

4 it for the February 8th letter, so I have granted in part to

5 the extent as set forth here this morning granting in part

6 that motion to compel.

7        Let me go over now to -- and just in terms of what I

8 direct you to produce in ten days, okay? Ship out is ten

9 days.

10        MS. CHICLACOS: Okay. Your Honor, I would just like

11 to say if you're going to now turn to the issues raised by

12 Mr. Andrews' letter from yesterday, I --

13        THE COURT: Yeah, I [indiscernible] --

14        MS. CHICLACOS: I obviously didn't have a chance to

15 put a response in writing, but I'm able to speak to all of

16 them.

17        THE COURT: Well, what I was about to say is the

18 following. My intention was to have you two take the time to

19 talk to each other to try to resolve what's raised here

20 because frankly I don't see any terms [indiscernible] --

21        MS. CHICLACOS: Okay.

22        THE COURT: -- to each other or not, so --

23        MS. CHICLACOS: That's fine, Your Honor.

24        THE COURT: All right. I'll give you an opportunity

25 now. Hold on a minute.

31

1          All right, [indiscernible] so you can stay here in

2     the courtroom and go through what you need to go through.

3          MR. ANDREWS:  Thank you.

4          THE COURT:  Whatever is unresolved I'll come out and

5     talk to you about them when you're finished, all right?  You

6     let us know.

7          MR. ANDREWS:  Okay.

8          (Off the record.)

9          THE COURT:  Back on the record.  So where are we?

10         MR. ANDREWS:  Your Honor, Mr. Chiclacos and I have

11     discussed the February 25th letter item by item.  With respect

12     to "i" and "ii" Ms. Chiclacos advises me that the documents

13     that would be referred to in those categories have already

14     been produced and we accept her response.  With respect to

15     "iii," the documentation related to the termination of the

16     younger individual that Ms. Goldstein believes was terminated

17     for poor performance, Ms. Chiclacos advised me that she will

18     look to see if that information exists and that person can be

19     identified.

20         With respect to items four, five -- I'm sorry, yes.

21     With respect to items four and five, Ms. Chiclacos advises

22     that they will not produce those categories of documents.

23         THE COURT:  Which ones?

24         MR. ANDREWS:  "iv" and "v," documentation related to

25     the 2010 year-end sales figures for the associates as they

1  show plaintiff's allegedly unflattering figures contrasted

2  with his former colleagues' numbers, so basically comparative

3  performance data.  And "v" is performance improvement plans

4  for two other co-workers whom we know only as Raffael [Ph.]

5  and Karen [Ph.].  Ms. Chiclacos advises that the defendant is

6  not -- will not produce documents responsive to those

7  requests.

8           THE COURT:  Are they relevant to your request?

9           MR. ANDREWS:  Are they relevant to us for their

10  comparative significance, their comparative data.

11           THE COURT:  Based on what?  There are two points

12  here, age discrimination and disability discrimination,

13  correct?

14           MR. ANDREWS:  That's correct, Your Honor.

15           THE COURT:  All right.  So how are they comparators?

16           MR. ANDREWS:  We believe that there are other

17  colleagues whose performance was at or lower than

18  Mr. Friedman's for sales volume who were not terminated.

19           MS. CHICLACOS:  Your Honor, if I may, the reason I

20  agreed to produce documentation relating to a younger

21  individual who was terminated was because this came out for

22  the first time during Ms. Goldstein's deposition.

23           With respect to these remaining categories,

24  comparative sales data, coaching improvement plans for other

25  employees, plaintiff has had eight months to ask for this

1   information.  In the complaint itself he alleges that eight

2   other employees were put on coaching plans at the same time he

3   was.  He discusses other employees' performance.  He discusses

4   other specific employees that were allegedly not terminated.

5   And the day discovery closes they ask for this information.

6   And at this point, Your Honor, because this has been par for

7   the course throughout discovery in this matter, I will not

8   agree to it.  They had ample time to do it.

9           The one thing that came out for the first time on

10  Friday I will certainly look for, but the remainder of the

11  information they could have asked for in their document

12  requests.

13          THE COURT:  I mean, it's something newer than --

14  this has been an ongoing issue in this case, Mr. Andrews.

15  There's a great lack of effort on the plaintiff's side

16  responding to the [indiscernible] that were originally served

17  by the defendant.  There was a great lack of initiative issue

18  in terms of the plaintiff's own house [indiscernible] order

19  regarding discovery demands.  I would understand if there were

20  issues that came up as part of Ms. Goldstein's deposition

21  which would be "new information."  This is not new information

22  here.

23          MR. ANDREWS:  We feel that with respect to "v"

24  Rafael and Karen these are names that were raised at the

25  Goldstein deposition that we did not know previously.

34

1          THE COURT:  Well, there's previous information that

2    were any of these people involved and you did not move that

3    information.

4          MS. CHICLACOS:  And plaintiff himself testified.

5          MR. ANDREWS:  I'm not certain if I have a copy of

6    the plaintiff's document requests with me.  I believe that one

7    of the document requests did ask for this type of information,

8    Your Honor.

9          MS. CHICLACOS:  I have them, Your Honor.

10         THE COURT:  All right.

11         MS. CHICLACOS:  They're not contained within here.

12         THE COURT:  Well, we'll look at them.

13         MR. ANDREWS:  Thank you.

14         THE COURT:  You know, I've made clear from day one

15   in this case that this case was assigned to Judge Wexler and

16   that you're not hearing all [indiscernible] these deadlines

17   and you knew what your responsibilities were.

18                    [Pause in the proceedings.]

19         MR. ANDREWS:  There are some general categories of

20   requests.  I do not see a specific request for comparative

21   data, Your Honor.

22         THE COURT:  All right.  So I'm afraid you're out of

23   luck.

24         MR. ANDREWS:  I'm sorry?

25         THE COURT:  You're out of luck.

1          MR. ANDREWS:  Thank you, Your Honor.

2          THE COURT:  All right.  What about number six?

3          MR. ANDREWS:  Number six, Ms. Chiclacos advises that

4    we -- she has produced this.  We accept that response.

5          Number seven, sales performance reports from 2011 of

6    Kevin, Theresa [Ph.] and Joan.  Again, these are names that

7    came up in the Goldstein deposition for the first time.

8          THE COURT:  Yeah.  But it goes back to the same

9    issue just discussed, so -- number eight.

10          MR. ANDREWS:  We discussed this and I'm not really

11   sure how to best address this.  Ms. Goldstein, as you were

12   advised by Ms. Chiclacos is out on medical leave, she

13   testified that she herself does not possess responsive

14   documents with her.  It's clear that she did not participate

15   herself in the search for responsive documents and that

16   concerned us simply because we believe that she would have

17   been a person with a high degree of knowledge as to the

18   existence of any such responsive documents.

19          THE COURT:  What was the date of defendant's

20   representation of her had to do with anything here?

21          MR. ANDREWS:  It is unclear as to when Ms. Goldstein

22   became aware of the lawsuit and what role, if any, she played

23   in assisting the defendants in providing discovery responses.

24          THE COURT:  Why wasn't this all explored at the

25   deposition?  You had the witness right there.  Had every

36

1  opportunity to ask her those questions.

2          MR. ANDREWS:  I was not at the deposition myself,

3  Your Honor.

4          THE COURT:  That doesn't excuse it, Counsel.

5          MR. ANDREWS:  Yes.

6          THE COURT:  You know, you should have talked to who

7  was at the deposition before you wrote this letter and came

8  here today.  Okay.  I've already directed the defendant to go

9  back and have somebody check the computer which Ms. Goldstein

10  worked to go through and do a search to see whatever

11  responsive documents may be there.  If there aren't any, you

12  have a declaration of that person as to what search was

13  undertaken and what they found.  So that's as far as you go

14  with this.

15          MR. ANDREWS:  That's --

16          THE COURT:  Again --

17          MR. ANDREWS:  That's satis --

18          THE COURT:  -- whoever was conducting the deposition

19  had ample opportunity to explore those areas through the

20  deposition questioning, so I'll --

21          MS. CHICLACOS:  He did, Your Honor.

22          THE COURT:  Okay.  What about the last one?

23          MR. ANDREWS:  Your Honor, that's a catch-all

24  category.  In light of your rulings it may not be necess --

25          THE COURT:  I'm denying that.

1            MR. ANDREWS:  I'm sorry?

2            THE COURT:  I'm denying that.

3            MR. ANDREWS:  Yeah, I understand, Your Honor.

4            THE COURT:  All right.  All right.  So you've got

5    one category [indiscernible] check off and that's

6    [indiscernible] if I understand [indiscernible],

7    Ms. Chiclacos.  Correct?

8            MS. CHICLACOS:  That is correct, Your Honor.

9            THE COURT:  All right.  And same thing.  Whatever

10   you find within the ten days to --

11           MS. CHICLACOS:  That's fine, Your Honor.  Um-hum.

12           THE COURT:  All right.  Then looking at the case

13   management order discovery ended February 25th.  We'll have

14   what you don't have we're talking about today within ten days.

15   Mr. Andrews, the question here is whether anybody tends to

16   move for summary judgment.  Is the plaintiff intending to make

17   a motion?

18           MR. ANDREWS:  The plaintiff does not presently

19   intend to move for summary judgment.

20           THE COURT:  Does not?

21           MR. ANDREWS:  No.

22           THE COURT:  Okay.  What about your client?

23           MS. CHICLACOS:  We certainly are, Your Honor.

24           THE COURT:  All right.  So I don't see any reason

25   that [indiscernible].  All this is, is a letter request to

1  Judge --

2          MS. CHICLACOS:  Absolutely not.  That has no bearing

3  on that.

4          THE COURT:  Okay.

5          MR. ANDREWS:  I'm sorry, I didn't hear the last

6  portion, Your Honor.

7          THE COURT:  The dispositive motion process is issued

8  by the [indiscernible] letter to Judge Wexler.  And I said, I

9  don't see any reason to rule that [indiscernible] date since

10 it's in the letter request for the pre-motion conference.

11         MR. ANDREWS:  Very good, Your Honor.

12         THE COURT:  All right.  Were there any experts used

13 in this case?

14         MR. ANDREWS:  There have not been yet and I for the

15 plaintiffs don't anticipate one.

16         THE COURT:  The plaintiffs do not?

17         MR. ANDREWS:  No.  No, Your Honor.

18         THE COURT:  [indiscernible]

19         MS. CHICLACOS:  No, Your Honor.

20         THE COURT:  The deadline passed anyways.

21         MS. CHICLACOS:  Correct.

22         THE COURT:  All right.  All right.  Then a joint

23 pretrial order is due on March 25th and then we'll be back

24 here on a pretrial conference on April 2nd.  So the rest of

25 this is [indiscernible] housekeeping matters [indiscernible]

39

1  otherwise, we're [indiscernible].  Is there anything else you

2  want to raise today while I have you both here on behalf of

3  plaintiff, Mr. Andrews?

4          MR. ANDREWS:  No, Your Honor.

5          THE COURT:  Okay.  Anything else on your side on

6  behalf of the defendant, Ms. Chiclacos?

7          MS. CHICLACOS:  No thank you, Your Honor.

8          THE COURT:  All right.  We'll get this into an order

9  sometime this evening, all right?

10         MS. CHICLACOS:  Thank you.

11         MR. ANDREWS:  Thank you.

12         THE COURT:  All right.  Have a good rest of the day.

13         MR. ANDREWS:  Thank you.  You too, Your Honor.

14             (Proceedings concluded at 11:59 a.m.)

15                     * * * * * *

16

17

18

19

20

21

22

23

24

25

40

1          I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4

5

6                        _____

7                        Ruth Ann Hager, C.E.T.**D-641

8    Dated:  February 28, 2013

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25