UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LAWRENCE I. FRIEDMANN,

                                  Plaintiff,

- against -

RAYMOUR FURNITURE CO., INC., and LUCY GOLDSTEIN, individually.

                                  Defendants.

12 CV 1307
(LDW) (AKT)

**DEFENDANT'S LOCAL RULE 56.1 STATEMENT
OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

       Pursuant to Local Civil Rule 56.1 of this Court, and in support of its motion for summary judgment seeking the dismissal of plaintiff Lawrence Friedmann's ("Plaintiff" or "Friedmann") Complaint in its entirety, defendant Raymour Furniture Company, Inc., d/b/a Raymour & Flanigan Furniture (the "Defendant" or "Raymour & Flanigan"), by its attorneys Nixon Peabody LLP, submits the following statement of facts as to which there is no genuine issue to be tried.

       This statement is supported by the accompanying Declaration of Tara E. Daub, Esq. ("Daub Decl.") and the documentary exhibits annexed thereto ("Daub Decl. Exh. __"), submitted in support of Defendant's motion for summary judgment.

**STATEMENT OF MATERIAL FACTS AS TO WHICH
DEFENDANT CONTENDS THERE IS NO GENUINE ISSUE TO BE TRIED**

**Raymour & Flanigan and its Employment Policies**

       1.     Raymour & Flanigan is a furniture retailer. Relevant to this case, Raymour & Flanigan operates multiple furniture showrooms across the State of New York, including one in Garden City, one in Carle Place and one in Yonkers. Daub Decl. Exh. G, Raymour & Flanigan's May 25, 2011 Associate Handbook ("Associate Handbook"), at 6-7.

14434920

- 2 -

2.	Raymour & Flanigan has an Associate Handbook that clearly establishes its policy in favor of equal employment opportunity against discrimination and all forms of unlawful harassment.  Daub Decl. Exh. G, Associate Handbook, at 45-56; Plaintiff's Deposition ("Pl. Dep."), at 28-29.

3.	As part of its commitment to equal employment opportunity, Raymour & Flanigan maintains a disability policy, which instructs employees to contact a Human Resources representative in the event the employee needs to request a reasonable accommodation of a disability.  Patricia Delgenio Deposition ("Delgenio Dep.") 78-82; Daub Decl. Exh. G, Associate Handbook, at 46.

4.	Raymour & Flanigan's Associate Handbook also contains a clear statement that strongly encourages employees to report conduct believed to be in violation of the EEO policy, and provides several alternative channels, including an anonymous, toll-free "WORK-AS-1" confidential hotline, through which an employee can make such a report.  Daub Decl. Exh. G, Associate Handbook, at 45-46.

5.	The Company's policies strictly forbid any form of retaliation against an employee who reports concerns of discrimination, and encourages employees who believe they have been retaliated against to report their concerns.  Daub Decl. Exh. G, Associate Handbook, at 48.

6.	Raymour & Flanigan also maintains an open door policy, and Sales Associates are encouraged to speak with its Human Resources Department or any member of management regarding any employment issue.  Delgenio Dep. 46-48; Daub Decl. Exh. G, Associate Handbook, at 65.

14434920

7. Sales Associates are informed of the open door policy during the orientation process when they first start working for Raymour & Flanigan. Delgenio Dep. 47.

8. In addition to maintaining employment policies, Raymour & Flanigan provides training to Sales Associates and its management team regarding professional conduct and anti-discrimination and harassment awareness training. Delgenio Dep. 70; Pl. Dep. 28-29.

**Plaintiff's Employment History with Raymour & Flanigan**

9. On or about October 20, 2005, Plaintiff applied for employment with Raymour & Flanigan as a Sales Associate. Daub Decl. Exh. H, Plaintiff's Application for Employment.

10. Shortly thereafter, Raymour & Flanigan hired Plaintiff as a commissioned Sales Associate in its Yonkers location. Pl. Dep. 25-28.

11. At the time of his hire, Plaintiff was age 64, based on Plaintiff's June 17, 1941 date of birth. Daub Decl. Exh. A, Complaint at ¶ 41, n.1.

12. Upon his hire, as well as during various times during his employment, Plaintiff received training regarding Raymour & Flanigan's Human Resources policies, as well as copies of Raymour & Flanigan's Associate Handbooks, and various documents relating to the duties and responsibilities of a Sales Associate. Pl. Dep. 28-29; Daub Decl. Exh. I, Plaintiff's October 7, 2009 Receipt and Acknowledgement of Raymour & Flanigan's Associate Handbook.

13. Plaintiff's primary duty and responsibility as a Sales Associate was the sale of Raymour & Flanigan's merchandise to its customers. Lucy Goldstein Deposition ("Goldstein Dep.") 39-40; Pl. Dep. 32.

14. As a commissioned Sales Associate, Plaintiff was required to produce annually a minimum of $750,000 in delivered sales, meaning that he was required to have $750,000 of

merchandise actually delivered to customers each year, and to produce monthly sales consistent with meeting the annual requirement.  Pl. Dep. 30-31.

15. During his time at the Yonkers showroom, Plaintiff performed his duties in a satisfactory manner.  Pl. Dep. 32, 45.

16. In or about March 2006, Plaintiff requested – and Raymour & Flanigan granted – a transfer to Defendant's Carle Place location.  Pl. Dep. 33-35.

17. Plaintiff's transfer request was approved by Lucy Goldstein, Store Manager of Carle Place.  Pl. Dep. 33-35.

18. Ms. Goldstein had met Plaintiff when he was hired by Raymour & Flanigan in 2005.  Pl. Dep. 34.

19. At the time Ms. Goldstein approved Plaintiff's transfer request, he was 65 years old.  Daub Decl. Exh. A, Complaint at ¶ 41, n.1.

20. At the Carle Place location, Plaintiff reported to Ms. Goldstein.  Pl. Dep. 33-35.

21. Ms. Goldstein is 66 years old.  Goldstein Dep. 23.

22. During Ms. Goldstein's employment with Raymour & Flanigan, she received yearly training, which included anti-discrimination training and how to respond to employee requests for accommodations related to disabilities.  Goldstein Dep. 54-57; Delgenio Dep. 70-72.

23. While working at the Carle Place showroom, Plaintiff continued to meet his annual sales goals.  Goldstein Dep. 27-29; Pl. Dep. 45.

24. In 2008, Raymour & Flanigan opened its Garden City location, which became its largest and highest volume showroom.  Goldstein Dep. 29; Pl. Dep. 36.

25. As Ms. Goldstein was slated to become the Store Manager of that location, she had the opportunity to hand-pick Sales Associates to bring with her to the Garden City showroom. Goldstein Dep. 29; Pl. Dep. 36.

26. Ms. Goldstein selected Plaintiff to join her at this new location, presenting him with the opportunity to work in a higher sales volume location, to produce even higher delivered sales and, thereby, earn higher sales commissions. Goldstein Dep. 29; Pl. Dep. 36-37.

27. At the time Ms. Goldstein selected Plaintiff for transfer to the Garden City showroom, he was 67 years old. Daub Decl. Exh. A, Complaint at ¶ 41, n.1.

28. Thus, in or about October 2008, Plaintiff began working in the Garden City showroom as a commissioned Sales Associate. Goldstein Dep. 29; Pl. Dep. 36-37.

29. In 2008 and 2009, Plaintiff met his annual sales goals while working at Garden City. Goldstein Dep. 30-31; Pl. Dep. 45.

30. According to Plaintiff, in March 2010, he had a flare-up of his sciatica, a medical condition that began in 2002. Pl. Dep. 89-97.

31. According to Plaintiff, the flare up of sciatica lasted approximately six months, from March 2010 to August 2010. Pl. Dep. 110.

32. During the period from March 2010 through August 2010, Plaintiff received treatments for his sciatica. Goldstein Dep. 34-36, 38-39; Pl. Dep. 95-97; Daub Decl. Exh. A, Complaint at ¶ 19.

33. Ms. Goldstein granted Plaintiff's requests for time off during this period, as needed. Goldstein Dep. 38-39; Pl. Dep. 100-101.

34. During this period, Plaintiff sat down at work in the showroom when his sciatica was bothering him. Pl. Dep. 103-105.

14434920

35. During this time period, Plaintiff never asked for any downward adjustment to his minimum sales goals. Pl. Dep. 154-155.

36. According to Plaintiff, the treatments were successful and the flare-up of sciatica lasted about six months, from March through August 2010. Pl. Dep. 110.

37. Plaintiff was fully recovered from the flare-up by September 2010. Pl. Dep. 110.

38. Plaintiff did not suffer from another flare-up during the remainder of his employment with Raymour & Flanigan. Pl. Dep. 110.

39. Plaintiff did not need or request any accommodations after September 2010. Pl. Dep. 110-111.

40. Plaintiff never contacted Human Resources to request any disability accommodation at any time during his employment with Raymour & Flanigan. Pl. Dep. 113.

41. Plaintiff never asked Ms. Goldstein for a disability accommodation related to his sciatica. Goldstein Dep. 76.

**Plaintiff's Failure to Meet Sales Goals Led to the Termination of His Employment**

42. For the period from January 2011 and May 2011 – long after having fully recovered from his 2010 sciatica flare-up – Plaintiff's 2011 year-to-date delivered sales were far below expected requirements. Goldstein Dep. 74-75; Pl. Dep. 67, 110.

43. By early May 2011, Plaintiff's 2011 year-to-date delivered sales were $53,537 below the minimum expectation for that point in the year and, thus, he was projected to complete delivered sales in the amount of only $617,435 for 2011, well below the mandated goal of $750,000. Daub Decl. Exh. J, Plaintiff's May 7, 2011 "Coaching for Success" plan ("May 7 Plan"); Pl. Dep. 66-68.

14434920

44. Ms. Goldstein was concerned that Plaintiff had missed a critical opportunity to reverse this trend during Raymour & Flanigan's "Friends & Family" event in early May 2011, a bi-annual event that presents Sales Associates with an opportunity to generate significant sales. Goldstein Dep. 42-43, 80-81; Pl. Dep. 79.

45. At Raymour & Flanigan, when a Sales Associate performs below expectations, he/she can be placed on a performance plan that summarizes the amount of time the Sales Associate has been performing below expectation, offers assistance to help improve the Sales Associate's performance, and sets a time frame in which the Sales Associate is expected to meet certain goals. Delgenio Dep. 26-27.

46. Accordingly, on May 7, 2011, Ms. Goldstein placed Plaintiff on a "Coaching for Success" plan. Daub Decl. Exh. J, May 7 Plan; Goldstein Dep. 74, 104-107; Pl. Dep. 66-68.

47. Plaintiff admits that the 2011 year-to-date sales numbers, and the stated $53,537 amount of the deficiency, as set forth in the May 7 Plan, were accurate. Pl. Dep. 67.

48. In the May 7 Plan, Ms. Goldstein noted for Plaintiff the areas of his sales that needed improvement, set short-term goals, and indicated that she – and all of Raymour & Flanigan's management team – was available to help Plaintiff reach his goals. Daub Decl. Exh. J, May 7 Plan.

49. Raymour & Flanigan's Human Resources Department was involved in Ms. Goldstein's placement of Plaintiff on the May 7 Plan, and Human Resources' conclusion was that the plan was in accordance with Raymour & Flanigan's policies and procedures. Delgenio Dep. 29-30.

14434920

50.     As set forth in the May 7 Plan, Ms. Goldstein counseled Plaintiff that in order for him to improve his performance, he needed to generate $20,000 in delivered sales for each week in the following two week period.  Daub Decl. Exh. J, May 7 Plan.

51.     Approximately two weeks later, on May 23, 2011, Ms. Goldstein provided Plaintiff with an updated "Coaching for Success" plan, which noted that Plaintiff's 2011 sales were still well below the goals that were set in the May 7 Plan.  Daub Decl. Exh. K, Plaintiff's May 23, 2011 "Coaching for Success" plan ("May 23 Plan").

52.     As reflected in the May 23 Plan, Plaintiff had only $6,807 in delivered sales during "Week 1" of the May 7 Plan, far below the $20,000 weekly goal.  Daub Decl. Exh. K, May 23 Plan.

53.      Ms. Goldstein again noted for Plaintiff the areas of his performance that needed improvement, and again offered to assist Plaintiff to reach his goals.  Daub Decl. Exh. K, May 23 Plan.

54.     Plaintiff never asked Ms. Goldstein – or anyone else at Raymour & Flanigan – for assistance during this time period.  Pl. Dep. 57-58.

55.     In early June 2011, Ms. Goldstein provided Plaintiff with a written performance evaluation noting specific areas of needed improvement and emphasizing that "Larry is below average in all areas – he needs to an immediate turn around."  Daub Decl. Exh. L, June 2011 Performance Evaluation; Goldstein Dep. 113.

56.     On June 13, 2011, because Plaintiff had not increased his sales numbers, Ms. Goldstein took further action and placed Plaintiff on an "Action Plan & Performance Agreement", giving him yet another, but final, opportunity to improve his performance.  Daub

14434920

Decl. Exh. M, Plaintiff's June 13, 2011 "Action Plan & Performance Agreement" ("June 13 Plan").

57. As set forth in the June 13 Plan, Plaintiff's 2011 delivered sales remained $48,190 below expectation. Daub Decl. Exh. M, June 13 Plan.

58. Plaintiff admits that the 2011 year-to-date sales numbers, and the amount of the deficiency, as set forth in the June 13 Plan, were accurate. Pl. Dep. 74-75.

59. During this time, Ms. Goldstein also arranged for Plaintiff to interview at other Raymour & Flanigan locations that sold less volume than the Garden City Showroom and had fewer "superstar" Sales Associates compared to Garden City. Goldstein Dep. 97; Pl. Dep. 38-39.

60. Ms. Goldstein hoped that Plaintiff could transfer to a different location, improve his performance in a less competitive location, and then she could re-hire him for the Garden City showroom. Goldstein Dep. 97.

61. Plaintiff did interview at the Carle Place showroom, but the Store Manager, Laura D'Ambrosio, declined to hire him because of his low 2011 sales metrics. Daub Decl. Exh. O, Laura D'Ambrosio's June 21, 2011 e-mail regarding Plaintiff; Goldstein Dep. 97; Pl. Dep. 38-39; Delgenio Dep. 32-33.

62. As of June 18, 2011, Plaintiff's delivered sales for 2011 year-to-date were $52,221 below expectation. Daub Decl. Exh. N, Raymour & Flanigan's Payroll Connection Form regarding Plaintiff's termination ("Termination Form").

63. Thus, over the almost six-week period from May 7, 2011 until June 18, 2011, the deficiency in Plaintiff's 2011 delivered sales compared to minimum expectations remained virtually unchanged, making up only $1,316 and remaining $52,221 below expectations. Daub Decl. Exh. J, May 7 Plan; Exh. N, Termination Form.

14434920

64. On June 18, 2011, Raymour & Flanigan terminated Plaintiff's employment due to poor performance based on his deficient 2011 sales. Goldstein Dep. 86-87; Daub Decl. Exh. N, Termination Form.

65. Raymour & Flanigan's Human Resources Department was apprised of the decision to terminate Plaintiff's employment. Delgenio Dep. 35-36.

66. During his employment, Plaintiff never complained to anyone at Raymour & Flanigan about age discrimination. Pl. Dep. 156; Delgenio Dep. 44.

67. During his employment, Plaintiff never complained to anyone at Raymour & Flanigan about disability discrimination. Pl. Dep. 156; Delgenio Dep. 44.

**Procedural History**

68. On October 21, 2011, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination based on failure to accommodate and age discrimination. Daub Decl. Exh. B, Plaintiff's EEOC Charge of Discrimination.

69. Thereafter, on or about March 15, 2012, Plaintiff filed the instant action, bringing claims under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA") and the New York State Human Rights Law ("NYSHRL") against Raymour & Flanigan, and aiding and abetting claims under the NYSHRL against Ms. Goldstein. Daub Decl. Exh. A, Complaint.

70. In ruling on Defendant's motion to dismiss, this Court dismissed Plaintiff's claims under the NYSHRL. Daub Decl. Exh. C, October 16, 2012 Memorandum and Order of Judge Wexler.

14434920

Dated: May 3, 2013
       Jericho, New York

                             **NIXON PEABODY LLP**

                                            /s/
By: _____
      Tara Eyer Daub (TE-7943)
      Jessica Chiclacos (JG-2534)

50 Jericho Quadrangle, Suite 300
Jericho, New York 11753-2728
(516) 832-7500
tdaub@nixonpeabody.com
jchiclacos@nixonpeabody.com

*Attorneys for Defendant*
*Raymour Furniture Company, Inc., d/b/a Raymour*
*& Flanigan Furniture*