UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LAWRENCE I. FRIEDMANN,

                                        Plaintiff,

            - against -

RAYMOUR FURNITURE CO., INC., and LUCY
GOLDSTEIN, individually.

                                        Defendants.

12 CV 1307
(LDW) (AKT)

**DEFENDANT RAYMOUR & FLANIGAN'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>ITS MOTION FOR SUMMARY JUDGMENT</u>**

**NIXON PEABODY LLP**

50 Jericho Quadrangle
Jericho, New York 11753
(516) 832-7500

*Attorneys for Defendant
Raymour Furniture Company, Inc.,
d/b/a Raymour & Flanigan
Furniture*

Of Counsel:
    Tara Eyer Daub, Esq.
    Jessica Chiclacos, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................3

    A.    Raymour & Flanigan and its Employment Policies................................3

    B.    Plaintiff's Employment History with Raymour & Flanigan.............................4

    C.    Plaintiff's Failure to Meet Sales Goals Led to the Termination of His Employment ................................................................................6

    D.    Procedural History ................................................................9

SUMMARY JUDGMENT STANDARD ................................................................9

ARGUMENT

    POINT I

        PLAINTIFF CANNOT ESTABLISH A CLAIM OF AGE DISCRIMINATION ................................................................10

            A.    Plaintiff Fails to Establish a *Prima Facie* Case ........................11

            B.    Raymour & Flanigan Had Legitimate, Non-Discriminatory Reasons for the Termination of Plaintiff's Employment ..........16

            C.    Plaintiff Cannot Demonstrate Pretext ........................................18

    POINT II

        PLAINTIFF CANNOT MAINTAIN A CLAIM FOR DISABILITY DISCRIMINATION ................................................20

            A.    Plaintiff's Disability Discrimination Claims are Clearly Time-Barred ................................................................20

            B.    Plaintiff Was Not Denied Reasonable Accommodations ........21

    POINT III

        PLAINTIFF CANNOT ESTABLISH A CLAIM FOR RETALIATION ................................................................24

CONCLUSION................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps">Cases</span>

Ahmad v. Nassau Health Care Corp.,
234 F. Supp. 2d 185 (E.D.N.Y. 2002), <u>aff'd</u>, 2003 U.S. App. LEXIS 16860 (2d Cir. Aug. 14, 2003) ................................................................................................................14

Almonord v. Kingsbrook Jewish Med. Ctr.,
2007 U.S. Dist. LEXIS 58529 (E.D.N.Y. Aug. 10, 2007) .......................................13

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ................................................................................................9

Attard v. City of N.Y.,
451 Fed. Appx. 21, 2011 U.S. App. LEXIS 24919 (2d Cir. Dec. 15, 2011) ....................10, 11

Bagdasarian v. O'Neill,
2002 U.S. Dist. LEXIS 13328 (W.D.N.Y. July 17, 2002) .......................................14

Baguer v. Spanish Broad. Sys., Inc.,
2010 U.S. Dist. LEXIS 69212 (S.D.N.Y. July 12, 2010), <u>aff'd</u>, 423 Fed. Appx. 102,
2011 U.S. App. LEXIS 11334 (2d Cir. 2011) .........................................................11

Bass v. World Wrestling Fed'n Entm't, Inc.,
129 F. Supp. 2d 491 (E.D.N.Y. 2001) ....................................................................24

Boston v. Macfadden Publishing, Inc.,
2010 U.S. Dist. LEXIS 103294 (S.D.N.Y. Sept. 29, 2010) ....................................15

Bruder v. Jewish Bd. of Family and Children's Srvs.,
2013 U.S. Dist. LEXIS 31066 (E.D.N.Y. Mar. 4, 2013) .........................................11

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ................................................................................................9

Ciullo v. Yellow Book, USA, Inc.,
2012 U.S. Dist. LEXIS 93912 (E.D.N.Y. July 6, 2012) ....................................22, 23

Del Franco v. New York City Off-Track Betting Corp.,
429 F. Supp. 2d 529 (E.D.N.Y. 2006) ....................................................................19

DiGirolamo v. Metlife Group, Inc.,
2011 U.S. Dist. LEXIS 62104 (S.D.N.Y. June 6, 2011) .........................................12

Distasio v. Perkin Elmer Corp.,
157 F.3d 55 (2d Cir. 1998) ......................................................................................9

Farias v. Instructional Sys., Inc.,
259 F.3d 91 (2d Cir. 2001)..............................................................................................9, 10

Garofalo v. Verizon New York, Inc.,
2012 U.S. Dist. LEXIS 148388 (E.D.N.Y. Oct. 3, 2012)........................................................20

Giallanza v. Time Warner Cable,
2009 U.S. Dist. LEXIS 27086 (W.D.N.Y. Mar. 30, 2009)......................................................22

Gilderhus v. Concentrix Corp.,
825 F. Supp. 2d 414 (W.D.N.Y. Oct. 20, 2011) ....................................................................25

Glanzman v. Metropolitan Management Corp.,
391 F.3d 506 (3d Cir. 2004)..................................................................................................15

Golove v. Monroe Cmty. Coll.,
2002 U.S. App. LEXIS 2649 (2d Cir. Feb. 19, 2002) ...........................................................13

Grady v. Affiliated Cent., Inc.,
130 F.3d 553 (2d Cir. 1997)..................................................................................................12

Grant v. Roche Diagnostics Corp.,
2011 U.S. Dist. LEXIS 79994 (E.D.N.Y. July 20, 2011) ...........................................12, 14, 18

Graves v. Finch Pruyn & Co., Inc.,
457 F.3d 181 (2d Cir. 2006)..................................................................................................21

Groeneveld v. St. Charles Hosp.,
2011 U.S. Dist. LEXIS 64747 (E.D.N.Y. Jun. 17, 2011) .......................................................25

Gross v. FBL Financial Srvcs., Inc.,
557 U.S. 167 (2009)...............................................................................................................11

Hansberry v. Father Flanagan's Boys' Home,
2004 U.S. Dist. LEXIS 26937 (E.D.N.Y. Nov. 2, 2004)........................................................14

Hess v. ING USA,
2008 U.S. Dist. LEXIS 11174 (E.D.N.Y. Feb. 14, 2008)......................................................14

Holowecki v. Fed. Express Corp.,
382 Fed. Appx. 42 (2d Cir. 2010).........................................................................................10

Kalra v. HSBC Bank USA, N.A.,
567 F. Supp. 2d 385 (E.D.N.Y. 2008) ...................................................................................20

Manatu v. Bowery Residents Comm.,
2000 U.S. Dist. LEXIS 11856 (E.D.N.Y. Aug. 11, 2000)......................................................25

Mantione v. Ted Bates Advertising/New York,
    1985 U.S. Dist. LEXIS 16126 (S.D.N.Y. Sept. 10, 1985)......................................................15

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)..............................................................................................................10

Meiri v. Dacon,
    759 F.2d 989 (2d Cir.), cert. denied, 474 U.S. 829, 106 S. Ct. 91 (1985) ...............................9

O'Connor v. Smith & Laquercia, LLP,
    2010 U.S. Dist. LEXIS 94088 (E.D.N.Y. Sept. 9, 2010).......................................................14

O'Connor v. Viacom, Inc.,
    1996 U.S. App. LEXIS 32986 (2d Cir. Dec. 16, 1996)..........................................................13

Parinello v. Bausch & Lomb,
    2013 U.S. Dist. LEXIS 55379 (W.D.N.Y. Apr. 17, 2013) .....................................................16

Pierce v. Gareb Shamus Enterprises, Inc.,
    2013 U.S. Dist. LEXIS 47607 (E.D.N.Y. Mar. 29, 2013) ......................................................14

Quinn v. Green Tree Credit Corp.,
    159 F.3d 759 (2d Cir. 1998)...................................................................................................20

Reeves v. Sanderson Plumbing Prods., Inc.,
    530 U.S. 133 (2000)..............................................................................................................10

Revere v. Bloomingdale's, Inc.,
    2006 U.S. Dist. LEXIS 82895 (E.D.N.Y. Nov. 14, 2006)......................................................18

Rivera v. Orange Cty.,
    2013 U.S. Dist. LEXIS 30847 (S.D.N.Y. Mar. 5, 2013) ........................................................13

Schnabel v. Abramson,
    232 F.3d 83 (2d Cir. 2000).....................................................................................................12

Spiess v. Xerox Corp.,
    2011 U.S. Dist. LEXIS 79625 (W.D.N.Y. July 21, 2011), aff'd 481 Fed. Appx. 700
    (2d Cir. 2012)........................................................................................................................11

Starr v. Legal Aid Society,
    1998 U.S. Dist. LEXIS 12566 (S.D.N.Y. Aug. 14, 1998) ......................................................12

Thomas-Charlton v. Brookdale Univ. Hosp.,
    2004 U.S. Dist. LEXIS 29544 (E.D.N.Y. Nov. 12, 2004).......................................................19

Van Zant v. KLM Royal Dutch Airline,
    80 F.3d 708 (2d Cir. 1996).....................................................................................................24

Vinokur v. Sovereign Bank,
 701 F. Supp. 2d 276 (E.D.N.Y. 2010) .......................................................................12

White v. Fuji Photo Film USA, Inc.,
 434 F. Supp. 2d 144 (S.D.N.Y. 2006).......................................................................19

Whitting v. Locust Valley Cent. Sch. Dist.,
 2012 U.S. Dist. LEXIS 152233 (E.D.N.Y. Oct. 22, 2012).......................................12

Zinnamon v. New York City Dep't of Social Serv.,
 2010 U.S. Dist. LEXIS 85534 (E.D.N.Y. Aug. 18, 2010).......................................21

**STATUTES**

42 U.S.C. § 2000e-5(e)(1)...............................................................................................20

## **PRELIMINARY STATEMENT**

Defendant Raymours Furniture Company, Inc., d/b/a Raymour & Flanigan Furniture (the "Defendant" or "Raymour & Flanigan"), by its attorneys Nixon Peabody LLP, submits this memorandum of law together with the accompanying Declaration of Tara Eyer Daub ("Daub Decl."), the documentary exhibits attached thereto, and the Local Rule 56.1 Statement of Material Facts, in support of its motion, pursuant to Federal Rule of Civil Procedure 56, for an Order granting summary judgment and dismissing the Complaint of plaintiff Lawrence Friedmann ("Plaintiff" or "Friedmann") in its entirety.

Plaintiff worked as a Sales Associate at Raymour & Flanigan from October 2005 until the termination of his employment on June 18, 2011.  During his employment, Plaintiff was required to generate, at a minimum, annual delivered sales of $750,000 and to generate weekly and monthly sales consistent with the annual minimum.

In 2011, Plaintiff's sale performance fell far below the minimum year-to-date and annual delivered sales requirements for his position.  By May 2011, Plaintiff had fallen so far behind on his monthly delivered sales requirements that it was clear he would not be able to meet the $750,000 annual delivered sales requirement for 2011 without immediate, significant and sustained improvement.  At that point, his 2011 year-to-date delivered sales were more than $50,000 below where they needed to be.  As a result, on May 7, 2011, Raymour & Flanigan placed Plaintiff on a "Coaching For Success" plan, setting forth short-term goals and affording him more time to improve his performance.  Approximately one month later, after Plaintiff had failed to make progress toward those and other goals, Raymour & Flanigan placed Plaintiff on an "Action Plan & Performance Agreement" and also provided him with the opportunity to interview at other Raymour & Flanigan locations.  None of Defendant's efforts to help Plaintiff to improve his sales levels were successful.

There can be no dispute that, by the end of the six-week period that began with Plaintiff's receipt of the May 7 Coaching for Success plan, his delivered sales remained critically deficient and that during this period he made virtually no progress toward closing the $50,000 gap between his 2011 year-to-date delivered sales and the year-to-date minimum requirement.  Nor can there be any dispute that by the end of the six-week period, and based upon his performance during the first several months of the year, Plaintiff's projected annual delivered sales were only about $617,000 – or $133,000 below the minimum requirement of $750,000.  With no sign of improvement and only six months remaining, it had become clear that Plaintiff could not close these gaps to meet his minimum sales expectations for 2011.  As a result, on June 18, 2011, Raymour & Flanigan terminated his employment.

In this action, Plaintiff claims that Raymour & Flanigan refused to provide him with reasonable accommodation of a disability (sciatica) in 2010 in violation of Americans with Disabilities Act ("ADA"); that he was later terminated from employment in June 2011 based on his age in violation of the Age Discrimination in Employment Act ("ADEA") or in retaliation for having made alleged "complaints" of discrimination to his supervisors.  As detailed herein, Plaintiff's age discrimination claim fails as a matter of law because he cannot demonstrate that his discharge occurred under circumstances giving rise to an inference of age discrimination.  Moreover, Raymour & Flanigan has demonstrated a legitimate, non-discriminatory reason for Plaintiff's termination – his failure to meet objective sales requirements for 2011.  Because Plaintiff can offer no evidence to establish that Defendant's legitimate reason for his termination was a pretext for discrimination, his age discrimination claim must be dismissed.

While Plaintiff also claims that Raymour & Flanagan failed to accommodate his alleged sciatica disability in 2010, that claim must be dismissed as time-barred.  Plaintiff admitted at his deposition that his alleged request for accommodation and Raymour & Flanigan's alleged failure

- 2 -

to grant a reasonable accommodation occurred no later than September 2010, at which point he

had fully recovered from his sciatica flare-up and no longer needed any accommodations.

Because these discrete acts allegedly occurred more than 300 days prior to Plaintiff's filing of his

Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), any

claims based upon them are time-barred.  Even if they were not, the undisputed record shows

that Plaintiff was not denied reasonable accommodations.

Finally, to the extent that Plaintiff alleged in his Complaint that he was terminated from

employment in retaliation for having made "complaints" of discrimination to his supervisors, this

claim must be dismissed.  Plaintiff admits that he never complained to anyone at Raymour &

Flanigan about discrimination and it is undisputed that Plaintiff never engaged in protected

activity.  As demonstrated below, for all these reasons, Defendant's motion for summary

judgment should be granted in its entirety.

## STATEMENT OF FACTS

### A.    Raymour & Flanigan and its Employment Policies

Raymour & Flanigan is a furniture retailer.  Relevant to this case, Raymour & Flanigan

operates multiple furniture showrooms across the State of New York, including one in Garden

City, one in Carle Place and one in Yonkers.  (Declaration of Tara Eyer Daub, Esq. ("Daub

Decl.") Exhibit ("Exh.") G at 6-7).

Raymour & Flanigan has an Associate Handbook that clearly establishes its policy in

favor of equal employment opportunity against discrimination and all forms of unlawful

harassment.  (Daub Decl. Exh. G at 45-46).  The Associate Handbook also contains a clear

statement that strongly encourages employees to report conduct believed to be in violation of the

policy, and provides several alternative channels, including an anonymous, toll-free "WORK-

AS-1" confidential hotline, through which an employee can make such a report.  (Id.).  The

- 3 -

Company strictly forbids any form of retaliation for reporting concerns of discrimination, and encourages employees who believe they have been retaliated against to report their concerns. (Daub Decl. Exh. G at 48).

In addition to these policies, Raymour & Flanigan also maintains an open door policy, and Sales Associates are encouraged to speak with its Human Resources Department or any member of management regarding any employment issue.  (Patricia Delgenio Deposition ("Delgenio Dep.") 46-47; Daub Decl. Exh. G at 65).  Raymour & Flanigan also provides training to Sales Associates and its management team regarding professional conduct and anti-discrimination and harassment awareness training.  (Delgenio Dep. 70).

Furthermore, as part of its commitment to equal employment opportunity, Raymour & Flanigan maintains a disability policy, setting forth instructions for employees to follow in the event any employee needs to request a reasonable accommodation of a disability.  (Daub Decl. Exh. G at 56).  Pursuant to this policy, employees are informed to contact Human Resources to request a reasonable accommodation.  (Id.)

**B.**      **Plaintiff's Employment History with Raymour & Flanigan**

On or about October 20, 2005, Plaintiff applied for employment with Raymour & Flanigan as a Sales Associate.  (Daub Decl. Exh. H).  Shortly thereafter, Raymour & Flanigan hired Plaintiff as a commissioned Sales Associate in its Yonkers location.  (Plaintiff's Deposition ("Pl. Dep.") 25-28).  Upon his hire, and at various other times during his employment, Plaintiff received training regarding Raymour & Flanigan's Human Resources policies, as well as copies of Raymour & Flanigan's Associate Handbooks, and various documents relating to the duties and responsibilities of a Sales Associate.  (Pl. Dep. 28-29; Daub Decl. Exh I).

As a commissioned Sales Associate, Plaintiff's primary duty and responsibility was the sale of Raymour & Flanigan's merchandise to its customers.  (Pl. Dep. 32; Lucy Goldstein

- 4 -

Deposition ("Goldstein Dep.") 39-40).  Critically, Plaintiff was required to produce annually a

minimum of $750,000 in delivered sales, meaning that he was required to have $750,000 of

merchandise actually delivered to customers each year, and to produce monthly sales consistent

with meeting the annual requirement.  (Pl. Dep. 30-31).

During his time in Yonkers, Plaintiff performed his duties in a satisfactory manner.  (Pl.

Dep. 32, 45).  In or about March 2006, Plaintiff requested – and Raymour & Flanigan granted – a

transfer to the company's Carle Place showroom.  (Pl. Dep. 33).  At the Carle Place location,

Plaintiff remained a Sales Associate and reported to Lucy Goldstein, Store Manager, who

approved Plaintiff's transfer request.  (Pl. Dep. 33-35).  While working at the Carle Place

location, Plaintiff continued to meet his annual sales requirements.  (Goldstein Dep. 27-29).

In 2008, Raymour & Flanigan opened a new showroom in Garden City which became its

largest and highest volume showroom.  (Goldstein Dep. 29; Pl. Dep. 36).  As Ms. Goldstein was

slated to become the Store Manager of that location, she had the opportunity to hand-pick Sales

Associates to bring with her to the Garden City showroom.  (Id.).  Ms. Goldstein selected

Plaintiff to join her at this new location, presenting him with the opportunity to produce even

higher delivered sales and, thereby, earn higher sales commissions.  (Id.).  In or about October

2008, Plaintiff began working in the Garden City showroom as a commissioned Sales Associate.

(Goldstein Dep. 29; Pl. Dep. 36-37).

According to Plaintiff, in early 2010, he had a flare-up of sciatica, a medical condition

that was originally diagnosed in 2002.  (Pl. Dep. 89-97).  The flare-up lasted approximately six

months, from March 2010 to August 2010.  (Pl. Dep.  96).  During this period, Plaintiff received

treatments and was granted time off from work, as needed.  (Pl. Dep. 95-97; Goldstein Dep. 34;

Daub Decl. Exh. A, ¶ 19).  These treatments were successful and Plaintiff's condition improved

by August 2010; by September 2010, he was <u>fully recovered</u> from the flare-up.  (Pl. Dep. 109-

110).  Plaintiff did not suffer from another flare-up during the remainder of his employment with Raymour & Flanigan.  (Id.).  Moreover, he did not need, or request, any form of accommodation after September 2010.  (Pl. Dep. 110-111).  Plaintiff never contacted Human Resources to request any accommodation, pursuant to Raymour & Flanigan's policy.  (Pl. Dep. 113).

**C.**  **Plaintiff's Failure to Meet Sales Goals Led to the Termination of His Employment**

As discussed above, all Sales Associates in the Garden City location were required to achieve annual delivered sales of at least $750,000 and monthly sales consistent with the annual requirement.  (Pl. Dep. 30-31).  Between January 2011 and May 2011 – long after having recovered from his 2010 sciatica flare-up – Plaintiff's sale performance was far below those expected requirements.  (Daub Decl. Exh. J).  In particular, Plaintiff's delivered sales metrics were $53,537 below the minimum required as of that point in the year; moreover, he was projected to attain only $617,435 in delivered sales for 2011, well below the $750,000 requirement.  (Id.).  Ms. Goldstein was concerned that Plaintiff had missed a critical opportunity to reverse this trend during Raymour & Flanigan's "Friends & Family" event in early May 2011, a bi-annual event that presents Sales Associates with an opportunity to generate significant sales. (Goldstein Dep. 42-43, 80-81; Pl. Dep. 79).

Recognizing the seriousness of this deficiency by a Sales Associate whom she had hand-picked to join her at the Garden City showroom, on May 7, 2011, Ms. Goldstein tried to help Plaintiff by issuing him a "Coaching for Success" plan (the "May 7 Plan").  (Daub Decl. Exh. J). In the plan, Ms. Goldstein noted the areas of Plaintiff's sales performance that he needed to focus on and to improve immediately, set short-term goals for him, and indicated that she – and all of Raymour & Flanigan's management team – was available to help Plaintiff reach his goals.  (Id.). As set forth in the plan, Ms. Goldstein specifically counseled Plaintiff that in order for him to

eliminate the delivered sales deficit he had accumulated since January 2011, he needed to generate $20,000 in delivered sales for each week in the following two-week period.  (Id.).

Plaintiff did not meet the May 7 Plan's short-term goals.  Approximately two weeks later, on May 23, 2011, Ms. Goldstein provided Plaintiff with an updated "Coaching for Success" plan (the "May 23 Plan"), in which she compared Plaintiff's actual sales results for "Week 1" of the May 7 Plan with the benchmarks for the same week.  (Daub Decl. Exh. K). More specifically, Ms. Goldstein noted that Plaintiff had produced only $6,807 in delivered sales against the $20,000 he needed to produce.  (Id.).  Still hoping that Plaintiff could recover from what had, at that point, become even larger sales shortfalls, Ms. Goldstein gave Plaintiff additional time to improve and again offered her assistance.  (Id.).  Nevertheless, as Plaintiff testified, he never asked Ms. Goldstein – or anyone else at Raymour & Flanigan – for assistance during this time period.  (Pl. Dep. 57-58).

Over the next three weeks, Plaintiff made little improvement.  By that point, Plaintiff's sales remained $48,190 below minimum 2011 year-to-date expectations.  (Daub Decl. Exh. M). As time passed, and Plaintiff's window of opportunity for significantly reducing his monthly and annual shortfalls grew smaller, the need for immediate improvement grew even more critical. Due to Plaintiff's lack of progress, Ms. Goldstein concluded that Plaintiff was not in a position to meet minimum sales goal for 2011.  (Goldstein Dep. 86-87).  As a result, on June 13, 2011, Ms. Goldstein placed Plaintiff on an "Action Plan & Performance Agreement" (the "June 13 Plan"), giving him yet another, but final, opportunity for improvement.  (Daub Decl. Exh. M).  In addition, in early June 2011, Ms. Goldstein provided Plaintiff with a performance evaluation noting specific areas in need of improvement and emphasizing that "Larry is below average in all areas – he needs to do an immediate turn around."  (Daub Decl. Exh. L).

- 7 -

During this time, Ms. Goldstein also arranged for Plaintiff to interview at other Raymour & Flanigan locations that sold less volume than the Garden City showroom and had fewer "superstar" Sales Associates compared to Garden City.  (Goldstein Dep. 97; Pl. Dep. 38-39). Ms. Goldstein hoped that Plaintiff could transfer to a different location, improve his performance in a less competitive environment, and then transfer back to the Garden City showroom. (Goldstein Dep. 97).  Although Plaintiff did interview at the Carle Place showroom, the Store Manager, Laura D'Ambrosio, declined to approve his transfer because of his low 2011 sales metrics.  (Daub Decl. Exh. O; Goldstein Dep. 97; Pl. Dep. 38-39; Delgenio Dep. 32).

By June 18, 2011, Plaintiff's 2011 delivered sales remained $52,221 below minimum requirements, having improved by a negligible $1,316 from the $53,537 shortfall position he was in as of the May 7 Plan.  (Daub Decl. Exhs. J, N).  By that point, he was performing far below the level necessary to bring the $750,000 annual requirement within reach.  (Daub Decl. Exh. N).

Ms. Goldstein made the decision to discharge Plaintiff due to his continued poor sales performance for 2011 and notified him of her decision on June 18, 2011.  (Daub Decl. Exh. N; Goldstein Dep. 87-88, 98).  According to Ms. Goldstein, the following exchange occurred during her termination meeting with Plaintiff:

> I told him that we couldn't keep him any further, his numbers
> were below performance [. . . .]  He was prepared.  He said to me,
> "I was waiting for it to happen."  He knew it was coming . . .
> We left on good terms.

(Goldstein Dep. 88).  Plaintiff admits that, at the time of his termination, his 2011 year-to-date delivered sales were $52,221 below the required minimum.  (Pl. Dep. 74-75).  Having shown no progress over the prior six weeks, despite Ms. Goldstein's various efforts to assist him, it was clear that Plaintiff would not be able to eliminate this shortfall or close the significant gap between his projected sales results and the $750,000 minimum expectation with only six months left in 2011.

14422559

**D.**     **Procedural History**

On October 21, 2011, Plaintiff filed a Charge of Discrimination with the EEOC, alleging

age discrimination under the ADEA and disability discrimination under the ADA.  (Daub Decl.

Exh. B).  Thereafter, on March 15, 2012, Plaintiff filed the instant action, bringing claims under

the ADEA, the ADA and the New York State Human Rights Law ("NYSHRL") against

Raymour & Flanigan, and aiding and abetting claims under the NYSHRL against Ms. Goldstein.

(Daub Decl. Exh. A).  On October 16, 2012, this Court dismissed all of Plaintiff's claims under

the NYSHRL, including all claims brought individually against Ms. Goldstein.  (Daub Decl.

Exh. C).

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be

entered where "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247 (1986).  "Summary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole,

which are designed 'to secure the just, speedy and inexpensive determination of every action.'"[1]

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

---

[1]     The Second Circuit has noted that "the salutary purposes of summary judgment – avoiding
protracted, expensive and harassing trials – apply no less to discrimination cases than to
commercial or other areas of litigation."  Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert.
denied, 474 U.S. 829, 106 S. Ct. 91 (1985).  Further, in employment discrimination cases,
"summary judgment under Rule 56 is still fully appropriate, indeed mandated, when the
evidence is insufficient to support the non-moving party's case."  Distasio v. Perkin Elmer
Corp., 157 F.3d 55, 61 (2d Cir. 1998).  Indeed, summary judgment remains available for the
dismissal of discrimination claims in cases lacking genuine issues of material fact.  See, e.g.,
Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001).

For the reasons set forth herein, the undisputed material facts demonstrate that Raymour & Flanigan is entitled to summary judgment and the Complaint should be dismissed in its entirety.

## ARGUMENT

### POINT I

### PLAINTIFF CANNOT ESTABLISH A CLAIM OF AGE DISCRIMINATION

The analytical framework for adjudicating employment discrimination claims is well-known by this Court.  In order to survive a motion for summary judgment, an ADEA plaintiff must satisfy a three-part burden-shifting test.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000); Holowecki v. Fed. Express Corp., 382 Fed. Appx. 42, 45 n.2 (2d Cir. 2010).  A plaintiff must first establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class.  Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001).

If the plaintiff succeeds, the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action.  See id.  Upon the employer's proffer of such a reason, the presumption of discrimination drops from the picture and the plaintiff must come forward with evidence that the proffered reason is a mere pretext for discrimination.  See Attard v. City of N.Y., 451 Fed. Appx. 21, 2011 U.S. App. LEXIS 24919, at *3 (2d Cir. Dec. 15, 2011).  To meet this burden, the plaintiff must demonstrate that: "(1) the proffered reasons are false; and (2) the real reason was unlawful discrimination."  Id. at *5.

- 10 -

As the Supreme Court recently observed in Gross v. FBL Financial Srvcs., Inc., 557 U.S. 167 (2009), an ADEA plaintiff faces an even higher burden at this stage of the analysis than that of a Title VII plaintiff, in that an ADEA plaintiff must prove that a reasonable jury could conclude, based on the evidence, that his age was the "but-for" cause of the challenged employment decision.  See Gross, 557 U.S. at 180; Attard, 2011 U.S. App. LEXIS 24919, at *3; Spiess v. Xerox Corp., 2011 U.S. Dist. LEXIS 79625, at *11 (W.D.N.Y. July 21, 2011), aff'd 481 Fed. Appx. 700 (2d Cir. 2012) ("plaintiffs alleging ADEA discrimination claims cannot prove their claims with evidence that age was merely a 'motivating factor,' or anything less than a 'but-for' cause in the adverse employment decision.")

Based upon the undisputed facts, Plaintiff cannot establish a *prima facie* case, much less satisfy his ultimate burden of persuasion, that Raymour & Flanigan's proffered reason for his discharge is false and that unlawful age discrimination was the "but-for" cause for the decision.

## A.    **Plaintiff Fails to Establish a *Prima Facie* Case**

Plaintiff claims that Raymour & Flanigan terminated his employment on June 18, 2011, based on age discrimination.  (Complaint ¶¶ 38, 41, 43).  As detailed herein, Plaintiff cannot establish a *prima facie* case of age discrimination because there is no evidence that would permit a jury to infer that Raymour & Flanigan took any action against him because of his age.

The record is devoid of any facts that would support an inference of discrimination. First, Plaintiff was 64 years old when Raymour & Flanigan hired him in October 2005, which undercuts any claim of discriminatory animus.  See Bruder v. Jewish Bd. of Family and Children's Srvs., 2013 U.S. Dist. LEXIS 31066, at *18 (E.D.N.Y. Mar. 4, 2013) ("Any inference of age animus is undermined because Plaintiff was well within the protected age group when she was hired and promoted"); Baguer v. Spanish Broad. Sys., Inc., 2010 U.S. Dist. LEXIS 69212, at *41 (S.D.N.Y. July 12, 2010), aff'd, 423 Fed. Appx. 102, 2011 U.S. App. LEXIS 11334 (2d Cir.

2011) ("Being in the protected class when hired undermines any inference of age discrimination."); Whiting v. Locust Valley Cent. Sch. Dist., 2012 U.S. Dist. LEXIS 152233, at *29 (E.D.N.Y. Oct. 22, 2012) (same); Vinokur v. Sovereign Bank, 701 F. Supp. 2d 276, 288 (E.D.N.Y. 2010) (same).  It defies logic that Raymour & Flanigan would hire Plaintiff when he was well within the protected class, and then develop discriminatory animus against him shortly thereafter.

Second, Ms. Goldstein, the individual responsible for placing Plaintiff on the Coaching for Success Plan and the Action Plan & Performance Agreement, and terminating his employment, is 66 years old and very close in age to Plaintiff.  (Goldstein Dep. 23; Daub Decl. Exh. A, ¶ 41, n.1).  Ms. Goldstein's membership in the same protected class undercuts any inference that she terminated Plaintiff's employment based on age-related bias.  See Grant v. Roche Diagnostics Corp., 2011 U.S. Dist. LEXIS 79994, at *31 (E.D.N.Y. July 20, 2011) (granting summary judgment on age discrimination claim where the decision-makers were in the same protected class); see also DiGirolamo v. Metlife Group, Inc., 2011 U.S. Dist. LEXIS 62104, at *34 (S.D.N.Y. June 6, 2011) (same); Starr v. Legal Aid Society, 1998 U.S. Dist. LEXIS 12566, at *10 (S.D.N.Y. Aug. 14, 1998) (stating that an inference of age discrimination was "implausible" when the decision-makers "were very close in age to plaintiff").  Here, Ms. Goldstein is merely seven years younger than Plaintiff, and both are over the age of 65.

Furthermore, Raymour & Flanigan is entitled to the same-actor inference.  The Second Circuit has held that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [her] an invidious motivation that would be inconsistent with the decision to hire."  Grady v. Affiliated Cent., Inc., 130 F.3d 553, 561 (2d Cir. 1997); see also Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) (affirming summary judgment in favor of employer where 60-year old plaintiff was fired by the same man who hired

- 12 -

him three years earlier); <u>Rivera v. Orange Cty.</u>, 2013 U.S. Dist. LEXIS 30847, at *18 (S.D.N.Y. Mar. 5, 2013) (applying same-actor inference and granting summary judgment on discrimination claims when the same person made the decision to hire and fire the plaintiff). Since Ms. Goldstein approved Plaintiff's transfer to the Carle Place location when he was 65 years old, decided to hire Plaintiff for the Garden City showroom when he was 67 years old in 2008 and then terminated his employment at age 70 in 2011, the law recognizes an inference that it is unlikely that Ms. Goldstein harbored any age-based discriminatory animus.

In support of his allegations of age discrimination, Plaintiff alleges that:  (1) Ms. Goldstein and other unidentified Raymour & Flanigan employees referred to him as "old man"; (2) Ms. Goldstein asked him his age and about his retirement plans; (3) Ms. Goldstein, after terminating his employment, told him to "enjoy [his] summer in the Hamptons"; and (4) that Ms. D'Ambrosio, Store Manager of Carle Place, told Plaintiff that she was not looking for someone "with a few bucks in the bank" for her store.  (Daub Decl. Exh. A, Complaint at ¶¶ 27, 35, 38, 41).  These allegations are insufficient to support an inference of discrimination.

It is well-established that stray workplace remarks, in the absence of a clearly demonstrated nexus to the adverse employment action at issue, do not alone suffice to defeat a motion for summary judgment.  See <u>O'Connor v. Viacom, Inc.</u>, 1996 U.S. App. LEXIS 32986, *8 (2d Cir. Dec. 16, 1996).  The Second Circuit has made it clear that such stray remarks "cannot defeat summary judgment in favor of an employer unless they are both proximate and related to the employment decision in question."  <u>Id.</u> at *9.  See also <u>Golove v. Monroe Cmty. Coll.</u>, 2002 U.S. App. LEXIS 2649, *10 (2d Cir. Feb. 19, 2002) (alleged "stray remarks" of plaintiff's supervisor cannot alone prove workplace discrimination); <u>Almonord v. Kingsbrook Jewish Med. Ctr.</u>, 2007 U.S. Dist. LEXIS 58529, at *25-26 (E.D.N.Y. Aug. 10, 2007) (grating summary judgment and concluding that two alleged comments by the plaintiff's supervisor, which

- 13 -

occurred months before the plaintiff's termination, were stray remarks insufficient to create an inference of discrimination); Hansberry v. Father Flanagan's Boys' Home, 2004 U.S. Dist. LEXIS 26937, *20-24 (E.D.N.Y. Nov. 2, 2004) (same); Ahmad v. Nassau Health Care Corp., 234 F. Supp. 2d 185, 193 (E.D.N.Y. 2002), aff'd, 2003 U.S. App. LEXIS 16860 (2d Cir. Aug. 14, 2003) (same).

As an initial matter, with respect to Plaintiff's vague and implausible allegation that Ms. Goldstein referred to him as "old man," this effort fails entirely.  Even assuming the truth of Plaintiff's allegation (which Ms. Goldstein denies), Plaintiff cannot provide any details whatsoever regarding the date, time or circumstance surrounding Ms. Goldstein's alleged remark.  (Pl. Dep. 127.)  As a result, this alleged comment is in no way connected to Plaintiff's termination and it cannot, as a matter of law, create an inference of age discrimination in connection with his termination.  See Pierce v. Gareb Shamus Enterprises, Inc., 2013 U.S. Dist. LEXIS 47607, at *15-16 (E.D.N.Y. Mar. 29, 2013) (granting summary judgment on age discrimination claim where the plaintiff's supervisor and others referred to him as the "old guy" because there was no link between remarks and termination decision); see also Grant v. Roche Diagnostics Corp., 2011 U.S. Dist. LEXIS 79994, at *20 (E.D.N.Y. July 20, 2011) (granting summary judgment on age discrimination claim where the plaintiff's supervisor allegedly stated that sales is a "young man's game" as it was not connected to termination decision).[2]

---

[2]    See also O'Connor v. Smith & Laquercia, LLP, 2010 U.S. Dist. LEXIS 94088, at *14-15 (E.D.N.Y. Sept. 9, 2010) (disregarding supervisor's stray remark that the plaintiff was "too old" because there was no nexus with termination decision); Hess v. ING USA, 2008 U.S. Dist. LEXIS 11174, at *6, 16 (E.D.N.Y. Feb. 14, 2008) (concluding that supervisor's comment "I hope I can teach an old dog new tricks" was a stray remark not probative of discrimination); Bagdasarian v. O'Neill, 2002 U.S. Dist. LEXIS 13328, at *4 (W.D.N.Y. July 17, 2002) (holding that plaintiff's allegation that a supervisor stated, "I already got two old farts that don't do anything anyway, what do I need another one for," with regard to the plaintiff, was not probative of discriminatory intent because there was no connection with promotion decision).

Similarly, Plaintiff's reliance on Ms. Goldstein's alleged inquiries about his age and his retirement plans also fails to raise an inference of discrimination.  Once again, Ms. Goldstein denies making these statements but, even assuming the truth of the allegation, Plaintiff testified that such comments were made in or about February 2011, <u>months</u> before his termination.  As such, these purported comments have no connection to the decision to terminate Plaintiff's employment on June 18, 2011.  <u>See</u> <u>Boston v. Macfadden Publishing, Inc.</u>, 2010 U.S. Dist. LEXIS 103294, at *34 (S.D.N.Y. Sept. 29, 2010) (granting summary judgment on age discrimination claim where the plaintiff alleged he was constantly asked about his retirement plans, as there was no connection between such discussions and the decision to terminate the plaintiff's employment); <u>see also</u> <u>Mantione v. Ted Bates Advertising/New York</u>, 1985 U.S. Dist. LEXIS 16126, * 21-22 (S.D.N.Y. Sept. 10, 1985) (holding that the question, "are you retiring, Santa?", was an isolated remark insufficient to establish an inference of age discrimination); <u>Glanzman v. Metropolitan Management Corp.</u>, 391 F.3d 506, 513 (3d Cir. 2004) (holding that district court correctly determined that plaintiff's supervisor's inquiry about plaintiff's retirement plans was not direct evidence of age discrimination and could just as easily be explained by a desire on the employer's part to do some long-term planning).

In addition, Plaintiff asserts that Ms. Goldstein, after terminating his employment, told him to "enjoy [his] summer in the Hamptons."  (Complaint ¶ 38).  Plaintiff testified, however, that he regularly vacationed at his ex-wife's home in the Hamptons in the summer and that Ms. Goldstein was "wishing him well" when she allegedly told him to "enjoy [his] summer in the Hamptons."  (Pl. Dep. 84-87).  Accordingly, there can be no dispute that this alleged comment was nothing more than an appropriate and well-intended parting gesture.  The comment conveys no discriminatory meaning and, thus, should be disregarded by the Court.

Finally, Plaintiff's alleges that Ms. D'Ambrosio, the Store Manager of the Carle Place location, told him that she did not want someone "with a few bucks in the bank" when he interviewed with her in June 2011.  This alleged comment cannot establish an inference of age discrimination.  First, even assuming Ms. D'Ambrosio made this alleged comment, whether a person has "a few bucks in the bank" or not has no connection to age.  Interpreting her alleged comment as age-related would require stretching this idiom beyond all recognition.  Second, as Ms. D'Ambrosio played no role in the decision to terminate Plaintiff's employment, this is yet another alleged stray remark that should be disregarded by the Court.

In light of the foregoing, Plaintiff cannot demonstrate that Raymour & Flanigan's decision to terminate his employment, after its repeated efforts to bring his sales up to minimum levels proved unsuccessful, occurred under circumstances giving rise to an inference of discrimination.  As a result, Plaintiff cannot establish a *prima facie* case of age discrimination.

**B.      Raymour & Flanigan Had Legitimate, Non-Discriminatory
Reasons for the Termination of Plaintiff's Employment**

There simply is no evidence that Raymour & Flanigan intentionally discriminated against Plaintiff.  Assuming, *arguendo*, that this Court determines that Plaintiff is able to establish a *prima facie* case of age discrimination, his Complaint should nonetheless be dismissed because Raymour & Flanigan has met its burden of articulating legitimate, non-discriminatory reasons for the termination of his employment.[3]

As discussed above, all Sales Associates in Garden City were required to produce $750,000 in annual delivered sales, and to produce monthly sales figures commensurate with the

---

[3]      To the extent that Plaintiff alleges that his placement on performance improvement plans in 2011 was discriminatory, Plaintiff's claim fails.  "Placing plaintiff on a PIP, the goal of which was to improve his performance and avoid his termination, is not an adverse employment action."  Parinello v. Bausch & Lomb, 2013 U.S. Dist. LEXIS 55379, at *25 (W.D.N.Y. Apr. 17, 2013) (citing additional cases).

annual requirement.  (Pl. Dep. 30-31).  By May 2011, it is undisputed that Plaintiff's sales goals

were $53,537 below the minimum sales expectation for that point in the year and he was

projected to complete delivered sales in the amount of only $617,435 for 2011, well below the

mandated goal of $750,000 for the year.  (Daub Decl. Exh. J).

     Taking action to address this serious deficiency, on May 7, 2011, Ms. Goldstein placed

Plaintiff on a "Coaching for Success" plan.  (Daub Decl. Exh. J).  In this plan, Ms. Goldstein

noted for Plaintiff the areas of his sales that needed immediate improvement, set short-term

goals, and indicated that she – and all of Raymour & Flanigan's management team – was

available to help Plaintiff reach his goals.  (Id.).  When Plaintiff did not meet these short-term

goals, Ms. Goldstein provided Plaintiff with an updated "Coaching for Success" plan on May 23,

2011.  (Daub Decl. Exh. K).

     Over the next three weeks, Plaintiff made little improvement.  As time passed, the need

for Plaintiff's immediate improvement grew even more critical.  As a result, on June 13, 2011,

Ms. Goldstein placed Plaintiff on an "Action Plan & Performance Agreement", giving him yet

another, but final, opportunity to achieve the immediate and significant improvement in sales

that would be needed to meet minimum sales requirements.  (Daub Decl. Exh. M).  In addition,

in early June 2011, Ms. Goldstein provided Plaintiff with a performance evaluation noting

specific areas of needed improvement and emphasizing that "Larry is below average in all areas

– he needs to do an immediate turn around."  (Daub Decl. Exh. L).  During this time, Ms.

Goldstein also arranged for Plaintiff to interview at other Raymour & Flanigan locations with

lower sales volume than the Garden City showroom, in the hope that he might do better in a less

competitive store and then return to Garden City.  (Goldstein Dep. 97).

     Unfortunately, Plaintiff did not act upon these repeated opportunities for improvement.

Despite Raymour & Flanigan's repeated efforts to help Plaintiff to bring his sales back up to

- 17 -

expected levels, Plaintiff admits that he did not substantially increase his sales.  (Pl. Dep. 53-68).

By June 18, 2011, it is undisputed that Plaintiff's 2011 year-to-date sales remained $52,221

below minimum expectations, demonstrating virtually no improvement over the prior six week

period.  (Daub Decl. Exh. N).  At that point, Plaintiff was so far below expectations that it was

clear he would not meet the minimum level of $750,000 for the year.  As a result, on June 18,

2011, Ms. Goldstein terminated his employment due his deficient 2011 sales.  (Id.).  As Ms.

Goldstein testified:

> I terminated Larry because he was way past where he could
> come back. I think he was trending to do something like
> 600,000.  Garden City is one of the highest producing stores.
> I am a manger that's running a business.  I gave him numerous
> opportunities, numerous opportunities to help him.  I gave him
> numerous opportunities to relocate to bring his numbers up in
> another store and then come back.  I did everything in my power.
> The last thing I wanted to do is fire another human being.

(Goldstein Dep. 86-87).

Critically, as it is undisputed that Plaintiff's sales were far below the minimum goals

required of a Sales Associate, Raymour & Flanigan had legitimate, non-discriminatory reasons

for his discharge.  See Grant, 2011 U.S. Dist. LEXIS 79994, at *32-33 (concluding that the

employer established a non-discriminatory reason for the plaintiff's termination where the

plaintiff had poor sales over a fifteen-month period which was documented in coaching and

performance plans); see also Revere v. Bloomingdale's, Inc., 2006 U.S. Dist. LEXIS 82895, at

*8 (E.D.N.Y. Nov. 14, 2006) ("[Defendant] has produced a detailed record of Plaintiff's

performance deficiencies leading up to Plaintiff's discharge and has, therefore, met its burden of

articulating a legitimate, non-discriminatory reason for firing Plaintiff.").

## C.    **Plaintiff Cannot Demonstrate Pretext**

As Raymour & Flanigan has met its burden of production, the ultimate burden of

persuasion shifts to Plaintiff, who must produce sufficient evidence to demonstrate not only that

14422559

Raymour & Flanigan's proffered reasons are false but also that the real reason for his discharge was age discrimination.  Plaintiff will not be able to do so.

As an initial matter, there is no dispute about Plaintiff's failing sales performance. Furthermore, as discussed above, Plaintiff can point to no remarks, statements, incidents or any other direct or circumstantial evidence regarding the circumstances surrounding his termination that would suggest that age discrimination was the motivation for his discharge.  That Plaintiff may disagree with the termination decision, and may have a different opinion of his own performance, does not in any way diminish the legitimate, non-discriminatory performance-based reasons for the decisions at issue in this case.  Indeed, "it is well established that an employee's belief that she was performing her job competently cannot provide a basis to support a discrimination claim."  Thomas-Charlton v. Brookdale Univ. Hosp., 2004 U.S. Dist. LEXIS 29544, *13-14 (E.D.N.Y. Nov. 12, 2004) (citing cases); see also Del Franco v. New York City Off-Track Betting Corp., 429 F. Supp. 2d 529, 539 (E.D.N.Y. 2006); White v. Fuji Photo Film USA, Inc., 434 F. Supp. 2d 144, 153 (S.D.N.Y. 2006).

In the absence of such direct or even circumstantial evidence, Plaintiff must prove that Raymour & Flanigan's reason for his termination – poor performance based on his deficient 2011 sales – is false and that age discrimination was the "but for" cause of his discharge.  In this regard, it is a well-settled principle that "the court 'does not sit as a super-personnel department that reexamines an entity's business decisions.'"  Abramowitz v. Inta-Boro Acres, Inc., 64 F. Supp. 2d 166, 174 (E.D.N.Y. 1999); see also Soderberg v. Gunther Int'l, Inc., 124 Fed. App. 30, 32 (2d Cir. 2005) ("[I]t is not the function of a fact-finder to second-guess business decisions what constitutes unsatisfactory work performance.").  This is true even if the business decision is based on a good reason, a bad reason, an erroneous reason or no reason at all, so long as it is not

made for discriminatory reasons.  See Kalra v. HSBC Bank USA, N.A., 567 F. Supp. 2d 385, 398 (E.D.N.Y. 2008).

Since Plaintiff cannot offer any evidence that Raymour & Flanigan terminated his employment due to age discrimination, this claim must be dismissed as a matter of law.

POINT II

## PLAINTIFF CANNOT MAINTAIN A CLAIM FOR DISABILITY DISCRIMINATION

In his Complaint, Plaintiff claims that Raymour & Flanigan failed to grant him a reasonable accommodation for an allegedly known disability in violation of the ADA. Specifically, he asserts that:  (1) due to his flare-up of sciatica in March 2010, he asked Ms. Goldstein to allow him to sit down in the showroom at times and that she denied his requests; and (2) due to the "impact that taking breaks would have on Plaintiff's quotas," Plaintiff's "sales quotas should have been adjusted as a reasonable accommodation." (Comp. ¶¶ 21, 24).  For the reasons that follow, Plaintiff claims fail as a matter of law and should be dismissed.

### A.  Plaintiff's Disability Discrimination Claims are Clearly Time-Barred

As an initial matter, Plaintiff's disability accommodation claim is clearly time-barred. The ADA requires a plaintiff to timely file a charge of discrimination with the EEOC and where, as in the State of New York, there exists a state fair employment agency, such charges must be filed within 300 days of the alleged act of discrimination.  See 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed his EEOC Charge on October 21, 2011 and, thus, any claims relating to events that occurred before December 25, 2010 – more than 300 days prior to his EEOC filing – are time-barred.  See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998); see also Garofalo v. Verizon New York, Inc., 2012 U.S. Dist. LEXIS 148388, at *11-13 (E.D.N.Y. Oct. 3, 2012) (LDW) (granting summary judgment on the plaintiff's ADA and Title VII claims because the alleged discriminatory acts occurred more than 300 days prior to the plaintiff's filing

- 20 -

of her administrative charge); <u>Zinnamon v. New York City Dep't of Social Servs.</u>, 2010 U.S. Dist. LEXIS 85534, at *11-12 (E.D.N.Y. Aug. 18, 2010) (same).

Here, Plaintiff testified that: the treatments he received for his sciatica were successful and his condition had improved by August 2010; that he had <u>fully recovered</u> from the sciatica flare-up by September 2010; that he never had another flare-up again after that; and that he did not need or request any accommodations after September 2010. (Pl. Dep. 109-111). Thus, Plaintiff's claim that Raymour & Flanigan failed to accommodate his disability in 2010 – based on discrete acts that occurred well before December 25, 2010 – is clearly time-barred.

### B.       <u>Plaintiff Was Not Denied Reasonable Accommodations</u>

Even if Plaintiff's disability discrimination claim relating to events in 2010 were not time-barred, Plaintiff cannot establish a failure to accommodate claim. In order to establish a *prima facie* case of disability discrimination arising from a failure to accommodate, a plaintiff must show: (1) he is a person with a disability under the meaning of the ADA; (2) his employer had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. See <u>Graves v. Finch Pruyn & Co., Inc.</u>, 457 F.3d 181, 184 (2d Cir. 2006).

Among other fatal flaws, even assuming for purposes of this motion that Plaintiff's sciatica would rise to the level of an ADA disability, Plaintiff cannot establish that he requested, or was denied, any reasonable accommodation. Although Plaintiff alleges that Ms. Goldstein denied his requests to sit down, he admitted during his deposition that he did, in fact, sit down when his sciatica was bothering him, despite Ms. Goldstein's purported refusal to grant this request.[4] (Pl. Dep. 104-105). Thus, it is undisputed that Plaintiff did sit down when needed.

---

[4]     Ms. Goldstein testified that Plaintiff never requested to sit down or take breaks in the showroom, but, in any event, that she never denied such a request. (Goldstein Dep. 93).

14422559

Ignoring his own contradiction, Plaintiff also alleges that his taking of breaks affected his ability to meet his sales quotas during the period prior to September 2010.  (Comp. ¶ 21; Pl. Dep. 150).  As an initial matter, the undisputed evidence in the record establishes that Raymour & Flanigan took no employment actions based on Plaintiff's sales numbers in 2010.[5]  In other words, Plaintiff received every accommodation that he claims to have been denied.

Furthermore, Plaintiff admits that he <u>never</u> asked for any downward adjustment to his minimum sales goals to be applicable for March through August 2010, the period during which he was allegedly suffering from his flare-up of sciatica.  (Pl. Dep. 154-155).  Even if he had made this request, however, courts have held that such a request need not be granted.  <u>See</u> <u>Ciullo v. Yellow Book, USA, Inc.</u>, 2012 U.S. Dist. LEXIS 93912, at *36 (E.D.N.Y. July 6, 2012); <u>see also</u> <u>Giallanza v. Time Warner Cable</u>, 2009 U.S. Dist. LEXIS 27086, at *29 (W.D.N.Y. Mar. 30, 2009) (granting summary judgment on the plaintiff's ADA claim and noting that the employer did not have to accommodate a reduction in the plaintiff's sales numbers).

The facts of <u>Ciullo v. Yellow Book, USA, Inc.</u> are particularly instructive.  Yellow Book employed the plaintiff as a sales representative, whose primary responsibility was to solicit orders from businesses for advertisements in Yellow Book products.  <u>See</u> <u>Ciullo</u>, 2012 U.S. Dist. LEXIS 93912, at *2.  During his employment, the plaintiff requested time off to attend medical

---

[5]     Plaintiff testified that he was fully recovered from the sciatica flare-up by September 2010.  (Pl. Dep. 109-111).  Yet he admits that, following his full recovery, his sales numbers fell far below minimum expectations in 2011.  (Pl. Dep. 53-68).  Plaintiff cannot dispute that, when he was placed on performance improvement plans beginning in May 2011, the goals of those plans were focused on bringing his 2011 sales up to minimum expectations.  As the Coaching for Success plan and Action Plan & Performance Agreement undisputedly demonstrate, Raymour & Flanigan focused <u>solely</u> on Plaintiff's lagging 2011 sales numbers.  (Daub Decl. Exh. J (5/7/11 Coaching for Success Plan: "I want to review with you your underperformance for delivered sales.  The date range is **01/01/11 – 05/05/11**."); Daub Decl. Exh. M (6/13/11 Action Plan & Performance Agreement:  "I want to review with you your underperformance for **YTD for 2011**.  The date range is **01/01/2011 – 06/10/2011**.") (emphasis added).

14422559

appointments and to work limited hours due to his diabetes.  Id. at *11-12.  During this time, the

plaintiff failed to meet his sales goals and was placed on a performance improvement plan.  Id. at

14.  The plaintiff ultimately resigned from his employment, and brought claims of discrimination

under the ADEA and ADA.  Id. at *19-20, 23.  This Court granted the employer's motion for

summary judgment, rejecting the plaintiff's claim that Yellow Book should have reduced his

sales goals because of his disability, concluding that:

> In a competitive sales environment – where employees are primarily
> compensated through commissions, are frequently out of the office
> on sales calls, and where the limited effects of a diabetic condition
> might not be routinely apparent – **the Court does not believe that
> an employer has a sua sponte duty to lower an employee's sales
> goal** or to provide the employee with a larger assignment. . . .
> in any event, even if Ciullo had requested these measures, they
> would not qualify as "reasonable accommodation."  The Second
> Circuit has held that reasonable accommodation "does not require the
> perfect elimination of all disadvantage that may flow from the disability;
> it does not require a lowering of standards, nor that the employer make
> 'fundamental' or 'substantial' modifications in order to eliminate the
> disadvantages flowing from the disability." . . . As the record in this case
> makes clear, **the core functions of the SR position including securing new
> business and meeting certain revenue goals.  Yellow Book, therefore, was
> not required to provide more accounts and lower sales quotas to an SR
> employee who was not able to meet those standards**.

Id. at *34-35 (emphasis added).

Here, Plaintiff claims that he should have received the exact accommodation that the

Court rejected in Ciullo – a reduction in his annual sales goal of $750,000 for 2010.  While

Plaintiff never requested this accommodation, and Raymour & Flanigan had no obligation to

grant such an accommodation, the undisputed record shows that Raymour & Flanigan took no

employment actions based on Plaintiff's sales numbers in 2010.  In effect, Plaintiff received

every accommodation that he now claims to have been denied.

In light of the foregoing, Plaintiff's disability accommodation claim under the ADA is

untimely and fails as a matter of law.  Accordingly, Plaintiff's claim should be dismissed.

- 23 -

14422559

### POINT III

### <u>PLAINTIFF CANNOT ESTABLISH A CLAIM FOR RETALIATION</u>

To the extent that Plaintiff alleged in his Complaint that he was terminated from employment in retaliation for having made "complaints" of discrimination to his supervisors, this claim must be dismissed.  In order to establish a prima facie case of retaliation, a plaintiff must show that (1) he participated in a protected activity; (2) defendant knew of his protected activity; (3) he was subjected to an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. See <u>Van Zant v. KLM Royal Dutch Airline</u>, 80 F.3d 708, 714 (2d Cir. 1996); <u>Bass v. World Wrestling Fed'n Entm't, Inc.</u>, 129 F. Supp. 2d 491, 502, (E.D.N.Y. 2001).  For the reasons below, because Plaintiff cannot even demonstrate that he engaged in protected activity, his retaliation claims fails as a matter of law.

Although Plaintiff did not assert a cause of action for retaliation in his Complaint, he included an allegation that Plaintiff "complained" to unidentified "supervisors" about discrimination, and that he was terminated due to such purported complaints.  (Complaint at ¶ 31).  However, during Plaintiff's deposition, he testified as follows:

> Q:   Did you ever discuss with anyone at Raymour & Flanigan your belief that you were being discriminated against because of your age?
>
> A:   No.
>
> Q:   Did you ever discuss with anyone at Raymour & Flanigan your belief that you were being discriminated against because of your disability?
>
> A.   No.

(Pl. Dep. at p. 156).

Based on Plaintiff's own admission that he never complained of age or disability discrimination during his employment with Raymour & Flanigan, his retaliation claim must be

- 24 -

dismissed due to this fatal flaw.  See Gilderhus v. Concentrix Corp., 825 F. Supp. 2d 414, 431-32 (W.D.N.Y. Oct. 20, 2011) (granting summary judgment motion on retaliation claim because the plaintiff could not demonstrate that she engaged in protected activity); see also Groeneveld v. St. Charles Hosp., 2011 U.S. Dist. LEXIS 64747, at *12 (E.D.N.Y. Jun. 17, 2011) (same); Manatu v. Bowery Residents Comm., 2000 U.S. Dist. LEXIS 11856, at *5 (E.D.N.Y. Aug. 11, 2000) ("[Plaintiff] has not claimed to have engaged in any 'protected activity' within the meaning of Title VII.").  In light of the foregoing, Plaintiff's retaliation claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant Raymour Furniture Company, Inc., d/b/a Raymour & Flanigan Furniture, requests that the Complaint be dismissed in its entirety, that Defendant be awarded its reasonable attorneys' fees and costs, and the Court should grant such further and other relief as this Court deems just and proper.

Dated:  May 3, 2013
      Jericho, New York

**NIXON PEABODY LLP**

/s/

By: _____
    Tara Eyer Daub (TE-7943)
    Jessica Chiclacos (JG-2534)

50 Jericho Quadrangle, Suite 300
Jericho, New York 11753-2728
(516) 832-7500
tdaub@nixonpeabody.com
jchiclacos@nixonpeabody.com

*Attorneys for Defendant*
*Raymour Furniture Company, Inc., d/b/a Raymour*
*& Flanigan Furniture*

- 25 -

14422559