# EXHIBIT A

Walker G. Harman, Jr. [WH-8044]
THE HARMAN FIRM, P.C.
*Attorneys for Plaintiff*
200 West 57th Street, Suite 900
New York, New York 10019
212-425-2600

FILED
CLERK

2012 MAR 15 PM 4:48

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LAWRENCE I. FRIEDMANN,

        *Plaintiff,*

   -against-

RAYMOUR FURNITURE CO., INC.,
and LUCY GOLDSTEIN, individually.

        *Defendant.*
------------------------------------------------------------X

Index No.:

**COMPLAINT**

**PLAINTIFF HEREBY
DEMANDS A TRIAL
BY JURY**

CV 12-1307

WEXLER, J

     Plaintiff, LAWRENCE I. FRIEDMANN, by his attorneys, THE HARMAN FIRM, P.C., as and for his Complaint of disability and age discrimination against Defendants alleges as follows:

### JURISDICTION AND VENUE

     1.    Jurisdiction of this Court is proper under 28 USC § 1331 (a) in that claims arise under federal law, specifically the Age Discrimination in Employment Act of 1967, 29 U.S.C. 623, *et. seq.*, and the Americans with Disabilities Act of 1990, 42 U.S.C. 12112, *et. seq.* The supplemental Jurisdiction of the Court is invoked over the local law cause of action pursuant to 28 U.S.C. § 1367.

     2.    Venue is properly laid in the Eastern District of New York under U.S.C. § 1391(c), in that the Defendant corporation shall be deemed to reside in any judicial district in

which it is subject to personal jurisdiction at the time the action is commenced. The corporate Defendant owns and operates a retail store in which Plaintiff worked, located at 895 East Gate Blvd, Garden City, NY 11530.

3.  Plaintiff has filed a charge with the Equal Employment Opportunity Commission, which issued to the Plaintiff a right to sue letter on December 19, 2011.

### PARTIES

4.  Plaintiff, LAWRENCE I. FRIEDMANN (hereinafter "FRIEDMANN"), is a resident of Bellerose, State of New York.

5.  At all times relevant and hereinafter mentioned, Defendant RAYMOURS FURNITURE CO., INC. (hereinafter "RFCI"), was and is a domestic business corporation, duly existing pursuant to and by virtue of the laws of the State of New York.

6.  At all times relevant and hereinafter mentioned, Defendant LUCY GOLDSTEIN (hereinafter "GOLDSTEIN"), was Plaintiff FRIEDMANN's direct supervisor while he was employed by Defendant RFCI.

7.  At all times relevant and hereinafter mentioned, Defendant RFCI has offices located at 7248 Morgan Road, Liverpool, NY 13088.

8.  At all times relevant and hereinafter mentioned, Plaintiff FRIEDMANN was an employee of Defendant RFCI.

9.  At all times relevant and hereinafter mentioned Plaintiff was employed by Defendant RFCI in the role of "Sales Associate."

## DEMAND FOR TRIAL BY JURY

10. Plaintiff demands a trial by jury.

## FACTUAL BACKGROUND

11. In or about October 2005, Plaintiff FRIEDMANN began working for Defendant RFCI as a "Sales Associate."

12. From January 2006 until late 2010, before Plaintiff FRIEDMANN became ill, Plaintiff FRIEDMANN met all sales quotas imposed by Defendant RFCI and even excelled in his sales numbers as compared to his fellow associates.

## DISABILITY DISCRIMINATION

13. Plaintiff FRIEDMANN had his first surgery relating to his Sciatica on or around May 31, 2002.

14. However, before a flare up of his Sciatica on or about May 1, 2008, Plaintiff FRIEDMANN was not hindered by his Sciatica in any way in his employment for Defendant RFCI.

15. Despite this flare up in May 2008, Plaintiff FRIEDMANN continued to meet all of the sales quotas imposed on all sales associates employed by Defendant RFCI.

16. Plaintiff FRIEDMANN did not experience any significant flare ups in his Sciatica from May 1, 2008 until March of 2010.

17. In or around March 2010, Plaintiff FRIEDMANN experienced another flare up of Sciatica.

18. This time, the flare up affected Plaintiff FRIEDMANN's ability to stand for long periods of time, which thereby inhibited his ability to meet the requisite sales numbers.

19. Plaintiff FRIEDMANN sought medical treatment as follows:

   a. On March 3, 2010, Plaintiff FRIEDMANN met with Dr. Jeffrey Shapiro, an Orthopedic Surgeon, with complaints about his Sciatica pain;

   b. On March 17, 2010, Plaintiff FRIEDMANN returned to Dr. Jeffrey Shapiro's office for further consultation and treatment;

   c. On April 13, 2010, Plaintiff FRIEDMANN again met with Dr. Jeffrey Shapiro regarding his pain;

   d. On April 30, 2010, Plaintiff FRIEDMANN met with Dr. Daniel Brietstein, who is a pain management doctor;

   e. On May 7, 2010, Plaintiff FRIEDMANN received an MRI at Next Generation Radiology office;

   f. On May 13, 2010, Plaintiff FRIEDMANN received epidurals injections at an Ambulatory Center which were administered by Dr. Daniel Brietstein, the pain management doctor;

   g. On June 1, 2010, Plaintiff FRIEDMANN received more epidural injections by Dr. Daniel Brietstein;

   h. On July 8, 2010, Plaintiff FRIEDMANN returned to Dr. Daniel Brietstein's office for a follow-up appointment after treatment and surgery;

   i. On July 10, 2010, Plaintiff FRIEDMANN began physical therapy sessions at Long Island Physical Therapy;

   j. On July 12, 2010, Plaintiff FRIEDMANN had another physical therapy session at Long Island Physical Therapy;

   k. On July 20, 2010, Plaintiff FRIEDMANN had another physical therapy session at

Long Island Physical Therapy;

l. On August 9, 2010, Plaintiff FRIEDMANN met with the supervisor of physical therapy, Dr. Jay Weiss for a consultation regarding further pain management treatment.

20. Throughout Plaintiff FRIEDMANN's medical treatment, Plaintiff FRIEDMANN did not seek disability leave from Defendant RFCI, but simply made a request for reasonable accommodation that he be allowed to rest for short periods of time while on the sales floor so as not to exacerbate his condition and that some consideration be given to the impact this request would have on his sales quotas.

21. Plaintiff FRIEDMANN's sales numbers suffered as a direct result of his Sciatica and resulting treatment. However, Defendants, including Defendant GOLDSTEIN, did not adequately grant Plaintiff FRIEDMANN his accommodation request. Plaintiff FRIEDMANN was chastised for taking breaks and no consideration was given to the impact the breaks would have on his sales quotas.

22. Plaintiff FRIEDMANN was put on a performance review plan in or about April 2011.

23. Plaintiff FRIEDMANN was the only individual put on a performance plan because disability alone, with one other man who used a cane.

24. Despite the fact that Plaintiff FRIEDMANN had sciatica, which directly affected his ability to meet his sales quotas – sales quotas that should have been adjusted as a reasonable accommodation, and had never had difficulty with meeting any sales quotas before his sciatica flared up, Plaintiff FRIEDMANN was summarily terminated.

25. Upon information and belief, no sales associates on the performance plan with

Case 2:12-cv-01307-LDW-AKT   Document 68-1   Filed 06/28/13   Page 7 of 11 PageID #: 534
Case 2:12-cv-01307-LDW-AKT   Document 1   Filed 03/15/12   Page 6 of 10 PageID #: 6

numbers lower than Plaintiff FRIEDMANN were terminated due to performance-related issues.

## AGE DISCRIMINATION

26. In or about 2005, Plaintiff FRIEDMANN began his employment by RFCI as a sales associate. From January 2006 to December 2009, the Plaintiff's job and sales performance far exceeded RFCI's minimum volume requirements.

27. In or about February 2011, Defendant GOLDSTEIN asked Plaintiff FRIEDMANN his age and when he planned to retire. Plaintiff did not divulge his age at that time, but stated that he planned to retire approximately five (5) years in the future. After this conversation, Defendant GOLDSTEIN began to refer to Plaintiff FRIEDMANN as "old man" when speaking to him. It was at this time that Plaintiff FRIEDMANN began to believe his age was a problem for his employer.

28. Thereafter, Plaintiff FRIEDMANN's other colleagues and managers began to address him as "old man" when speaking to him.

29. Any time Plaintiff FRIEDMANN's performance was addressed by Defendant GOLDSTEIN, she would say, "that old excuse again."

30. Although other employees were allowed to sit down at work without repercussion and without having to request reasonable accommodation, Plaintiff FRIEDMANN was not allowed these rights, even upon requesting them of his superiors.

31. Upon Plaintiff FRIEDMANN complaining to his superiors about age and disability discrimination, nothing changed; moreover, Plaintiff FRIEDMANN was terminated because of his age and disability in retaliation for his complaints of discrimination.

32. In or about May 2011, Plaintiff FRIEDMANN, along with eight other employees of Defendant RFCI were placed on a coaching plan because these employees were alleged to

have low figures in sales.

33. Plaintiff FREIDMANN was the only one (1) of the eight (8) employees of Defendant RFCI placed on the coaching plan who was thereafter terminated from employment, while many other younger employees had been kept on the coaching plan for a number of years without being terminated.

34. After Plaintiff FRIEDMANN was placed on the coaching plan, the regional manager, Tony Bender, informed Plaintiff FRIEDMANN that his figures "were going to slip again," despite Plaintiff FRIEDMANN informing Mr. Bender that he believed this was not the case.

35. On or about May 18, 2011, Plaintiff FRIEDMANN was asked by Defendant GOLDSTEIN to interview with the Store Manager at the Carle Place branch owned by Defendant RFCI for consideration for a transfer. Plaintiff met with Laura, a store manager of the Carle Place branch, who stated she "was not looking for anyone for her store who had a few bucks in the bank," meaning that she did not want an employee who was older and she felt like was about to retire.

36. To Plaintiff FRIEDMANN, this was a derogatory comment aimed at Plaintiff FRIEDMANN's age. Plaintiff FRIEDMANN was visibly offended by this comment.

37. On or about May 18, 2011, upon Plaintiff FRIEDMANN's return to his work location, Defendant GOLDSTEIN informed Plaintiff FRIEDMANN that he was not being transferred to the Carle Place branch owned by Defendant RFCI.

38. On or about June 18, 2011, Defendant GOLDSTEIN terminated Plaintiff FRIEDMANN and stated "enjoy your summer in the Hamptons," a direct reference to Plaintiff FRIEDMANN's age and Defendant GOLDSTEIN's opinion, which she had stated before on

many occasions, that Plaintiff FRIEDMANN should retire.

39. On the same day, Iman Kosmi, the showroom manager employed by Defendant RFCI, also stated to Plaintiff FRIEDMANN that his father had resisted retiring but once he did, "he was very happy."

40. Iman Kosmi further informed Plaintiff FRIEDMANN that he could collect unemployment in addition to any retirement income and that it was "not bad", implying Plaintiff FRIEDMANN was better off having been terminated by Defendant RFCI.

41. Plaintiff FRIEDMANN was aged 70 upon his termination.[1]

## FIRST CAUSE OF ACTION

42. Plaintiff FRIEDMANN repeats and realleges each and every allegation contained in paragraphs "1" through "41" with the same force and effect as if separately alleged and reiterated herein.

43. Defendants RFCI and GOLDSTEIN subjected Plaintiff FRIEDMANN to age discrimination, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. 623, *et. seq.*

44. As a result, Plaintiff FRIEDMANN suffered damages for past and future earnings, other employment benefits, attorney's fees, and emotional injuries in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

45. Plaintiff FRIEDMANN repeats and realleges each and every allegation contained in paragraphs "1" through "41" with the same force and effect as if separately alleged and

---

[1] Plaintiff FRIEDMANN was born June 17, 1941.

reiterated herein.

46. Defendants RFCI and GOLDSTEIN subjected Plaintiff FRIEDMANN to disability discrimination, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. 12112, *et. seq.*

47. As a result, Plaintiff FRIEDMANN suffered damages for past and future earnings, other employment benefits, attorney's fees, and emotional injuries in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

48. Plaintiff FRIEDMANN repeats and realleges each and every allegation contained in paragraphs "1" through "41" with the same force and effect as if separately alleged and reiterated herein.

49. Defendants RFCI and GOLDSTEIN subjected Plaintiff FRIEDMANN to disability and age discrimination in violation of the New York Executive Law § 296, *et. seq.*

50. As a result, Plaintiff FRIEDMANN suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

51. Plaintiff FRIEDMANN repeats and realleges each and every allegation contained in paragraphs "1" through "41" with the same force and effect as if separately alleged and reiterated herein.

52. Defendant GOLDSTEIN willfully and consciously aided and abetted the pervasive disability and age discrimination Plaintiff FRIEDMANN suffered and refused to

rectify the work environment, despite being responsible for doing so.

53. As a result, Plaintiff FRIEDMANN suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(i) On the First Cause of Action, actual damages to be determined at trial, but in no event less than $1,000,000;

(ii) On the Second Cause of Action, actual damages to be determined at trial, but in no event less than $1,000,000;

(iii) On the Third Cause of Action, actual damages to be determined at trial, but in no event less than $1,000,000;

(iv) On the Fourth Cause of Action, actual damages to be determined at trial, but in no event less than $1,000,000;

(iv) Punitive damages;

(v) Attorneys' fees, disbursements and other costs; and

(vi) Such other and further relief which the Court deems just and proper.

Dated:   New York, New York
         March 12, 2012

                                         /s/ Walker G. Harman, Jr.
                                         _____
                                         Walker G. Harman, Jr.
                                         THE HARMAN FIRM, PC
                                         *Attorneys for Plaintiff*
                                         200 West 57th Street, Suite 900
                                         New York, New York 10019
                                         (212) 425-2600