**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
LAWRENCE I. FRIEDMANN,

        *Plaintiff*,

    *v.*                                   **12 CV 1307 (LDW)(AKT)**

RAYMOUR FURNITURE CO., INC., *and*
LUCY GOLDSTEIN,

        *Defendants*.
-----------------------------------------------------------------X

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**THE HARMAN FIRM, PC**
*Counsel for Plaintiff*
Walker G. Harman, Jr. [WH-8044]
Peter J. Andrews [PA-3295]
200 West 57th Street, Suite 900
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com
pandrews@theharmanfirm.com

i

## TABLE OF CONTENTS

I.    **PRELIMINARY STATEMENT** ...............................................................................1

II.   **STATEMENT OF FACTS** ...................................................................................2

   A.   Mr. Friedmann's Career with Defendant.................................................................2

   B.   Mr. Friedmann's Termination after Refusing to Voluntarily Retire. ....................2

   C.   Mr. Friedmann's Years of Success while Suffering from Sciatica.......................3

III.  **ARGUMENT**.........................................................................................................4

   A.   Defendant did not comply with FED. R. CIV. P. 56(d) discovery requirements. ....4

   B.   Standard for Motion for Summary Judgment. .......................................................7

   C.   Federal Claims. ......................................................................................................8

      1.   Age Discrimination......................................................................................8

         (a)  Mr. Friedmann establishes a *prima facie* case. ..................................9

         (b)  Defendant does not assert a legitimate nondiscriminatory reason for terminating Mr. Friedmann. The reason proffered was mere pretext to systematically terminate Mr. Friedmann because he was perceived to be lazy and old.........................................13

      2.   Claim for Disability Discrimination ...........................................................16

         (a)  Plaintiff is not time-barred .................................................................17

           (i)  The ADA and the EEOC....................................................................17

           (ii) General Contractual Limitations on Time to File Actions Do Not Apply to ADEA or ADA Lawsuits. ..................................................................................19

   D.   Plaintiff was denied reasonable accommodations ..............................................21

   E.   Claim for Retaliation...........................................................................................22

IV.  **CONCLUSION**..................................................................................................**23**

## TABLE OF AUTHORITIES

**Cases**

*Amtrak v. Morgan,*
536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) ......................................................18

*Bank of Am. v. Fischer,*
2013 WL 685614, 2013 U.S. Dist. LEXIS 25450 (E.D.N.Y. Feb. 25, 2013) ............................4

*Baron Servs. v. Media Weather Innovations,*
2013 WL 1876511, 2013 U.S. App. LEXIS 9242 (Fed. Cir. May 7, 2013) ...............................5

*Bickerstaff v. Vassar Coll.,*
196 F.3d 435 (2d Cir. 1999) ........................................................................................................8

*Borkowski v. Valley Cent. Sch. Dist.,*
63 F.3d 131 (2d Cir. 1995) ........................................................................................................22

*Brady v. Wal-Mart Stores,*
531 F.3d 127 (2d Cir. 2008) ......................................................................................................21

*Braham v. Lantz,*
2012 WL 951776, 2012 U.S. Dist. LEXIS 37517 (D. Conn. Mar. 20, 2012) ........................6, 7

*Bruder v. Jewish Bd. of Family & Children's Servs.,*
2013 WL 789231, 2013 U.S. Dist. LEXIS 31066 (E.D.N.Y. Mar. 4, 2013) ...........................12

*Bucalo v. Shelter Is. Union Free Sch. Dist.,*
778 F. Supp. 2d 271 (E.D.N.Y. 2011) *aff'd,*
691 F.3d 119 (2d Cir. 2012) ......................................................................................................10

*Carlton v. Mystic Transp.,*
202 F.3d 129 (2d Cir. 2000) ......................................................................................................10

*Chambers v. TRM Copy Centers Corp.,*
43 F.3d 29 (2d Cir. 1994) .....................................................................................................10, 11

*Chertkova v. Conn. Gen. Life Ins.,*
92 F.3d 81 (2d Cir. 1996) ............................................................................................................8

*Cont'l Cas. v. Marshall Granger,*
2013 WL 372162, 2013 U.S. Dist. LEXIS 13541 (S.D.N.Y. Jan. 31, 2013) .............................4

*Danzer v. Norden Sys.,*
151 F.3d 50 (2d Cir. 1998) ........................................................................................................13

*Demoret v. Zegarelli,*
451 F.3d 140 (2d Cir. 2006) ........................................................................................................9

*Desir v. BOCES,*
803 F. Supp. 2d 168 (E.D.N.Y. 2011) *aff'd,*
469 F. App'x 66 (2d Cir. 2012) ...................................................................................................8

*Earvin v. CUNY,*
    2008 WL 5740359, 2008 U.S. Dist. LEXIS 108163 (S.D.N.Y. Feb. 17, 2008) *aff'd,*
    315 F. App'x 358 (2d Cir. 2009) ...................................................................................13

*Goldberg & Connolly v. N.Y. Cmty. Bancorp,*
    565 F.3d 66 (2d Cir. 2009) .............................................................................................7

*Goonan v. FRB of N.Y.,*
    2013 WL 69196, 2013 U.S. Dist. LEXIS 3764 (S.D.N.Y. Jan. 7, 2013) *recon. denied,*
    2013 WL 1386933, 2013 U.S. Dist. LEXIS 49729 (S.D.N.Y. Apr. 5, 2013) .........................21

*Gorzynski v. JetBlue Airways,*
    596 F.3d 93 (2d Cir. 2010) ...............................................................................8, 10, 14

*Grady v. Affiliated Cent.,*
    130 F.3d 553 (2d Cir. 1997) .........................................................................................12

*Grant v. Roche Diagnostics Corp.,*
    2011 WL 3040913, 2011 U.S. Dist. LEXIS 79994 (E.D.N.Y. July 20, 2011) .......................12

*Graves v. Finch Pruyn & Co.,*
    457 F.3d 181 (2d Cir. 2006) .........................................................................................16

*Gualandi v. Adams,*
    385 F.3d 236 (2d Cir. 2004) ...........................................................................................4

*Hazen Paper v. Biggins,*
    507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993) .......................................................9

*Hetchkop v. Woodlawn at Grassmere,*
    116 F.3d 28 (2d Cir. 1997) .............................................................................................8

*Heyman v. Queens Vill. Comm.,*
    198 F.3d 68 (2d Cir. 1999) ...........................................................................................14

*Hoffmann v. Airquip Heating & Air Conditioning,*
    480 F. App'x 110 (2d Cir. 2012) .....................................................................................4

*Holcomb v. Iona Coll.,*
    521 F.3d 130 (2d Cir. 2008) ...........................................................................................8

*Jacques v. DiMarzio,*
    200 F. Supp. 2d 151 (E.D.N.Y. 2002) *aff'd,*
    386 F.3d 192 (2d Cir. 2004) .........................................................................................21

*Jeffreys v. City of N.Y.,*
    426 F.3d 549 (2d Cir. 2005) ...........................................................................................8

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) .........................................9, 10, 11, 13

*McElwee v. Cnty. of Orange,*
    700 F.3d 635 (2d Cir. 2012) .........................................................................................22

*Miller v. ITT,*
    755 F.2d 20 (2d Cir.1985) ............................................................................................17

*Miller v. Nat'l Ass'n of Sec. Dealers*,
   703 F. Supp. 2d 230 (E.D.N.Y. 2010)...................................................................passim

*Miller v. Wolpoff & Abramson*,
   321 F.3d 292 (2d Cir. 2003).....................................................................................4, 5

*Paddington Parts. v. Bouchard*,
   34 F.3d 1132 (2d Cir. 1994)........................................................................................4

*Pierce v. Gareb Shamus Enters.*,
   2013 WL 1344963, 2013 U.S. Dist. LEXIS 47607 (E.D.N.Y. Mar. 29, 2013) ....................7, 8

*Porter v. Ray*,
   461 F.3d 1315 (11th Cir. 2006)...................................................................................5

*Predun v. Shoreham-Wading River Sch. Dist.*,
   489 F. Supp. 2d 223 (E.D.N.Y. 2007)....................................................................17, 18

*Quinn v. Green Tree Credit Corp.*,
   159 F.3d 759 (2d Cir. 1998).......................................................................................18

*Religious Tech. Ctr. v. Lerma*,
   908 F. Supp. 1362 (E.D. Va. 1995).............................................................................23

*Robles v. Cox & Co.*,
   841 F. Supp. 2d 615 (E.D.N.Y. 2012)........................................................................18

*Roge v. NYP Holdings*,
   257 F.3d 164 (2d Cir. 2001).........................................................................................9

*Scalera v. Electrograph Sys.*,
   848 F. Supp. 2d 352 (E.D.N.Y. 2012)........................................................................21

*Schwapp v. Town of Avon*,
   118 F.3d 106 (2d Cir. 1997).........................................................................................8

*Sec. Ins. Co. v. Old Dominion Freight Line*,
   391 F.3d 77 (2d Cir. 2004)..........................................................................................8

*Slattery v. Swiss Reins. Am. Corp.*,
   248 F.3d 87 (2d Cir. 2001)...........................................................................................9

*Smith v. City of Jackson*,
   544 U.S. 228, 125 S. Ct. 1536, 161 L. Ed. 2d 410 (2005) .........................................9

*Snook v. Trust Co. of Georgia Bank*,
   859 F.2d 865 (11th Cir. 1988)......................................................................................5

*Starr v. Legal Aid Soc'y*,
   1998 WL 477733, 1998 U.S. Dist. LEXIS 12566 (S.D.N.Y. Aug. 14, 1998) ........................12

*Sutera v. Schering Corp.*,
   73 F.3d 13 (2d Cir. 1995).............................................................................................7

*Syrkin v. SUNY*,
   2005 WL 2387819, 2005 U.S. Dist. LEXIS 21710 (E.D.N.Y. Sept. 29, 2005)....................17

*Taylor v. Phoenixville Sch. Dist.*,
    174 F.3d 142 (3d Cir. 1999) ......................................................................21

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) ..........................10

*Van-Go Transp. v. N.Y.C. Bd. of Educ.*,
    53 F. Supp. 2d 278 (E.D.N.Y. 1999) ........................................................20

*Vega v. FedEx*,
    2011 WL 4494751, 2011 U.S. Dist. LEXIS 111531 (S.D.N.Y. Sept. 29, 2011) ...............19, 20

*Whidbee v. Garzarelli Food Specialties*,
    223 F.3d 62 (2d Cir. 2000) ..........................................................................8

*Wright v. Universal Mar. Serv. Corp.*,
    525 U.S. 70, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998) ............................20

*Zimmermann v. Assocs. First Cap. Corp.*,
    251 F.3d 376 (2d Cir. 2001) ......................................................................13

*Zosimo v. Delvalle*,
    22 F. Supp. 2d 42 (E.D.N.Y. 1998) ..........................................................16

## Statutes

29 C.F.R. § 1630.9 ...........................................................................................21

29 U.S.C. § 623(a)(1) ........................................................................................9

29 U.S.C. §§ 621–34 ......................................................................................8, 9

42 U.S.C. § 12111 ...........................................................................................16

42 U.S.C. § 2000e–2000e-17 ............................................................................9

42 U.S.C. § 2000e-5(e)(1) ...............................................................................17

42 U.S.C. § 2000e-5(e)(2) ...............................................................................17

42 U.S.C. §§ 12101–12213 ..................................................................16, 17, 21

## Rules

Fed. R. Civ. P. 30(b)(6) .....................................................................................3

Fed. R. Civ. P. 56(d) ......................................................................................4, 7

## Law Review Articles

Susan Strebel Sperber, Craig R. Welling,
    *The Continuing Violations Doctrine Post-Morgan*,
    32 Colo. Law. 57 (Feb. 2003) ...................................................................16

## I.    PRELIMINARY STATEMENT

Plaintiff Lawrence I Friedmann respectfully submits this Memorandum of Law in Opposition to the Motion for Summary Judgment filed by his former employers, Defendant Raymour Furniture Co., Inc. ("Defendant" or "Raymour & Flanigan"), who illegally terminated Mr. Friedmann the day after he turned seventy (70) years old due to his perceived age and disability. *See* Declaration of Walker G. Harman Jr., dated June 19, 2013 ("Harman Decl."), ¶ 2, n.1.

Defendant's Motion should be denied in its entirety because it is premature given the fact that Defendant never complied with discovery and accordingly FED. R. CIV. P. 56(d) deems their Motion premature as Plaintiff was never provided the production necessary to adequately oppose summary judgment. Plaintiff reserves the right to oppose Defendant's Motion when he is finally in receipt of fulsome production, which he has been burdened with seeking for nearly one (1) year, which is described fully below. *See infra* § III.A.

In opposing Defendant's Motion without Defendant's document production being complete, Plaintiff is at a disadvantage. Moreover, Defendant's willingness to stretch meaning from context and to oppose non-existent causes of action bewilders. *See*, *e.g.*, Harman Decl. ¶¶ 4–5 and § III.E. *infra*.

Mr. Friedmann was held to the same standard as his colleagues that did not suffer from a disability and who did not have to take leave for surgery even though his younger former colleague was granted a reduced sales goal. *See* Transcript of the Deposition of Lucy Goldstein, taken Feb. 22, 2013 ("Goldstein Tr."), 77:18–25 annexed to the Harman Decl. as *Ex. A*.

## II.    STATEMENT OF FACTS

### A.    Mr. Friedmann's Career with Defendant.

From 2005 to 2011, Mr. Friedmann was employed as a salesperson at furniture stores operated by Defendant.  *See* Affidavit of Lawrence I. Friedmann sworn to June 19, 2013 ("Friedmann Aff.") ¶ 5.  Until 2010, Mr. Friedmann had an excellent employment experience with Defendant, meeting or exceeding his employer's sales goals.  *Id.* ¶ 6.

### B.    Mr. Friedmann's Termination after Refusing to Voluntarily Retire.

In or around February 2011, Mr. Friedmann's store manager, Lucy Goldstein, asked him how old he was, and when he planned to retire.  Friedmann Aff. ¶ 7. Mr. Friedmann responded by refusing to divulge his age and stating that he planned to retire in five (5) years.  *Id.*

On May 18, 2011, Mr. Friedmann was directed by Ms. Goldstein to interview with a manager at another store operated by the Defendant.  *Id.* ¶ 8.  Mr. Friedmann followed Ms. Goldstein's instructions and went to the other store and met with that store's manager, who told him that she was not interested in any employees "who had a few bucks in the bank" and did not want him to work there.[1]  *Id.* ¶ 9.  Mr. Friedmann then returned to his assigned store where Ms. Goldstein advised him that he could not be transferred to the other store.  *Id.* ¶ 10.  One (1) month later, after having failed to pass him on to someone else within the company, Ms. Goldstein terminated Mr. Friedmann's employment.  *Id.*

That very day, Mr. Friedmann's last day of work, a showroom manager within the same store who had learned of the termination attempted to cheer him up by telling him that his own father initially had resisted retiring but now "was very happy."  *See* Transcript of the Deposition

---

[1] This statement can only have be inferred to mean that Mr. Friedmann (i) had the resources to retire, **and** (ii) should retire.  Friedmann Aff. ¶ 9.

of Lawrence I. Friedmann, taken Jan. 4, 2013 ("Friedmann Tr."), 81:20–25 annexed to the
Harman Decl. as *Ex. B*. This same showroom manager told Mr. Friedmann that since he could
now retire and collect unemployment insurance benefits "it was not bad." Friedmann Aff. ¶ 11.

Theses events were preceded by ominous signs that Mr. Friedmann simply was not
wanted at Defendant Raymour & Flanigan because he was, as Ms. Goldstein and other
employees put it, "and old man" complaining about "that sciatica thing again." Friedmann Tr.
123:12–124:9, 147:10–11. After Mr. Friedmann's surgery, while he was recovering, his
supervisor, Ms. Goldstein thought that "[h]is motivation wasn't there," and she viewed him as
"lazy." Goldstein Tr. 77:18–25.

**C.      Mr. Friedmann's Years of Success while Suffering from Sciatica.**

Although Mr. Friedmann's employment with Defendant began in 2005, he has suffered
from sciatica since at least 2002. Friedmann Tr. 89:17–92:6.

In March of 2010, Mr. Friedmann suffered another sciatica flare-up. Friedmann Tr.
95:14–96:12. Rather than seek disability leave, to which he would most certainly have been
entitled, Mr. Friedmann continued to work for Defendant, while receiving medical treatment to
ameliorate his pain and suffering. *Id.* 110:7–13. Mr. Friedmann's only requests to his employer
was that he be allowed to sit down from time to time. Friedmann Aff. ¶¶ 14–15. However, the
Defendant did neither and Mr. Friedmann was told approximately fifteen (15) times that he was
not allowed to sit. Friedmann Tr. 106:2–14. Moreover, despite annual training in how to handle
employees with disabilities, Defendant refused to modify Mr. Friedmann's sales quotas. *See*
Goldstein Dep. at 54–57 and the Transcript of the Deposition of Defendant's representative
pursuant to FED. R. CIV. P. 30(b)(6), Patricia Delgenio taken Feb. 13, 2013 ("Delgenio Tr.")
at 70–72, attached to the Harman Decl. at *Ex. C*. The Defendant's did not display such an

intolerant attitude to everyone.  Other employees were allowed to sit down at work without repercussions.  Friedmann Aff. ¶¶ 14–15.  Also, several other younger sales employees who failed to meet their quotas were kept on coaching plans for years without being terminated.  *Id.* ¶ 16.


### III.   ARGUMENT

**A.    Defendant did not comply with Fed. R. Civ. P. 56(d) discovery requirements.**

Pursuant to Fed. R. Civ. P. 56(d):

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

The affidavit must explain "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004); *accord Hoffmann v. Airquip Heating & Air Conditioning*, 480 F. App'x 110, 112 (2d Cir. 2012) (quoting *Paddington Parts. v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)); *Bank of Am. v. Fischer*, 2013 WL 685614, 2013 U.S. Dist. LEXIS 25450 (E.D.N.Y. Feb. 25, 2013), *Cont'l Cas. v. Marshall Granger*, 2013 WL 372162, 2013 U.S. Dist. LEXIS 13541 (S.D.N.Y. Jan. 31, 2013); *see generally Miller v. Wolpoff & Abramson*, which states that:

> Fed. R. Civ. P. 56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery . . . the court should defer

4

> decision of the motion until the party has had the opportunity to take
> discovery and rebut the motion. . . . [S]ummary judgment should only be
> granted if after discovery, the nonmoving party has failed to make a
> sufficient showing on an essential element of its case with respect to
> which it has the burden of proof.

*Miller v. Wolpoff & Abramson*, 321 F.3d 292, 303 (2d Cir. 2003) (internal citations and alterations omitted).

"The whole purpose of discovery in a case in which a motion for summary judgment is filed is to give the opposing party an opportunity to discover as many facts as are available and [they] consider[] essential to enable [them] to determine whether [they] can honestly file opposing affidavits." *Baron Servs. v. Media Weather Innovations*, 2013 WL 1876511, 2013 U.S. App. LEXIS 9242 (Fed. Cir. May 7, 2013) quoting *Snook v. Trust Co. of Georgia Bank*, 859 F.2d 865, 870 (11th Cir. 1988). The Eleventh Circuit directed its district courts to deny summary judgment "when the party opposing the [summary judgment] motion has been unable to obtain responses to his discovery requests" and the discovery sought would be essential to opposing summary judgment and "relevant to the issues presented by the motion for summary judgment." *Snook,* 859 F.2d at 870; *see also Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006).

In the instant case, Defendant has not turned over to the Plaintiff any of the requested documents concerning the sales records of the salespeople at the time Mr. Friedmann was terminated, specifically the salespeople that sold less than he, but whom Defendant did not even place on a performance improvement plan let alone terminate. Friedmann Aff. ¶ 16–21. These records are essential to the Plaintiff's theory that the Defendant's fired Mr. Friedmann because of his age. These records will show that there were other younger salespersons who had not met their sales goals but were not terminated.

In any event, Plaintiff easily survives Defendant's Motion: at the very least, Nardia Palmatier, Plaintiff's former colleague, sold less than Plaintiff, was on a performance

improvement plan and was not terminated for low sales figures.  *Id.*; *see also* Goldstein Tr. at 85:1–2.

    During the course of discovery, Plaintiff repeatedly sought responsive information:

   (i)      First in his Oct. 8, 2012 Document Requests and Interrogatories (Harman Decl., *Ex. D*)

   (ii)     Again in a Dec. 28, 2012 deficiency letter (Harman Decl., *Ex. E*);

   (iii)    Again in his Jan. 18, 2013 Motion to Compel (Harman Decl., *Ex. F*);

   (iv)     Again in his Jan. 23, 2013 Amended Motion to Compel (Harman Decl., *Ex. G*);

   (v)      Again in his Feb. 8, 2013 Second Amended Motion to Compel (Harman Decl., *Ex. H*);

   (vi)     Again in his Feb. 25, 2013 letter to the Court (Harman Decl., *Ex. I*); and

   (vii)    Again in his Mar. 20, 2013 Objection to the Magistrate's decisions. (Harman Decl., *Ex. J*)

    It is improper to grant summary judgment before these critical and dispositive documents are received.  In *Braham v. Lantz*, the plaintiff submitted a declaration in support of his request in which he explained how the discovery will enable him to oppose the defendants' motion and why he needs additional time to take the discovery.  *Braham v. Lantz*, 2012 WL 951776, 2012 U.S. Dist. LEXIS 37517 (D. Conn. Mar. 20, 2012).  He filed a motion to compel seeking responses to interrogatories and requests for production, and the defendants did not comply with his requests and did not cooperate in scheduling depositions.  *Id.*  The plaintiff pointed to specific

information upon which the defendants relied on in their summary judgment motion—specific information that he requested in the motion to compel but had not received. *Id.* The defendant's motion for summary judgment was denied, and the court explained that if the motion raises particular issues as to which the opposing party has not yet had a reasonable opportunity to take discovery, then relief under FED. R. CIV. P. 56(d) would be appropriate. *Id.*

Plaintiff's search for responsive discovery is perpetual and ongoing until Defendant produces the production to which FED. R. CIV. P. 56 says Mr. Friedmann is entitled.

Plaintiff brought to the Court's attention that he disagreed with Magistrate Judge Tomlinson's rulings and submitted an Objection. *See* Harman Decl., *Ex. J.* In response to Defendant's June 4, 2013 letter to the Court, wherein it is purported that they complied with Plaintiff's discovery requests – which they most certainly did not – the Court on June 5, 2013 ruled that Plaintiff's "objection to the Magistrate Judge's orders regarding discovery is moot." *See* Defendant's June 4, 2013 letter is annexed to the Harman Decl. as *Ex. K*; the text of the Court's June 5, 2013 Order is *Ex. L.*

## B. Standard for Motion for Summary Judgment.

The responsibility of a court assessing the merits of a summary judgment motion is not to try issues of fact, but rather to "determine whether there *are* issues of fact to be tried." *Miller v. Nat'l Ass'n of Sec. Dealers*, 703 F. Supp. 2d 230, 241–42 (E.D.N.Y. 2010) (quoting *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995)). A court's role "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Pierce v. Gareb Shamus Enters.*, 2013 WL 1344963, 2013 U.S. Dist. LEXIS 47607 (E.D.N.Y. Mar. 29, 2013) (quoting *Goldberg & Connolly v. N.Y. Cmty. Bancorp*, 565 F.3d 66, 71 (2d Cir. 2009)). The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact. *Miller*,

703 F. Supp. 2d at 241–42 (E.D.N.Y. 2010); *see also*, *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005).  All ambiguities should be resolved and all factual inferences should be drawn in favor of the party opposing the motion.  *Miller*, 703 F. Supp. 2d at 241–42 (E.D.N.Y. 2010); *see also, Sec. Ins. Co. v. Old Dominion Freight Line*, 391 F.3d 77, 83 (2d Cir. 2004); *Hetchkop v. Woodlawn at Grassmere*, 116 F.3d 28, 33 (2d Cir. 1997) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

The Second Circuit "has repeatedly emphasized 'the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent.' " *Gorzynski v. JetBlue Airways*, 596 F.3d 93, 101 (2d Cir. 2010) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)); *Pierce*, 2013 WL 1344963, 2013 U.S. Dist. LEXIS 47607 (E.D.N.Y. Mar. 29, 2013); *Miller*, 703 F. Supp. 2d at 242 (E.D.N.Y. 2010); *see also*, *Whidbee v. Garzarelli Food Specialties*, 223 F.3d 62, 71 (2d Cir. 2000) (citing *Chertkova v. Conn. Gen. Life Ins.*, 92 F.3d 81, 87 (2d Cir. 1996)); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997); *Desir v. BOCES* ("[E]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law."  803 F. Supp. 2d 168, 176 (E.D.N.Y. 2011) *aff'd*, 469 F. App'x 66 (2d Cir. 2012) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999)).

## C.    **Federal Claims.**

### 1.    **Age Discrimination**

The Age Discrimination in Employment Act of 1967 ("ADEA") establishes that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to . . . compensation, terms, conditions or privileges or employment,

because of such individual's age." 29 U.S.C. § 623(a)(1).  Congress promulgated the ADEA to address the concern that older workers are subject to employment disadvantages due to negative stereotypes about their ability to work.  *Miller*, 703 F. Supp. 2d at 243.  "[F]or an older employee to be fired because . . . productivity and competence decline with old age"—which they do not—"is the very essence of age discrimination."  *Smith v. City of Jackson*, 544 U.S. 228, 247–48, 125 S. Ct. 1536, 1549, 161 L. Ed. 2d 410, 426 (2005) (quoting *Hazen Paper v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701, 1706, 123 L. Ed. 2d 338, 347 (1993).

The Second Circuit has routinely analyzed ADEA claims using the burden-shifting framework for Title VII claims established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *accord Miller*, 703 F. Supp. 2d at 243; *see also*, *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001); *Roge v. NYP Holdings*, 257 F.3d 164, 168 (2d Cir. 2001).  Under *McDonnell Douglas*, a plaintiff first establishes a *prima facie* case of employment discrimination using circumstantial evidence, after which the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the disparate treatment, thus shifting the burden back to the plaintiff to establish that defendant's proffered legitimate nondiscriminatory reason is mere pretext.  *Miller*, 703 F. Supp. 2d at 243; *see also Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802–04, 93 S. Ct. at 1824–25).

      **(a)**      **Mr. Friedmann establishes a *prima facie* case.**

In order to establish a *prima facie* case of age discrimination in violation of the ADEA, a plaintiff must show that they:

      (i)      Were within the protected age group (*i.e.*, more than forty (40) years old);

      (ii)      Were qualified for their position;

      (iii)      Experienced adverse employment action; and that

(iv)     Such action occurred under circumstances giving rise to an inference of

discrimination.  *Miller*, 703 F. Supp. 2d at 244; *see also Gorzynski*, 596

F.3d at 107 (citing *Carlton v. Mystic Transp.*, 202 F.3d 129, 134 (2d Cir.

2000)).

"The burden of establishing a *prima facie* case of disparate treatment is not onerous."

*Bucalo v. Shelter Is. Union Free Sch. Dist.*, 778 F. Supp. 2d 271, 276 (E.D.N.Y. 2011) *aff'd*, 691

F.3d 119 (2d Cir. 2012) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54,

101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207, 215 (1981)).   The employee's burden is light at this

stage, *Gorzynski*, 596 F.3d at 107, and "[o]ne might characterize it as minimal."   *Carlton v.*

*Mystic Transp.*, 202 F.3d 129, 134 (2d Cir. 2000).  Circumstances contributing to an inference of

age-based employment discrimination include but are not limited to: invidious comments about

people in the protected age class; more favorable treatment of younger employees; criticism of

an employee's work performance in age-related degrading terms; a sequence of events leading to

an employee's termination; and the timing of the termination.   *Miller*, 703 F. Supp. 2d at 245;

*see generally Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

Mr. Friedmann established a *prima facie* case.   Defendant conceded that the first three

prongs of the *McDonnell Douglas* test were met and challenge only the fourth prong of whether

the circumstances gave rise to an inference of discrimination.   In February 2011, Ms. Goldstein,

Mr. Friedman's direct supervisor, began referring to Mr. Friedmann as the "old man" after she

asked him when he planned to retire.   After this incident, Mr. Friedmann's other colleagues and

managers referred to him as the "old man" and she viewed him as "lazy."   Friedmann Tr.

123:12–124:9, 147:10–11.

10

Mr. Friedmann was also treated differently than his professional peers, who were younger than he.  Although other employees were allowed to sit down at work without repercussion and without having to request such accommodation, Mr. Friedmann was not allowed these rights, even after requesting them of his superiors.  Friedmann Tr. 106:2–14.  On May 18, 2011, Mr. Friedmann was asked by Ms. Goldstein to interview with the Store Manager at the Carle Place branch owned by Defendant for consideration for a transfer.  Friedmann Aff. ¶ 8.  At this meeting the store manager of the Carle Place branch said to Mr. Friedmann that she "was not looking for anyone for her store who had a few bucks in the bank," meaning that she did not want to older people nearing the age of retirement as an employee.  Friedmann Aff. ¶ 9.  Mr. Friedmann was terminated exactly one (1) month later.  At his termination, Ms. Goldstein told him to go "enjoy your summer in the Hamptons," confirming Mr. Friedmann's suspicion that Defendant did not want to keep employees near the age of retirement.  Friedmann Aff. ¶ 12.  One must simply look at the totality of these circumstances to see that these are not stray remarks. They show a pattern of prejudice against Mr. Friedmann because of his age and demonstrate a nexus between Mr. Friedmann's termination and Defendant's belief that older employees are less useful and do not work as hard as their younger co-workers.

Defendant erroneously argues that Mr. Friedmann being within the protected age group when he was hired precludes discriminatory animus, which is certainly in contravention of case law in this Circuit, as described below.  Being within the protected age group when hired is not dispositive but one of many circumstances that a court can look at when deciding if the fourth *McDonnell Douglas* prong has been satisfied.   *See generally Chambers,* 43 F.3d at 37. Furthermore, six (6) years had lapsed between the date that Mr. Friedmann was hired and the termination of his employment.  During that time, Mr. Friedmann's sciatica came to hobble him.

11

In addition, Defendant's citation to *Bruder v. Jewish Bd. of Family & Children's Servs.* is misplaced and flawed: in *Bruder*, the facts were such that the court found that the plaintiff failed to satisfy the third prong because the change in her working conditions did not amount to adverse employment action. *Bruder v. Jewish Bd. of Family & Children's Servs.*, 2013 WL 789231, *5, 2013 U.S. Dist. LEXIS 31066, *13–*15 (E.D.N.Y. Mar. 4, 2013) (failing to demonstrate that the change in the plaintiff's duties constituted an adverse action). This is not the case here.

Defendant also invokes the same actor doctrine. However, the same actor doctrine does not apply here because the same person to hire Mr. Friedmann was not the same person to terminate him. Ms. Goldstein merely placed Mr. Friedmann in the Coaching for Success Plan and then the Action Plan & Performance Agreement, both of which were essentially job training programs. There is no logical inconsistency that the same actor who put Mr. Friedmann in a job-training program—which, in any event, was a launch pad to Mr. Friedmann's termination—would be the same person to eventually terminate him, but she did not make that decision alone. Goldstein Dep. 84:21–25. Defendant's gross misapplication of the same actor doctrine, which when correctly applied can create a strong inference for non-discrimination when the same actor hires then fires the employee. *Grady v. Affiliated Cent.*, 130 F.3d 553, 561 (2d Cir. 1997). These facts do not lead to such a conclusion.

Moreover, that Ms. Goldstein was in the same protected class is not relevant in this case as it is in the two (2) unreported cases to which Defendant cite, namely *Grant v. Roche Diagnostics Corp.* and *Starr v. Legal Aid Soc'y.* Neither case features the plaintiff suffering the discriminatory comments that Mr. Friedmann did. *Grant v. Roche Diagnostics Corp.*, 2011 WL 3040913, *10, 2011 U.S. Dist. LEXIS 79994, *31 (E.D.N.Y. July 20, 2011); *Starr v. Legal Aid Soc'y*, 1998 WL 477733, *3–*4, 1998 U.S. Dist. LEXIS 12566, *10 (S.D.N.Y. Aug. 14, 1998).

It is well settled that being in the same class older persons can and do discriminate against older workers and women can be sexist against women and "as a general matter, '[t]he proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable.' " *Earvin v. CUNY*, 2008 WL 5740359, *6, 2008 U.S. Dist. LEXIS 108163, *17 (S.D.N.Y. Feb. 17, 2008) *aff'd*, 315 F. App'x 358 (2d Cir. 2009) (quoting *Danzer v. Norden Sys.*, 151 F.3d 50, 55 (2d Cir.1998)).

Mr. Friedmann has shown that the circumstances surrounding his termination give rise to an inference of age discrimination, and accordingly, that he has established a *prima facie* case of age discrimination for *McDonnell Douglas* purposes.  In *Miller*, the court decided that a plaintiff who claimed that he was saddled with more demanding and time intensive tasks, was evaluated more stringently, and received hasher treatment than similarly situated younger employees.  He had thereby established a *prima facie* case of age discrimination.  Courts must consider the facts in the light most favorable to a plaintiff, taken as a whole rather than individually.  Plaintiff respectfully directs the Court's attention to the Second Circuit's holding that "the evidence necessary to satisfy this [*prima facie*] burden [is] 'minimal' and '*de minimis*.' " *Zimmermann v. Assocs. First Cap. Corp.*, 251 F.3d 376, 381 (2d Cir. 2001); *Miller*, 703 F. Supp. 2d at 245.  Mr. Friedmann has shown that these circumstances support an inference of discrimination and easily establish a *prima facie* case of age discrimination.

> **(b)    Defendant does not assert a legitimate nondiscriminatory reason for terminating Mr. Friedmann.  The reason proffered was mere pretext to systematically terminate Mr. Friedmann because he was perceived to be lazy and old.**

Defendant claims that if Mr. Friedmann is able to make a *prima facie* claim then that Defendant has legitimate nondiscriminatory reasons for terminating him, namely that he had a poor sales record.  However, the evidence does not support the conclusion that Mr. Friedmann's

13

sales were any worse than other employees with low sales figures who were not terminated.[2] Assuming *arguendo*, that this Court determines that the Defendant has proffered a legitimate nondiscriminatory reason, Defendant's Motion for Summary Judgment should be denied simply because Mr. Friedmann has raised sufficient evidence to show that this pretend reason was pretextual.  Friedmann Aff. ¶¶ 4–28.

A defendant's nondiscriminatory reason is overcome when a "plaintiff 'has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that [the plaintiff's] age was a "but for" cause of [defendant's] decision to fire [the plaintiff].  In this respect, it is important to consider whether the explanations that [defendant] gave for [plaintiff's] firing were pretextual.' "  *Miller*, 703 F. Supp. 2d at 246 (quoting *Gorzynski,* 596 F.3d at 107).

Pretext "may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the *prima facie* case, without more."  *Id.*; *Heyman v. Queens Vill. Comm.*, 198 F.3d 68, 72 (2d Cir. 1999) (quotation omitted).  "The pretext inquiry thus normally focuses upon factual questions such as whether the asserted reason for the challenged action comports with the defendant's policies and rules, whether the rule applied to the plaintiff has been applied uniformly, and whether the putative non-discriminatory purpose was stated only after the allegation of discrimination."  *Miller*, 703 F. Supp. 2d at 246.

---

[2] Despite Defendant's assertions to the contrary in their June 4, 2013 letter to the Court (Docket Entry 62), Raymour & Flanigan never produced the discovery for which Plaintiff submitted an Objection to the Magistrate Judge's Decision (Docket Entry 46).  Harman Decl., *Exs. K* and *J* respectively.  Because this discovery was never produced, Plaintiff is unable to oppose Defendant's Motion with dexterity or with access to the information Defendant's have that would support his argument.

Defendant's claim that Mr. Friedmann was terminated solely because of his sales performance.   Goldstein Tr. 95:21–25.   The evidence does not support such a conclusion. Friedmann Aff. ¶¶ 17–21. If there were evidence to support it, Defendant would have produced it during discovery.[3]   Plaintiff seeking responsive discovery regarding Defendant's many employees who sold less in merchandise than Plaintiff, but who were not on performance improvement plans, and who were not terminated is a long and enduring tale.   Harman Decl. *Exs. D*, *E*, *F*, *G*, *H*, *I*, and *J*.

In April 2011, Mr. Friedman was put on a "Coaching for Success" plan.   Each salesperson employed with Defendant was required to make sales of no less than seven hundred fifty thousand dollars ($750,000) per year.   On June 18, 2011, with approximately forty-three percent (43%) of the year completed, each salesperson might by that time have sold three hundred forty-seven thousand dollars ($347,000).   Mr. Friedmann to date had shipped two hundred eighty-three thousand dollars ($283,000) in merchandise; however, he had written sales that totaled approximately four hundred thousand dollars ($400,000), well above his requirement for that point in the year and easily on track to reach his required sales.   Furthermore, there were at least ten (10) other employees who were not terminated who had sold less than three hundred forty-seven thousand dollars ($347,000) in merchandise prior to June 18, 2011.

Nardia Palmatier, another employee at Raymour & Flanigan, had actually sold only two hundred eighty-three thousand dollars ($283,000) of merchandise, far less than Mr. Friedmann. All of Mr. Friedmann's colleagues were much younger.   Friedmann Aff. ¶ 19.   Mr. Friedmann

---

[3] Again, as Plaintiff never received a fulsome response to his discovery demands, and Plaintiff does not have access to as much evidence in this action as is Defendant, Plaintiff is unable to adequately argue his case.

has identified sufficient evidence that a reasonable fact-finder could infer that Mr. Friedmann was not terminated because of his sales record, but that his age was the but-for reason for the termination.  Had he been younger, like the other similarly situated employees, he would not have been fired.  A jury of Mr. Friedmann's peers will easily find that his employment was illegally terminated due to his age.  In *Zosimo v. Delvalle*, the court decided that the issue of whether the plaintiff was terminated due to his or due to his performance was an issue of fact that required a jury—not summary judgment.  *Zosimo v. Delvalle*, 22 F. Supp. 2d 42, 46 (E.D.N.Y. 1998) (describing plaintiff as a maintenance mechanic in his sixties who received negative reports from his supervisor).  This question should be given to a finder of fact.

### 2.    Claim for Disability Discrimination

A plaintiff suing under the Americans with Disabilities Act of 1990 ("ADA") for disability discrimination bears the burden of establishing a *prima facie* case.  In so-called reasonable-accommodation cases, such as this one, the plaintiff's burden requires a showing that:

(i)    The plaintiff is a person with a disability under the meaning of the ADA;

(ii)    An employer covered by the statute had notice of his disability;

(iii)    With reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and

(iv)    The employer has refused to make such accommodations.  *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 183–84 (2d Cir. 2006).

A person with a disability under the meaning of the ADA is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.  42 U.S.C. § 12111.

16

Mr. Friedman had his first surgery relating to sciatica on May 31, 2002 but it was not until a 2008 flare up that it began to hinder his employment. Friedmann Tr. 89:21–92:6. Despite the pain that Mr. Friedmann experienced, he continued to meet all of the sales quotas imposed on all sales associates. In 2010, Mr. Friedman experienced another flare up and the ability to stand for long hours became intolerably painful. *Id.* For much of 2010, Mr. Friedmann was in and out of the hospital receiving various medical treatment including epidural injections, surgery, and physical therapy. During 2010, Mr. Friedman made several requests for reasonable accommodation, including that he be allowed to sit for short periods of time so as not to exacerbate his condition and in order to mitigate the pain. Friedmann Tr. 106:2–14. His request was granted but he was chastised for needing the rest and no consideration was given to the impact the breaks would have on his sales quotas. It was shortly after in April 2011 that he was put on the performance review plan and ultimately terminated for requesting accommodation.

(a) **Plaintiff is not time-barred**

(i) **The ADA and the EEOC**

The ADA requires a plaintiff to timely file a charge of discrimination with the EEOC and where, as in the State of New York, there exists a state fair employment agency, such charges much be filed within three hundred (300) days of the unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1). "For purposes of this section, an unlawful employment practice occurs . . . when a person aggrieved is injured by the application of the seniority system or provision of the system." 42 U.S.C. § 2000e-5(e)(2). In cases involving termination, the three hundred (300) days begins to run when the employee receives "definite notice of termination, not upon his discharge." *Miller v. ITT*, 755 F.2d 20, 23 (2d Cir.1985); *Predun v. Shoreham-Wading River Sch. Dist.*, 489 F. Supp. 2d 223, 227 (E.D.N.Y. 2007); *Syrkin v. SUNY*, 2005 WL 2387819, 2005 U.S. Dist. LEXIS 21710 (E.D.N.Y. Sept. 29, 2005). The act of termination is the final act

17

of discrimination alleged by Plaintiff and therefore triggers the running of the three hundred (300) days.  *See Amtrak v. Morgan*, 536 U.S. 101, 114–18, 122 S. Ct. 2061, 2072–75, 153 L. Ed. 2d 106, 122–25 (2002) (termination is an example of a discrete act of discrimination); *Predun*, 489 F. Supp. 2d at 228 (E.D.N.Y. 2007).  Mr. Friedman was terminated June 18, 2011 and filed his EEOC Charge on Oct. 21, 2011.  His injury, *i.e.* the termination, did not occur until June 18, 2011, and the unlawful employment practice did not fully emerge until 2011, putting his filing well within the three-hundred-day (300-day) limitation, which expired Apr. 13, 2012.

Even if the unlawful employment occurrence began before the three-hundred-day (300-day) limit, the doctrine of continuing violations should permit the inclusion of events that occurred prior to the three hundred (300) days immediately preceding Mr. Friedmann's EEOC filing.  The theory behind the doctrine of continuing violations is that if the alleged discrimination is part of a continuing pattern, then the plaintiff should be allowed to bring a claim based on the entire pattern of conduct, not just those acts occurring within the filing period. Susan Strebel Sperber, Craig R. Welling, *The Continuing Violations Doctrine Post-Morgan*, 32 Colo. Law. 57, 57 (Feb. 2003).  The continuing-violation exception "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 627 (E.D.N.Y. 2012) (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (emphasis added; internal citations omitted). Defendant's failure to provide reasonable accommodations and to chastise Mr. Friedmann was part of an ongoing policy of discrimination that fully emerged when he was terminated in 2011.

> **(ii)      General Contractual Limitations on Time to File Actions Do Not Apply to ADEA or ADA Lawsuits.**

It is well-settled that standard-form, non-negotiated clauses in employment applications, just like the one at issue here, cannot deprive plaintiffs of their right to file employment discrimination lawsuits within the statutory limitations periods.

In late September of this past year, the United States District Court for the Southern District of New York reviewed this precise issue.  The employment application (with, in that case, FedEx) contained the following provision, which is essentially the same as the one at issue in this case:

> To the extent the law allows an employee to bring legal action against Federal Express Corporation [the employer], I [the applicant] agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first.

*Vega v. FedEx*, 2011 U.S. Dist. LEXIS 111531, *15, 2011 WL 4494751 (S.D.N.Y. Sept. 29, 2011).

In the *Vega* case, the Court determined that while his New York Human Rights Law discrimination law claims were barred by the six-month limitation, his Title VII and ADEA claims were not because:

> [i]f the parties to a contract intend for a provision to act as a bar to claims brought under federal law, they must specifically refer to such federal claims, and clearly express the intent to limit the period in which a party could bring an action based upon federal claims." *Van-Go Transp. v. N.Y.C. Bd. of Educ.*, 53 F. Supp. 2d 278, 284 (E.D.N.Y. 1999) (holding that a contractor's § 1981 claims were not time-barred by a contractual limitations provision because the provision made no reference to federal statutory rights, much less an express waiver of such rights) (emphasis added). **In other words, the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit contractual waivers of an employee's statutory right to a federal judicial forum for claims of employment discrimination.** [citing the United States Supreme Court's decision in *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998)].

2011 U.S. Dist. LEXIS 111531, *14–15 (emphasis added). It should be noted with respect to the New York State claims, in *Vega*, the plaintiff missed the three-hundred-day (300-day) period in which to filed an EEOC charge, and also failed to sue within ninety (90) days of receipt of a right to sue letter. There are no such issues in this case. It cannot possibly be argued that the Defendant did not receive notice of Mr. Friedmann's position that there was age and disability discrimination no later than the fall of 2011—with respect to a termination that took place in the summer of that year. A conclusion that Mr. Friedmann's state claims are time-barred would, Mr. Friedmann submits, be unreasonable and contrary to public policy.

In fact, in the *Van-Go Transp.* case (an Eastern District of New York decision) cited in the *Vega* decision, the District Court stated that the defendant's contention that the plaintiff's § 1983 claims were barred by a six-month (6-month) contractual limitations period was "wholly without merit" with respect to statutorily protected federal rights. *Van-Go Transp.*, 53 F. Supp. 2d at 283. The District Court then stated that "[a]ccordingly, defendant's motion for summary judgment on the basis of the contractual limitations provision is denied." *Id.* at 284.

20

**D.**    <u>**Plaintiff was denied reasonable accommodations**</u>

"[T]he employer must make a reasonable effort to determine the appropriate accommodation.  The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." *Jacques v. DiMarzio*, 200 F. Supp. 2d 151, 169 (E.D.N.Y. 2002) *aff'd*, 386 F.3d 192 (2d Cir. 2004) (quoting 29 C.F.R. § 1630.9; *see also Brady v. Wal-Mart Stores*, 531 F.3d 127, 135 (2d Cir. 2008) ("[T]he ADA contemplates that employers will engage in an 'interactive process' with their employees and in that way work together to assess whether an employee's disability can be reasonably accommodated." (internal citations omitted)).

The process is intended to include actions such as "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what [they] specifically want[], show[ing] some sign of having considered [the] employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome." *Scalera v. Electrograph Sys.*, 848 F. Supp. 2d 352, 370 (E.D.N.Y. 2012) (quoting *Taylor v. Phoenixville Sch. Dist.*, 174 F.3d 142, 162 (3d Cir. 1999).  Courts should look for signs of failure to participate in good faith, or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary.  *Scalera*, 848 F. Supp. 2d at 370.  A party that obstructs or delays the interactive process is not acting in good faith.  *See, e.g., supra* notes 2–3.  A party that fails to communicate, by way of initiation or response, may also be acting in bad faith.  In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.  *See, e.g., Goonan v. FRB of N.Y.*, 2013 WL 69196, 2013 U.S. Dist. LEXIS 3764 (S.D.N.Y. Jan. 7, 2013) *reconsideration denied*, 2013 WL 1386933, 2013 U.S. Dist. LEXIS 49729 (S.D.N.Y. Apr. 5, 2013).

The Second Circuit has stated that the plaintiff bears the burden of production and persuasion on the issue of whether they are otherwise qualified for the job in question. *McElwee v. Cnty. of Orange*, 700 F.3d 635, 642 (2d Cir. 2012) (citing *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)).   As to the requirement that an accommodation be reasonable, the Second Circuit has held that the plaintiff bears only a burden of production.   *Id.*   This burden is not a heavy one.   *Id.*   It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.   Once the plaintiff has done this, he has made out a *prima facie* showing that a reasonable accommodation is available, and the risk of non-persuasion falls on the defendant.   Mr. Friedmann requested that he be given the chance to rest, which he was constructively not given since he was berated for taking his short breaks even to sit.   Friedmann Tr. 106:2–14, Friedmann Aff. ¶¶ 14–16.   Mr. Friedmann had terrible back pain and was made fun of by his employers, who were younger, when taking breaks.   Defendant did nothing to remedy these attacks and as Plaintiff's supervisor was involved, Plaintiff had nowhere to turn.   *See* Delgenio Dep. 81:7–14.   In light of the totality of the circumstances, this does not amount to a reasonable accommodation.   Friedmann Aff. ¶ 28.

**E.**    **Claim for Retaliation**

Finally, Defendant Raymour & Flanigan, in their only coherent and clear argument in their Memorandum of Law in Support of their Motion for Summary Judgment at 24 determines that Plaintiff's "retaliation claims [*sic*] fails".   Defendant's legal argument seems sound, however, Plaintiff has no claim for retaliation.   Defendant has haphazardly thrown the kitchen sink of legal defenses into a serious brief, where the stakes are high, forcing Plaintiff to clear arbitrary and tangential hurdles.   Raymour & Flanigan seeks "to 'harass and discourage rather than to win.' "

*Religious Tech. Ctr. v. Lerma*, 908 F. Supp. 1362, 1368 (E.D. Va. 1995) (quoting L. Ron Hubbard).

## IV.  CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that a jury decide his claims and that the Court deny Defendant's Motion for Summary Judgment.


Dated: New York, New York             Respectfully submitted by:
       June 19, 2013                         THE HARMAN FIRM, PC
                                             *Counsel for Plaintiff*


                                             _____s/_____
                                             Walker G. Harman, Jr. [WH-8044]
                                             Peter J. Andrews [PA-3295]
                                             200 West 57th Street, Suite 900
                                             New York, New York 10019
                                             (212) 425-2600
                                             wharman@theharmanfirm.com
                                             pandrews@theharmanfirm.com

To:    Tara Eyer Daub, Esq. [TE-7943]
       Jessica Chiclacos, Esq. [JC-2534]
       NIXON PEABODY LLP
       *Counsel for Defendant*
       50 Jericho Quadrangle, Suite 300
       Jericho, New York 11753
       (516) 832-7500
       tdaub@nixonpeabody.com
       jchiclacos@nixonpeabody.com