UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LAWRENCE I. FRIEDMANN,

        Plaintiff,

    v.                                        12 CV 1307 (LDW)(AKT)

RAYMOUR FURNITURE CO., INC., and
LUCY GOLDSTEIN,

        Defendants.
-----------------------------------------------------------------X

Pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiff Lawrence I. Friedmann submits the following Statement of Material Facts in Dispute.

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 1. Raymour & Flanigan is a furniture retailer. Relevant to this case, Raymour & Flanigan operates multiple furniture showrooms across the State of New York, including one in Garden City, one in Carle Place and one in Yonkers. Daub Decl. Ex. G, Raymour & Flanigan's May 25, 2011 Associate Handbook ("Associate Handbook"), at 6-7. | Plaintiff admits. |
| 2. Raymour & Flanigan has an Associate Handbook that clearly establishes its policy in favor of equal employment opportunity against discrimination and all forms of unlawful harassment. Daub Decl. Ex. G, Associate Handbook, at 45-56; Plaintiff's Deposition ("Pl. Dep."), at 28-29. | Plaintiff admits. |

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 3. As part of its commitment to equal employment opportunity, Raymour & Flanigan maintains a disability policy, which instructs employees to contact a Human Resources representative in the event the employee needs to request a reasonable accommodation of a disability. Patricia Delgenio Deposition ("Delgenio Dep.") 78-82; Daub Decl. Ex. G, Associate Handbook, at 46. | Plaintiff denies. The transcript of the Feb. 13, 2013 Deposition of Patricia Delgenio ("Delgenio Dep.") reads that she was asked, "If it is a situation where the employee is able to report to work, but is requesting some modification in his schedule, how is that handled?" to which she responded "They would let their manager know that they need an accommodation or a schedule adjustment based on whatever condition they are managing at the time." Delgenio Dep. 81:7–14. However, the Associate Handbook directs: "To request an accommodation or other assistance, contact your HR Field Specialist or Regional HR Manager as [they are] qualified to discuss this with you." |
| 4. Raymour & Flanigan's Associate Handbook also contains a clear statement that strongly encourages employees to report conduct believed to be in violation of the EEO policy, and provides several alternative channels, including an anonymous, toll-free "WORK-AS-1" confidential hotline, through which an employee can make such a report. Daub Decl. Ex. G, Associate Handbook, at 45-46. | Plaintiff admits that the Associate Handbook describes the channels listed. |

2

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 5. The Company's policies strictly forbid any form of retaliation against an employee who reports concerns of discrimination, and encourages employees who believe they have been retaliated against to report their concerns. Daub Decl. Ex. G, Associate Handbook, at 48. | Plaintiff admits that Defendant's summary of their written policies regarding retaliation is adequately described. |
| 6. Raymour & Flanigan also maintains an open door policy, and Sales Associates are encouraged to speak with its Human Resources Department or any member of management regarding any employment issue. Delgenio Dep. 46-48; Daub Decl. Ex. G, Associate Handbook, at 65. | Plaintiff denies. Affidavit of Lawrence I. Friedmann, sworn to June 19, 2013 ("Friedmann Aff.") ¶¶ 7–9, 14–28. |
| 7. Sales Associates are informed of the open door policy during the orientation process when they first start working for Raymour & Flanigan. Delgenio Dep. 47. | Plaintiff lacks sufficient information to either admit or deny allegations with respect to the current policies of Defendant Raymour & Flanigan. |

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 8. In addition to maintaining employment policies, Raymour & Flanigan provides training to Sales Associates and its management team regarding professional conduct and anti-discrimination and harassment awareness training. Delgenio Dep. 70; Pl. Dep. 28-29. | Plaintiff admits that he received the Associate Handbook, denies that it is still applicable. See the transcript of the Deposition of Plaintiff Lawrence I. Friedmann, taken Jan. 4, 2013 ("Pl. Dep.") at 29:4–10, which reads:<br>Q: Do you recall receiving any handbooks or policies relating to Human Resources procedures?<br>A: Yes.<br>Q: What do you recall receiving?<br>A: A handbook, which is no longer – everything is on their computer now.<br>Plaintiff was not however provided access to computers. There is no record of Plaintiff remembering issues of anti-discrimination and harassment awareness training. |
| 9. On or about October 20, 2005, Plaintiff applied for employment with Raymour & Flanigan as a Sales Associate. Daub Decl. Ex. H, Plaintiff's Application for Employment. | Plaintiff admits. |
| 10. Shortly thereafter, Raymour & Flanigan hired Plaintiff as a commissioned Sales Associate in its Yonkers location. Pl. Dep. 25-28. | Plaintiff admits. |
| 11. At the time of his hire, Plaintiff was age 64, based on Plaintiff's June 17, 1941 date of birth. Daub Decl. Ex. A, Complaint at 41, n.1. | Plaintiff admits that he was born June 17, 1941. See Harman Decl. n.1 at 1. |

4

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 12. Upon his hire, as well as during various times during his employment, received training regarding Raymour & Flanigan's Human Resources policies, as well as copies of Raymour & Flanigan's Associate Handbooks, and various documents relating to the duties and responsibilities of a Sales Associate. Pl. Dep. 28-29; Daub Decl. Ex. I, Plaintiff's October 7, 2009 Receipt and Acknowledgement of Raymour & Flanigan's Associate Handbook. | Plaintiff admits that he received the Associate Handbook, denies that it is still applicable. See the transcript of the Deposition of Plaintiff Lawrence I. Friedmann, taken Jan. 4, 2013 ("Pl. Dep.") at 29:4–10, which reads:<br>Q: Do you recall receiving any handbooks or policies relating to Human Resources procedures?<br>A: Yes.<br>Q: What do you recall receiving?<br>A: A handbook, which is no longer – everything is on their computer now.<br><br>There is no record of Plaintiff remembering issues of anti-discrimination and harassment awareness training. Plaintiff denies that policies and procedures were applied in a just, fair or equitable fashion to all Defendant's employees. Friedmann Aff. ¶¶ 14–16. |
| 13. Plaintiff's primary duty and responsibility as a Sales Associate was the sale of Raymour & Flanigan's merchandise to its customers. Lucy Goldstein Deposition ("Goldstein Dep.") 39-40; Pl. Dep. 32. | Plaintiff admits. |

5

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 14. As a commissioned Sales Associate, Plaintiff was required to produce annually a minimum of $750,000 in delivered sales, meaning that he was required to have $750,000 of merchandise actually delivered to customers each year, and to produce monthly sales consistent with meeting the annual requirement. Pl. Dep. 30-31 | Defendant's citation does not support this assertion. Defendant's mandated annual minimum sales goal did not require employees "to produce monthly sales consistent with meeting the annual requirement." The goals were for seven hundred fifty thousand dollars ($750,000) annually (not for one twelfth (1/12) of the annual sales goals every month). Pl. Dep. 30–31 |
| 15. During his time at the Yonkers showroom, Plaintiff performed his duties in a satisfactory manner. Pl. Dep. 32, 45. | Plaintiff admits. |
| 16. In or about March 2006, Plaintiff requested – and Raymour & Flanigan granted – a transfer to Defendant's Carle Place location. Pl. Dep. 33-35. | Plaintiff admits. |
| 17. Plaintiff's transfer request was approved by Lucy Goldstein, Store Manager of Carle Place. Pl. Dep. 33-35. | Plaintiff admits. |
| 18. Ms. Goldstein had met Plaintiff when he was hired by Raymour & Flanigan in 2005. Pl. Dep. 34. | Plaintiff admits. |
| 19. At the time Ms. Goldstein approved Plaintiff's transfer request, he was 65 years old. Daub Decl. Ex. A, Complaint at ¶ 41, n.1. | Plaintiff admits that he was either sixty-four (64) or sixty-five (65) years old, depending on whether it occurred after the day he became sixty-five (65), *i.e.* June 17, 2006. *See* Harman Decl. n.1 at 1. |

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 20. At the Carle Place location, Plaintiff reported to Ms. Goldstein. Pl. Dep. 33-35. | Plaintiff admits. |
| 21. Ms. Goldstein is 66 years old. Goldstein Dep. 23. | Plaintiff denies that Defendant's citation supports their assertion. Plaintiff admits that Ms. Goldstein was age sixty-six (66) on Feb. 22, 2013. Goldstein Dep. 21:1–2. |
| 22. During Ms. Goldstein's employment with Raymour & Flanigan, she received yearly training, which included anti-discrimination training and how to respond to employee requests for accommodations related to disabilities. Goldstein Dep. 54-57; Delgenio Dep. 70-72. | Plaintiff admits that there is testimony that Ms. Goldstein received training repeatedly. Plaintiff denies that Ms. Goldstein understood how to apply this knowledge to her work. Friedmann Aff. ¶ 28. |
| 23. While working at the Carle Place showroom, Plaintiff continued to meet his annual sales goals. Goldstein Dep. 27-29; Pl. Dep. 45. | Plaintiff admits. |
| 24. In 2008, Raymour & Flanigan opened its Garden City location, which became its largest and highest volume showroom. Goldstein Dep. 29; Pl. Dep. 36. | Plaintiff admits. |
| 25. As Ms. Goldstein was slated to become the Store Manager of that location, she had the opportunity to hand-pick Sales Associates to bring with her to the Garden City showroom. Goldstein Dep. 29; Pl. Dep. 36. | Plaintiff admits. |

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 26. Ms. Goldstein selected Plaintiff to join her at this new location, presenting him with the opportunity to work in a higher sales volume location, to produce even higher delivered sales and, thereby, earn higher sales commissions. Goldstein Dep. 29; Pl. Dep. 36- | Plaintiff admits. |
| 27. At the time Ms. Goldstein selected Plaintiff for transfer to the Garden City showroom, he was 67 years old. Daub DecI. Ex. A, Complaint at 41, n.1. | Plaintiff admits that he was either sixty-six (66) or sixty-seven (67) years old, depending on whether it occurred before or after the day he became sixty-seven (67), *i.e.* June 17, 2008. |
| 28. Thus, in or about October 2008, Plaintiff began working in the Garden City showroom as a commissioned Sales Associate. Goldstein Dep. 29; Pl. Dep. 36-37. | Plaintiff admits. |
| 29. In 2008 and 2009, Plaintiff met his annual sales goals while working at Garden City. Goldstein Dep. 30-31; Pl. Dep. 45. | Plaintiff admits. |
| 30. According to Plaintiff, in March 2010, he had a flare-up of his sciatica, a medical condition that began in 2002. Pl. Dep. 89-97. | Plaintiff admits. |

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 31. According to Plaintiff, the flare up of sciatica lasted approximately six months, from March 2010 to August 2010. Pl. Dep. 110. | Plaintiff denies. The testimony to which Defendant cites does not support their claim. Even in Sept. 2010, Plaintiff's recovery was not complete. Pl. Dep. 110:14–24. |
| 32. During the period from March 2010 through August 2010, Plaintiff received treatments for his sciatica. Goldstein Dep. 34-36, 38-39; Pl. Dep. 95-97; Daub Decl. Ex. A, Complaint at 19. | Plaintiff admits that he sought treatment for his sciatica and that Mar. 2010–Aug. 2010 coincides with some of his treatments. |
| 33. Ms. Goldstein granted Plaintiff's requests for time off during this period, as needed. Goldstein Dep. 38-39; Pl. Dep. 100-101. | Plaintiff denies. In addition, neither authority cited supports Defendant's assertion. Pl. Dep. 100:5–102:3. |
| 34. During this period, Plaintiff sat down at work in the showroom when his sciatica was bothering him. Pl. Dep. 103-105. | Plaintiff denies. When Plaintiff was at work, he was instructed that he could not sit down even though he was in pain. Pl. Dep. 103:25–106:24. |

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 35. During this time period, Plaintiff never asked for any downward adjustment to his minimum sales goals. Pl. Dep. 154-155. | Plaintiff admits. Plaintiff denies that such an adjustment was available for him to request or that there is any record that he was instructed to make such a request. Plaintiff further asserts that the onus of such an adjustment is on Defendant who received regular training to accommodate employees who required adjustments. Goldstein Dep. 54–57. Delgenio Dep. 70–72.<br><br>Finally, Plaintiff's former colleague Charlie Bruno who also took leave for medical care, was automatically afforded an adjustment, whereas for Plaintiff, it was not an option:<br>   Q. And when someone such as Charlie Bruno takes leave during that annual period, are they required to still hit the [seven hundred fifty-thousand dollar ($750,000)] mark?<br>   A. No.<br>Goldstein Dep. 71:3–6. |
| 36. According to Plaintiff, the treatments were successful and the flare-up of sciatica lasted about six months, from March through August 2010. Pl. Dep. 110. | Plaintiff admits that the flaring of his sciatica lasted approximately six (6) months. Pl. Dep. 109:21–23. |
| 37. Plaintiff was fully recovered from the flare-up by September 2010. Pl. Dep. 110. | Plaintiff denies. The testimony to which Defendant cites does not support their claim. Even in Sept. 2010, Plaintiff's recovery was not complete. Pl. Dep. 110:14–24. |

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 38. Plaintiff did not suffer from another flare-up during the remainder of his employment with Raymour & Flanigan. Pl. Dep. 110. | Plaintiff admits. |
| 39. Plaintiff did not need or request any accommodations after September 2010. Pl. Dep. 110-111. | Plaintiff denies.  Even in Sept. 2010, Plaintiff's recovery was not complete. Pl. Dep. 110:14–24. |
| 40. Plaintiff never contacted Human Resources to request any disability accommodation at any time during his employment with Raymour & Flanigan. Pl. Dep. 113. | Plaintiff admits. |
| 41. Plaintiff never asked Ms. Goldstein for a disability accommodation related to his sciatica. Goldstein Dep. 76. | Plaintiff admits that he never used the phrase "disability accommodation" with Ms. Goldstein, but Defendant was aware that Plaintiff's medical condition prompted him to request to sit down. Pl. Dep. 150:8–24. |
| 42. For the period from January 2011 and May 2011 – long after having fully recovered from his 2010 sciatica flare-up, Plaintiff's 2011 year-to-date delivered sales were far below expected requirements. Goldstein Dep. 74-75; Pl. Dep. 67, 110. | Plaintiff denies.  In Sept. 2010, Plaintiff's recovery was not complete and he retains his diagnosis. Pl. Dep. 110:14–24.  Plaintiff denies that his annual sales numbers could adequately be assessed midway through the year. Friedmann Aff. ¶ 18. |

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 43. By early May 2011, Plaintiff's 2011 year-to-date delivered sales were $53,537 below the minimum expectation for that point in the year and, thus, he was projected to complete delivered sales in the amount of only $617,435 for 2011, well below the mandated goal of $750,000. Daub Decl. Ex. J, Plaintiff's May 7, 2011 "Coaching for Success" plan ("May 7 Plan"); Pl. Dep. 66-68. | Plaintiff denies that the date on which Defendant audited his annual sales performance was anything but arbitrary, especially considering that the year was only forty-three (43%) over then. Friedmann Aff. ¶ 18(ii). |
| 44. Ms. Goldstein was concerned that Plaintiff had missed a critical opportunity to reverse this trend during Raymour & Flanigan's "Friends & Family" event in early May 2011, a bi-annual event that presents Sales Associates with an opportunity to generate significant sales. Goldstein Dep. 42-43, 80-81; Pl. Dep. 79. | Plaintiff denies and notes that there no support for the statement Ms. Goldstein indicated that she "was concerned that" Mr. Friedmann "had missed a critical opportunity." |
| 45. At Raymour & Flanigan, when a Sales Associate performs below expectations, he/she can be placed on a performance plan that summarizes the amount of time the Sales Associate has been performing below expectation, offers assistance to help improve the Sales Associate's performance, and sets a time frame in which the Sales Associate is expected to meet certain goals. Delgenio Dep. 26-27. | Plaintiff admits that salespersons at Defendant "**can** be placed on a performance plan" (emphasis added). Plaintiff |
| 46. Accordingly, on May 7, 2011, Ms. Goldstein placed Plaintiff on a "Coaching for Success" plan. Daub Decl. Ex. J, May 7 Plan; Goldstein Dep. 74, 104-107; Pl. Dep. 66-68. | Plaintiff admits. |

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 47. Plaintiff admits that the 2011 year-to-date sales numbers, and the stated $53,537 amount of the deficiency, as set forth in the May 7 Plan, were accurate. Pl. Dep. 67. | Plaintiff admits. |
| 48. In the May 7 Plan, Ms. Goldstein noted for Plaintiff the areas of his sales that needed improvement, set short-term goals, and indicated that she – and all of Raymour & Flanigan's management team – was available to help Plaintiff reach his goals. Daub Decl. Ex. J, May 7 Plan. | Plaintiff admits that the documents are adequately identified. Plaintiff denies that the management team that wanted him gone was available to help. Friedmann Aff. ¶¶ 7, 9, 11, 15, 23–28. |
| 49. Raymour & Flanigan's Human Resources Department was involved in Ms. Goldstein's placement of Plaintiff on the May 7 Plan, and Human Resources' conclusion was that the plan was in accordance with Raymour & Flanigan's policies and procedures. Delgenio Dep. 29-30. | Plaintiff denies that the authority supports Defendant's assertion "that the plan was in accordance with Raymour & Flanigan's policies and procedures." |
| 50. As set forth in the May 7 Plan, Ms. Goldstein counseled Plaintiff that in order for him to improve his performance, he needed to generate $20,000 in delivered sales for each week in the following two week period. Daub Decl. Ex. J, May 7 Plan. | Plaintiff admits that he was subjected to an unreasonable demand in a short amount of time, which meant that he was suffering from a disability and required to outperform his peers. Friedmann Aff. ¶ 7–28. |

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 51. Approximately two weeks later, on May 23, 2011, Ms. Goldstein provided Plaintiff with an updated "Coaching for Success" plan, which noted that Plaintiff's 2011 sales were still well below the goals that were set in the May 7 Plan. Daub Decl. Ex. K, Plaintiff's May 23, 2011 "Coaching for Success" plan ("May 23 Plan"). | Plaintiff admits. |
| 52. As reflected in the May 23 Plan, Plaintiff had only $6,807 in delivered sales during "Week 1" of the May 7 Plan, far below the $20,000 weekly goal. Daub Decl. Ex. K, May 23 Plan. | Plaintiff admits that he was subjected to an unreasonable demand in a short amount of time, which meant that he was suffering from a disability and required to outperform his peers. Friedmann Aff. ¶ 7–28. |
| 53. Ms. Goldstein again noted for Plaintiff the areas of his performance that needed improvement, and again offered to assist Plaintiff to reach his goals. Daub Decl. Ex. K, May 23 Plan. | Plaintiff denies that Defendant's management "offered to assist Plaintiff to reach his goals." Friedmann Aff. ¶¶ 28. |
| 54. Plaintiff never asked Ms. Goldstein – or anyone else at Raymour & Flanigan – for assistance during this time period. Pl. Dep. 57-58. | Plaintiff lacks sufficient information to admit or deny with specificity the veracity of Defendant's vague and manifold statement. |

14

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 55. In early June 2011, Ms. Goldstein provided Plaintiff with a written performance evaluation noting specific areas of needed improvement and emphasizing that "Larry is below average in all areas – he needs to an immediate tum around." Daub Decl. Ex. L, June 2011 Performance Evaluation; Goldstein Dep. 113. | Plaintiff admits. |
| 56. On June 13, 2011, because Plaintiff had not increased his sales numbers, Ms. Goldstein took further action and placed Plaintiff on an "Action Plan & Performance Agreement", giving him yet another, but final, opportunity to improve his performance. Daub Decl. Ex. M, Plaintiff's June 13, 2011 "Action Plan & Performance Agreement" ("June 13 Plan"). | Plaintiff admits that he received a plan. Plaintiff lacks information to confirm or deny Defendant's assertion that this was "giving him yet another, but final, opportunity to improve his performance." |
| 57. As set forth in the June 13 Plan, Plaintiff's 2011 delivered sales remained $48,190 below expectation. Daub Decl. Ex. M, June 13 Plan. | Plaintiff denies. Mandatory minimum sales were for seven hundred fifty thousand dollars ($750,000) per year. Friedmann Aff. ¶¶ 17–21. |
| 58. Plaintiff admits that the 2011 year-to-date sales numbers, and the amount of the deficiency, as set forth in the June 13 Plan, were accurate. Pl. Dep. 74-75. | Plaintiff admits. |

15

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
| --- | --- |
| 59. During this time, Ms. Goldstein also arranged for Plaintiff to interview at other Raymour & Flanigan locations that sold less volume than the Garden City Showroom and had fewer "superstar" Sales Associates compared to Garden City. Goldstein Dep. 97; Pl. Dep. 38-39. | Plaintiff lacks sufficient information to know to which period Defendant refers. |
| 60. Ms. Goldstein hoped that Plaintiff could transfer to a different location, improve his performance in a less competitive location, and then she could re-hire him for the Garden City showroom. Goldstein Dep. 97. | Plaintiff denies. It was for discriminatory animus. Friedmann Aff. ¶¶ 2–28. |
| 61. Plaintiff did interview at the Carle Place showroom, but the Store Manager, Laura D'Ambrosio, declined to hire him because of his low 2011 sales metrics. Daub Decl. Ex. O, Laura D'Ambrosio's June 21, 2011 e-mail regarding Plaintiff; Goldstein Dep. 97; Pl. Dep. 38-39; Delgenio Dep. 32-33. | Plaintiff denies. Defendant's Ex. O states that she "did not believe he was a good fit for our store. His metrics were very low. When I asked him about his F&F and Prospecting results he told me he did very well and was happy with his numbers. He did not seem to have the drive and enthusiasm that we are looking for." |
| 62. As of June 18, 2011, Plaintiff's delivered sales for 2011 year-to-date were $52,221 below expectation. Daub Decl. Ex. N, Raymour & Flanigan's Payroll Connection Form regarding Plaintiff's termination ("Termination Form"). | Plaintiff denies. Mandatory minimum sales were for seven hundred fifty thousand dollars ($750,000) per year. Friedmann Aff. ¶¶ 17–21. |

16

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
| --- | --- |
| 63. Thus, over the almost six-week period from May 7, 2011 until June 18, 2011, the deficiency in Plaintiff's 2011 delivered sales compared to minimum expectations remained virtually unchanged, making up only $1,316 and remaining $52,221 below expectations. Daub Decl. Ex. J, May 7 Plan; Ex. N, Termination Form. | Plaintiff denies. Mandatory minimum sales were for seven hundred fifty thousand dollars ($750,000) per year. Friedmann Aff. ¶¶ 17–21. |
| 64. On June 18, 2011, Raymour & Flanigan terminated Plaintiff's employment due to poor performance based on his deficient 2011 sales. Goldstein Dep. 86-87; Daub Decl. Ex. N, Termination Form. | Plaintiff denies. Mandatory minimum sales were for seven hundred fifty thousand dollars ($750,000) per year. Plaintiff was terminated because of his perceived age and disability. Friedmann Aff. ¶¶ 2–28. |
| 65. Raymour & Flanigan's Human Resources Department was apprised of the decision to terminate Plaintiff's employment. Delgenio Dep. 35-36. | Plaintiff lacks sufficient information to confirm or deny. |
| 66. During his employment, Plaintiff never complained to anyone at Raymour & Flanigan about age discrimination. Pl. Dep. 156; Delgenio Dep. 44. | Plaintiff denies that he had anyone to turn to for aid. Friedmann Aff. ¶¶ 2–28. |
| 67. During his employment, Plaintiff never complained to anyone at Raymour & Flanigan about disability discrimination. Pl. Dep. 156; Delgenio Dep. 44. | Plaintiff denies that he had anyone to turn to for aid. Friedmann Aff. ¶¶ 2–28. |

| **Defendants' Alleged Evidence Material Facts** | **Plaintiff's Responses** |
|---|---|
| 68. On October 21, 2011, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination based on failure to accommodate and age discrimination. Daub Decl. Ex. B, Plaintiff's EEOC Charge of Discrimination. | Plaintiff admits. |
| 69. Thereafter, on or about March 15, 2012, Plaintiff filed the instant action, bringing claims under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA'') and the New York State Human Rights Law ("NYSHRL") against Raymour & Flanigan, and aiding and abetting claims under the NYSHRL against Ms. Goldstein. Daub Decl. Ex. A, Complaint. | Plaintiff admits. |
| 70. In ruling on Defendant's motion to dismiss, this Court dismissed Plaintiff's claims under the NYSHRL. Daub Decl. Ex. C, October 16, 2012 Memorandum and Order of Judge Wexler. | Plaintiff admits. |

Dated: New York, New York  
       December 9, 2002

Respectfully submitted by:  
THE HARMAN FIRM, PC  
Counsel for Plaintiff

                              s/  
Walker G. Harman, Jr. [WH-8044]  
Peter J. Andrews [PA-3295]  
200 West 57th Street, Suite 900  
New York, New York 10019  
(212) 425-2600  
wharman@theharmanfirm.com  
pandrews@theharmanfirm.com

To:   Tara Eyer Daub, Esq. [TE-7943]  
       Jessica Chiclacos, Esq. [JC-2534]  
       NIXON PEABODY LLP  
       Counsel for Defendant  
       50 Jericho Quadrangle, Suite 300  
       Jericho, New York 11753  
       (516) 832-7500  
       tdaub@nixonpeabody.com  
       jchiclacos@nixonpeabody.com