UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LAWRENCE I. FRIEDMANN,

        Plaintiff,      <u>MEMORANDUM AND ORDER</u>

  -against-           CV 12-1307 (LDW) (AKT)

RAYMOUR FURNITURE CO., INC., and LUCY
GOLDSTEIN, individually,

        Defendants.
-------------------------------------------------------------X
WEXLER, District Judge

   Plaintiff Lawrence I. Friedmann ("Friedmann") brought this employment

discrimination action against defendants Raymour Furniture Co., Inc. ("Raymour") and

Raymour supervisor Lucy Goldstein ("Goldstein"), asserting various federal and state law

claims.  The Court having earlier dismissed certain claims, Raymour now moves for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP")

seeking dismissal of Friedmann's remaining claims for discrimination under the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  Friedmann opposes

the motion.


            I.

   Friedmann began his employment with Raymour as a sales associate in October

2005 when he was 64 years old.  In 2006, he began working at Raymour's Carle Place,

New York showroom, where he reported to Goldstein.  In 2008, Raymour opened a new showroom in Garden City, New York, where Goldstein became store manager.  Goldstein choose Friedmann to work at the Garden City location, which, according to Raymour, became its largest and highest volume showroom.  During his employment Friedmann was required to meet certain sales requirements, which he did until 2011.  During 2011, Friedmann was required to generate $750,000 in annual "delivered" sales, as were all sales associates at the Garden City location.

Friedmann had surgery for sciatica in May 2002 and suffered a flare-up from March through August 2010.  Friedmann claims that during that period he requested a chance to sit and rest while working, but his request was effectively denied since he was berated for taking short breaks even to sit.  Although Raymour disputes whether Friedmann was permitted to sit down and rest from time to time while working during that period, after the flare-up ended in or about September 2010, Friedmann did not need or request such an accommodation nor did he request a reduction of his sales requirement.

By May 2011, Raymour determined that Friedmann fell below required sales amounts and would not meet the $750,000 annual delivered sales requirement without improvement.  Consequently, on May 7, 2011, Friedmann's supervisor, Goldstein, placed him on a "Coaching for Success" plan, setting forth goals and affording him more time to improve his performance.  In June 2011, Raymour determined that Friedmann was not making sufficient progress and, as a result, Goldstein placed him on an "Action Plan &

Performance Agreement." Nevertheless, on June 18, 2011, upon Goldstein's determination, Raymour terminated Friedmann, claiming that he failed to show improvement in his sales levels.

According to Friedmann, he was treated differently than younger sales associates. For example, he claims, *inter alia*, that younger sales associates who were behind in their required sales amounts by May 2011 were not terminated. He also claims that Goldstein made various age-related comments demonstrating her discriminatory animus toward him. In addition, he claims that he was denied reasonable accommodation for his sciatica, including permission to sit and rest while working and a downward adjustment of his sales requirement.

On October 21, 2011, approximately four months after his termination, Friedmann filed a charge of discrimination with the EEOC. The EEOC issued Friedmann a right to sue letter on December 19, 2011, and he commenced this action on March 15, 2012 – almost nine months after his termination.

II.

To obtain summary judgment under FRCP 56, the party seeking judgment must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994).

As for the ADA claim, Raymour argues that the evidence is insufficient to establish that Raymour intentionally discriminated against Friedmann on the basis of disability by denying him a reasonable accommodation. The Court agrees. Even assuming that Friedmann's sciatica is a disability, the evidence is not sufficient to raise a genuine dispute of material fact. Although Friedmann claims that Raymour failed to reasonably accommodate his requests to sit and rest while working during his sciatica flare-up in 2010 and to downwardly adjust his sales requirement, there is no dispute that after the flare-up ended in or about September 2010, he did not need or request such an accommodation nor did he expressly request a reduction of his sales requirement. Moreover, any claim based on a denial of a reasonable accommodation occurring before December 25, 2010 – 300 days before he filed his EEOC charge on October 21, 2011 – is time-barred. *See Tewksbury v. Ottoway Newspapers, Inc.*, 192 F.3d 322, 325-29 (2d Cir. 1999); *see also Foster v. (D.O.E.) Theatre Arts Prod. Co. School*, 2014 WL 265787, at *4 (S.D.N.Y. Jan. 24, 2014) (dismissing ADA claim as untimely, finding "any complaint regarding a failure to make a reasonable accommodation had to be lodged with the EEOC by August 8, 2011, 300 days after the last discriminatory act"). To the extent that Friedmann argues that his claim is timely under the "continuing violations doctrine," the Court finds that the evidence is not sufficient to support application of the doctrine. *See*

*Cornwell v. Robinson*, 23 F .3d 694, 704 (2d Cir. 1994) (continuing violation may be found where there is "specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice").

As for the ADEA claim, Raymour argues (1) that the evidence is not sufficient to raise an inference of age discrimination; (2) that Friedmann concedes that Raymour had a legitimate business reason for terminating him, *i.e.*, that his sales were below the required sales level; and (3) that Friedmann cannot demonstrate that this reason is false or that age discrimination was the "but for" cause of Goldstein's decision to terminate his employment. In addition, Raymour argues, *inter alia*, that (1) Friedmann's claim is undercut by a "same actor" inference, given that Goldstein was responsible for approving Friedmann's transfer to the Garden City location and then for deciding to terminate his employment; and (2) any remarks about Friedmann's age, even if they occurred, were merely "stray remarks," insufficiently related to the employment decision. Friedmann maintains that evidence is sufficient to survive summary judgment. Upon consideration of the arguments and the record evidence, the Court finds that genuine disputes of material fact exist precluding the entry of summary judgment.

Accordingly, Raymour's motion for summary judgment is granted as to Friedmann's ADA claim, but denied as to his ADEA claim.

III.

Raymour's motion for summary judgment is granted in part and denied in part.  It is granted to the extent that Friedmann's ADA claim is dismissed, but it is denied as to his ADEA claim.

SO ORDERED.

_____
/s/
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
      February 7, 2014